<pre>
 1                   UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF CALIFORNIA

 3              BEFORE THE HONORABLE WILLIAM ALSUP

 4

    IL FORNAIO (AMERICA)         )
 5  CORPORATION, et al.,         )
                                 )
 6              Plaintiffs,      )
                                 )
 7       VS.                     ) NOS. C 13-05197 WHA
                                 )     C 13-05331 WHA
 8  LAZZARI FUEL COMPANY LLC,    )
    et al.,                      )
 9                               ) San Francisco, California
                Defendants.      ) Thursday, February 27, 2014
10  _____  ) 10:09 a.m.
                                 )
11  DARBAR CUISINE, INC.,        )
                                 )
12              Plaintiff,       )
                                 )
13       VS.                     )
                                 )
14  CHEF'S CHOICE MESQUITE       )
    CHARCOAL, et al.,            )
15                               )
                Defendants.      )
16  _____  )

17
                   **TRANSCRIPT OF COURT PROCEEDINGS**
18

19  **APPEARANCES:**

20  **For Plaintiff**         Pritzker Law
    **Il Fornaio:**           633 Battery Street, Suite 110
21                            San Francisco, California 94111
                        BY:   **ELIZABETH C. PRITZKER, ESQ.**
22                            **BETHANY L. CARACUZZO, ESQ.**

23  (Appearances continued on next page)

24

    Reported By:  James C. Pence, RMR, CRR, CSR No. 13059
25                Official Court Reporter - U.S. District Court
                  Computerized Transcription By Case CATalyst
</pre>

**APPEARANCES:**

| | |
|---|---|
| **For Plaintiff**<br>**Il Fornaio:** | Pearson Simon Warshaw LLP<br>44 Montgomery Street, Suite 2450<br>San Francisco, California 94104<br>BY:   **ROBERT G. RETANA, ESQ.** |
| **For Plaintiff**<br>**Darbar Cuisine:** | Saveri & Saveri, Inc.<br>706 Sansome Street<br>San Francisco, California 94111<br>BY:   **R. ALEXANDER SAVERI, ESQ.**<br>**CARL N. HAMMARSKJOLD, ESQ.** |
| **For Defendant**<br>**Lazzari Fuel:** | Farmer Brownstein Jaeger LLP<br>235 Pine Street, Suite 1300<br>San Francisco, California 94104<br>BY:   **DAVID BROWNSTEIN, ESQ.** |
| **For Defendant**<br>**California**<br>**Charcoal:** | Mitchell Silberberg & Knupp LLP<br>11377 West Olympic Boulevard<br>Los Angeles, California 90064-1683<br>BY:   **JEAN PIERRE NOGUES, ESQ.** |
| **For Defendants**<br>**Chef's Choice**<br>**and William Lord:** | Sanger Swysen & Dunkle<br>125 East De La Guerra Street,<br>Suite 102<br>Santa Barbara, California 93101<br>BY:   **ROBERT M. SANGER, ESQ.** |

```
1          Thursday, February 27, 2014                    10:09 a.m.

2                              ---o0o---

3               THE COURT:  I'm sorry.  Is there another case on the

4     calendar?

5               THE CLERK:  Yes, there is, Judge.

6               THE COURT:  I apologize.

7          Send them up.

8               THE CLERK:  Il Fornaio.  It's Il Fornaio and Darbar.

9               THE COURT:  Have them come up, but I've got to go get

10    the file on it.

11              THE CLERK:  Okay.

12              THE COURT:  I don't have the file yet.

13              THE CLERK:  Okay.

14              THE LAW CLERK:  We'll get it.

15              THE COURT:  All right.  Okay.

16              THE CLERK:  13-5197, which is Il Fornaio versus

17    Lazzari Fuel Company and also an action which is related,

18    13-5331, Darbar Cuisine versus Chef's Choice Mesquite Charcoal.

19         Counsel, please state your appearances.

20              MS. PRITZKER:  Good morning, your Honor.  Elizabeth

21    Pritzker.  I represent the plaintiffs in the Il Fornaio action.

22              THE COURT:  Okay.

23              MR. SAVERI:  Good morning, your Honor.  May it please

24    the Court, Rick Saveri on behalf of Darbar, plaintiff.

25              THE COURT:  All right.
```

```
1              MR. BROWNSTEIN:  Good morning, your Honor.  David
2      Brownstein on behalf of Lazzari Fuel.
3              MR. NOGUES:  Good morning, your Honor.
4              THE COURT:  Okay.
5              MR. NOGUES:  Jean Nogues on behalf of California
6      Charcoal.
7              THE COURT:  Okay.  Thank you.
8              MR. SANGER:  And good morning.  Robert Sanger.  I'm
9      here on behalf of Chef's Choice and also William Lord --
10             THE COURT:  Okay.
11             MR. SANGER:  -- who is doing business as Chef's
12     Choice.
13             THE COURT:  Are all -- are all parties present, or is
14     there somebody not represented here?
15             MR. SAVERI:  All parties are present, your Honor.
16             THE COURT:  Is that correct?
17             MR. BROWNSTEIN:  Yes, your Honor.
18             MR. SANGER:  Yes, sir.
19             THE COURT:  Okay.  Okay.  So let's -- this is a
20     motion, Ms. Pritzker -- to appoint her as interim counsel.
21             MS. PRITZKER:  That's correct, your Honor.
22        I -- I wanted to address a couple of points on the lead
23     counsel motion, and it seemed to me that your Honor may
24     question why we might need lead counsel here since we only have
25     two actions, and I think there were just three points I wanted
```

1    to emphasize on that issue.

2         1.  By not appointing an interim class counsel, you're

3    effectively permitting the two cases to proceed on two tracks

4    with multiple counsel.

5         There are some modest differences of opinion on case

6    schedule and case theories.  Those, of course, can be addressed

7    in your active case management, which is the other reason why

8    we're here today, but there are going to be issues related to

9    discovery, class certification, and trial where it makes sense

10   to have a single entity as the point person for efficiency and

11   to ensure that there's no duplication of effort.

12        The other two reasons that we think that it's important to

13   appoint interim counsel at this point is that we -- by the time

14   that we had brought the interim lead counsel motion, we had

15   learned that there isn't a pure applicant.  One of the

16   defendants was the -- a pure applicant in the criminal

17   proceeding involving Mr. Lord.

18        And they did come to us wanting to provide -- wanting to

19   provide certain disclosures in order to -- for failure to carry

20   duties, and obviously we didn't want to go down that road

21   because there is at least a correlative impact that one

22   might -- that is -- has a -- is in the nature of a compromise.

23        If they fulfill those duties, obviously your Honor can then

24   look at that to consider whether they would be entitled to

25   limit their liability for civil damages to single damages as

1    opposed to multiple damages, and there are other benefits

2    obviously to your Honor finding that they coordinate it in a

3    fashion that they should have.  So we wanted to get this to

4    your Honor for that reason.

5        The third reason is somewhat related.  We have learned --

6    we learned both through -- somewhat through an investigation,

7    but it's been confirmed a little bit with some discussions with

8    the defendants that the defendants are at least complaining

9    that they have some limited financial resources.  That's

10   obviously something that we need to test and assess.

11       But this may be a case -- and I'm not saying that it is or

12   isn't.  We want to obviously conduct appropriate discovery and

13   analysis -- where settlement or some resolution,

14   precertification, may be appropriate, and again, we wanted to

15   make sure that we were fulfilling our fiduciary duties both to

16   our clients and to the proposed class by coming to your Honor

17   and making sure that there was somebody who would be authorized

18   to enter into at least those discussions on behalf of the class

19   and the class plaintiffs.

20              THE COURT:  There's no class yet.

21              MS. PRITZKER:  No.  I know.  I understand that.

22              THE COURT:  There's no class yet.

23              MS. PRITZKER:  I understand that.

24              THE COURT:  You don't represent anybody but your

25   individual plaintiff.

1              MS. PRITZKER:  That's correct.

2              THE COURT:  That's the truth there.  There's only a

3    putative class --

4              MS. PRITZKER:  Absolutely.

5              THE COURT:  -- and you don't -- you don't at this

6    point have the right to compromise anybody's claims that they

7    may want to bring against these defendants.

8              MS. PRITZKER:  That's correct, your Honor.

9              THE COURT:  I'm very tough on that.  I have seen too

10   many cases where sweetheart deals are done, the lawyer makes

11   out like a bandit, and the class members get very little.

12   Coupons is a favorite thing --

13             MS. PRITZKER:  Right.

14             THE COURT:  -- or the opportunity to do more business

15   with the wrongdoer.

16             MS. PRITZKER:  Understood.

17             THE COURT:  And I will not tolerate that kind of

18   thing.  If you're going to get coupons, you get paid in

19   coupons.  There will be no sweetheart deals.  You have a

20   duty that -- if you want to do a class action, you've got to

21   take depositions.  You've got to prove the case.  You've got to

22   give me a damage study --

23             MS. PRITZKER:  Absolutely, your Honor.

24             THE COURT:  -- that shows the millions of dollars,

25   and then -- you know, then after I see all that, I can assess

1      the value of the case.  But if you just come forward and say,

2      "In my view, they're going bankrupt.  So I want to get a

3      million-dollar fee, and we'll" -- "they will agree not to do it

4      anymore, and a few cents go to the class members," forget it.

5               MS. PRITZKER:  That's not what I'm saying.  What I am

6      saying is that this may be the unusual case -- and I'm not

7      saying that it is or it isn't -- that there are some financial

8      weaknesses on the part of the defendants that we would like to

9      take into consideration.

10              THE COURT:  You don't know that yet.  You don't know

11     that.

12         Let me ask the other side.  Are you all going broke over

13     there?

14              MS. PRITZKER:  That's exactly right.

15              THE COURT:  Let's find out.

16              MR. BROWNSTEIN:  Your Honor, on behalf of Lazzari,

17     Lazzari is not going broke, but Lazzari is a small business

18     with limited resources in a --

19              THE COURT:  Have you got financial statements?  Can

20     you prove that up?

21              MR. BROWNSTEIN:  Absolutely, your Honor.  Absolutely,

22     and, you know, our view in terms of the motion for class --

23     interim class counsel is we'd like your Honor to appoint

24     someone.  We obviously don't take any position as to who, but

25     we do think that would be a productive thing to do, and we do

1    have financials, and we're prepared to prove up the

2    circumstance.

3               MR. NOGUES:  Your Honor --

4               THE COURT:  Yes.

5               MR. NOGUES:  -- the same is exactly true with

6    California Charcoal.

7               MR. SANGER:  And -- yes.  Robert Sanger on behalf of

8    Mr. Lord.  He came before you, your Honor.  He was the criminal

9    defendant in this matter that gave rise to the press release,

10   that gave rise to the -- counsel seeking out plaintiffs, and he

11   works out of his mother's garage.  Your Honor sentenced him to

12   four months in the Bureau of Prisons and supervised release,

13   which he is completing.  He does have some limited assets, but

14   they're very limited.

15              THE COURT:  All right.  Is there insurance?

16              MR. SANGER:  We also --

17              THE COURT:  Does he have any insurance that applies

18   here?

19              MR. SANGER:  We have tendered -- there's no insurance

20   so far that's accepted, and I don't think they will.  Excuse me

21   for resuming the podium.

22      We have from the beginning sought to pursue some sort of

23   alternative dispute resolution, which I understand requires

24   that there be interim class counsel and that there be notice to

25   all members of the class, and all those things have to be taken

```
 1     care of.
 2          We're not interested in any way in depriving anybody of --
 3     any plaintiff of their opportunity, but we also are interested
 4     in expediting this so that all of the assets at least of my
 5     client don't just go to his lawyers.  We have other things to
 6     do.
 7          Thank you.
 8               THE COURT:  All right.  I'll come back to that in a
 9     minute.
10          We're here also for case management; right?
11               MS. PRITZKER:  We are, your Honor.  There is a
12     competing applicant, which is the other reason why I wanted to
13     address any reason why --
14               THE COURT:  Oh.
15          All right.  Let's hear -- let's hear from the other
16     competing applicant.
17               MS. PRITZKER:  Okay.
18               MR. SAVERI:  Good morning, your Honor.  Rick Saveri
19     on behalf of Darbar.
20          As far as -- there are two cases and four law firms.  We
21     tried to meet and confer on that and work something out.
22     Unfortunately, we were unable to do that, and that's what
23     precipitated this motion here.  I still believe that it would
24     be nice if we could have a co-leadership with Ms. Pritzker and
25     work forward.  However, she appears to want to have just a
```

1    single firm run the litigation.

2              THE COURT:  Well, that would be more efficient.

3              MR. SAVERI:  I -- and so, your Honor, if a single

4    firm is the best way to proceed here given that we've heard

5    that there's limited resources and so to streamline the

6    litigation, we believe then that the Saveri firm and that I

7    should be appointed interim lead counsel.

8         We set forth in our papers the Rule 23 factors in there on

9    why we should proceed with the interim lead counsel.  We did

10   significant investigation into this matter for over a year with

11   Mr. Bonsignore.  We had interviewed class members.  We had

12   interviewed witnesses that divulged to us the identities of the

13   three parties here.

14        When you look at the other factors as to the experience in

15   antitrust litigation and the background and the legal issues

16   here, my firm since 1959 has done class action antitrust work.

17   We have also done for the last 19, now 20 years -- 90 percent

18   of all of my work has been done in antitrust work.  I've been

19   appointed lead counsel on numerous class action antitrust

20   cases.  I've done price-fixing cases, like I said, and tried

21   price-fixing cases in this district.

22        And the last factor, your Honor, is the resources that we

23   can bring to the litigation.  I along with Mr. Hammarskjold

24   would be the primary person here who would go out, take the

25   depositions, do the discovery here, and to move the case

```
 1        forward toward trial.

 2            If necessary, my firm has additional attorneys, senior

 3        attorneys, that we can bring to the litigation, junior

 4        attorneys, paralegals, to raise all the issues as we go

 5        forward, your Honor, and to deal with them.  In addition to the

 6        personal resources, your Honor, my firm has demonstrated that

 7        we can financially bring resources that can proceed the case

 8        through trial and up on appeal.

 9            For the last 50 years, my firm has been backing some of the

10        largest antitrust class actions not only here in this district

11        but throughout the United States.

12                 THE COURT:  All right.  Ms. Pritzker, what do you say

13        to the resources point?  Do you have the resources to do this

14        job?

15                 MS. PRITZKER:  Absolutely, your Honor.  Absolutely.

16                 THE COURT:  I don't mean going out and bringing in --

17                 MS. PRITZKER:  No.  No.

18                 THE COURT:  -- contract counsel.

19                 MS. PRITZKER:  Absolutely.

20                 THE COURT:  I mean your own firm.  Do you have the

21        resources?

22                 MS. PRITZKER:  Absolutely, your Honor.  I mean, I

23        don't sort of come to this litigation sort of anew, either.

24        I've been practicing in this field for -- you know, in the

25        antitrust field particularly for 12 years.  I've been in the
```

```
 1     litigation practice for almost 24 years, have managed a firm as

 2     an equity partner in a prior firm, and I've now put those

 3     resources into my own office.

 4               THE COURT:  How many lawyers do you have in your

 5     firm?

 6               MS. PRITZKER:  I have three currently plus a contract

 7     attorney.

 8               THE COURT:  Three counting you or --

 9               MS. PRITZKER:  Three counting me.

10               THE COURT:  Three plus a contract attorney?

11               MS. PRITZKER:  That's correct.

12               THE COURT:  Ah.  Okay.  All right.

13               MS. PRITZKER:  So I've got the personnel, but I also

14     have the financial resources.  In addition -- I mean, I

15     certainly -- you know, I've been fortunate in my practice.  I

16     certainly have the financial resources to invest in the case as

17     I have done and as I have demonstrated.

18        I think the most significant difference between my firm and

19     Mr. Saveri's firm, I think, all things being equal -- and I

20     think we both have the equivalent level of experience in this

21     area.  I think we have both the equivalent level of expertise,

22     but I think the prefiling investigation that went into this

23     case was mine.  I mean, it was very -- it was very detailed.

24     We worked with a confidential informant in order to tie up the

25     communications that led to the filing of the complaint.  We
```

1    worked very hard on that.

2        Our client, who has -- particularly, Il Fornaio -- Il

3    Fornaio has significant -- probably the most losses of any

4    potential plaintiff that could bring this type of action, you

5    know, relied on those preinvestigative efforts in evaluating

6    whether it should even get involved in this case and determined

7    that that was the most appropriate course.

8        It was -- it was an extensive prefiling investigation, one

9    that I myself did with the members of my firm, which does, you

10    know, contrast with Mr. Saveri's firm.  I mean, he didn't -- he

11    didn't do any investigation.  He did rely on the investigation

12    of his co-counsel, which is a firm in New Hampshire, to build

13    the case and develop the client relationships with the client,

14    who happens to be here in San Francisco.

15        So those preinvestigative efforts, I think, have

16    demonstrated both that I'm willing to commit to personnel and

17    the financial resources to the case, and I have the personal

18    and financial resources to commit to this case.  It's not the

19    biggest case in the world, but it's an important case to me,

20    and it's an important case to my clients, and I'm willing to

21    devote the time, personnel, and resources to get it done

22    efficiently.

23            THE COURT:  Thank you.

24        All right.  All right.  I need to do two things today.  I'm

25    going to rule on this motion.  I'm also going to give you a

1    schedule.

2        So first, the ruling on this motion.  The motion will --

3    the Court will appoint Ms. Pritzker as interim counsel -- it's

4    not interim lead counsel.  It's not interim class counsel.

5    It's just interim counsel.  That's what the rule says -- to

6    represent putative class members.  There is no class yet.  So

7    don't -- and this is without prejudice to possibly appointing

8    somebody else as class counsel if and when we ever get

9    class-certified.

10        I do think it will help all the mechanics of moving this

11   along to have her, and the reason I'm picking her -- I want to

12   say this.  Both of you candidates are excellent candidates, and

13   you both know what you're doing.

14        So the difference is Ms. Pritzker's pleading reveals

15   massive amounts of homework that the other -- Mr. Saveri's

16   complaint does not.  She's done her homework -- more homework

17   in this case than Mr. Saveri.  That's why she's going to get to

18   go forward as the interim counsel.  So we only need one.  We

19   don't need two.  We don't need overkill.  We don't need running

20   up a lot of expenses.

21        Now, Mr. Saveri, you still represent your individual

22   client.  So that is -- that's -- you're not out of the case.

23   You're just -- you're just not -- you don't have that extra

24   responsibility at least at this stage.  I'll explain this in

25   more detail later.

1          We're also consolidating these cases for all purposes,

2     including trial, not just for -- not just for discovery.  So

3     that will also be in the order.

4          Here is your schedule.  It's pretty close to what you asked

5     for.  The trial date is a little bit further out, but -- all

6     right.

7          All additional disclosures should have already been done.

8     Have you done your disclosures?

9               MS. PRITZKER:  We have not, your Honor, but we --

10    we --

11              MR. NOGUES:  We --

12              THE COURT:  You've got until March 7th.

13              MR. NOGUES:  March 7th, yes.

14              MS. PRITZKER:  Yeah.  We're going to do it by March

15    7th.

16              THE COURT:  I'm going to give you until March 7th --

17    March 7th to get it done.  Leave to add any new parties and

18    pleading amendments must be resolved by April 30th.  The motion

19    for class certification must be filed on or before August 7th

20    to be heard in the normal 35-day track.

21         Fact discovery cutoff will be December 19th.  The last day

22    to file your expert reports if you have the burden of proof on

23    the issue will be December 19th.  That's this year.  The last

24    day to file summary judgment, January 29th next year.  Final

25    pretrial conference, March 18th next year, and jury trial on

1       March 23rd next year, and this case will be referred to

2       Magistrate Judge Spero for mediation.

3           Now, I want to be clear.  You cannot talk settlement

4       outside his supervision.  He understands the way I feel about

5       collusion and sweetheart deals and also the amount of homework

6       that needs to be done, and -- for example, it is rare now that

7       I would allow you to settle the case until after all the

8       homework is done, but there have been a couple occasions where

9       a client was truly on the verge of bankruptcy and you had to

10      either get the money then or not at all.

11          Okay.  If that's proven up and shown by competent evidence,

12      I can see that.  That's reasonable, and I can see that, but I

13      will not take your word.  What I heard today is not good

14      enough.  If you went in front of Judge Spero and said, "We've

15      got limited resources," that's not good enough.  You've got to

16      prove that through real numbers.

17          And I -- you know, if somebody has been violating the

18      antitrust laws, maybe their home should be taken away.  Maybe

19      their car should be taken away.  Maybe whatever they've got in

20      their retirement account should be taken away to make up for

21      the people who were victimized by the antitrust violation

22      maybe.

23          So just because you don't have a lot of extra money sitting

24      around in the bank account doesn't mean you have limited

25      resources.  You've got to look at their cars, you've got to

1    look at their bank accounts, you've got to look at their house,

2    vacation home, artwork, whatever they've got.  So that -- I'm

3    pretty tough on that.

4         And, Ms. Pritzker, if you came in and tried to do some kind

5    of quick and dirty deal, forget it.

6              MS. PRITZKER:  That's not my reputation.

7              THE COURT:  As a class action lawyer, you've got to

8    represent the class and protect those absent class members, and

9    this is just not an opportunity to get a fee for you.

10             MS. PRITZKER:  Completely understood, your Honor.

11   It's not been my practice, and it won't be my practice here.

12             THE COURT:  All right.  All right.  Thank you.

13        Okay.  So does anyone want to argue with me on the

14   schedule?  This is pretty close to what you asked me for, but

15   I'm letting you talk me out of it right now.  What would you

16   like to say about it?

17             MR. NOGUES:  Nothing.

18             THE COURT:  From the defense side?

19             MR. BROWNSTEIN:  We're content, your Honor.

20             THE COURT:  Okay.  Good.

21        How about Ms. Pritzker?

22             MS. PRITZKER:  I'm also content, your Honor.

23             THE COURT:  All right.  How about the other parties?

24             MR. SAVERI:  The schedule is fine, your Honor.

25             THE COURT:  All right.  So work hard.  I will be your

1    discovery referee.  If you have any discovery problem, please

2    read those guidelines, but bring it to my attention.  We will

3    fix it promptly.  I'll get working on these orders out soon.

4        Thank you very much.

5              MS. PRITZKER:  Thank you, your Honor.

6              MR. SAVERI:  Thank you, your Honor.

7              MR. BROWNSTEIN:  Thank you, your Honor.

8              MR. NOGUES:  Thank you, your Honor.

9              MR. SANGER:  Thank you, your Honor.

10        (At 10:30 a.m. the proceedings were adjourned.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5          I, James C. Pence, Federal Official Realtime Court

6     Reporter, in and for the United States District Court for the

7     Northern District of California, do hereby certify that

8     pursuant to Section 753, Title 28, United States Code that the

9     foregoing is a true and correct transcript of the

10    stenographically reported proceedings held in the

11    above-entitled matter and that the transcript page format is in

12    conformance with the regulations of the Judicial Conference of

13    the United States.

14
                        Dated this 9th day of April, 2014.
15

16

17    _____
                        JAMES C. PENCE, RMR, CRR, CSR NO. 13059
18                      FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25