ELIZABETH C. PRITZKER (Bar No. 146267)
    ecp@pritzker-law.com
BETHANY L. CARACUZZO (Bar No. 190687)
    bc@pritzker-law.com
SHIHO YAMAMOTO (Bar No. 264741)
    sy@pritzker-law.com
**PRITZKER | LAW**
633 Battery Street, Suite 110
San Francisco, CA 94111
Telephone: (415) 692-0772
Facsimile: (415) 366-6110

*Plaintiffs' Interim Counsel*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| IL FORNAIO (AMERICA) CORPORATION; OLIVETO PARTNERS, LTD. and THE FAMOUS ENTERPRISE FISH COMPANY OF SANTA MONICA, INC., on behalf of themselves and all others similarly situated, | CASE NO. 3:13-cv-05197 WHA; AND CASE NO. 3:13-cv-05331 WHA (CONSOLIDATED) <br><br> <u>CLASS ACTION</u> |
| Plaintiffs, | |
| vs. | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT** |
| LAZZARI FUEL COMPANY, LLC, CALIFORNIA CHARCOAL AND FIREWOOD, INC., CHEF'S CHOICE MESQUITE CHARCOAL, RICHARD MORGEN, ROBERT COLBERT, MARVIN RING, and WILLIAM W. LORD, | |
| Defendants. | Date:  August 28, 2014 <br> Time: 8:00 a.m. <br> Courtroom: 8 |
| DARBAR CUISINE, INC., | Judge:  Hon. William H. Alsup |
| Plaintiff, | |
| vs. | |
| CHEF'S CHOICE MESQUITE CHARCOAL, LAZZARI FUEL COMPANY, LLC, CALIFORNIA CHARCOAL AND FIREWOOD, INC., and William W. Lord, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 2

II. STATEMENT OF FACTS .......................................................................... 3

    A. The Strength Of The Claims Asserted ............................................. 3

    B. Litigation And Discovery .................................................................. 5

    C. Plaintiffs' Damages Study ................................................................. 6

    D. The Factors Affecting Settlement ..................................................... 7

    E. The Proposed Terms of Settlement .................................................. 8

        1. The Settlement Class ................................................................ 8

        2. Settlement Consideration ......................................................... 9

            a. Creation of an $800,000 Settlement Fund.......................... 9

            b. No Reversion To Defendants ........................................... 10

            c. Administrative Costs Will Be Borne By The Lazzari Defendants ..................................................................... 10

            d. Non-Monetary Benefits in the Form of Cooperation ....... 11

            e. Release for Lazzari Defendants ....................................... 11

III. ARGUMENT .......................................................................................... 11

    A. The Settlement Should Be Preliminarily Approved ....................... 11

    B. Plaintiffs Are Adequate Class Representatives With Standing ....... 12

    C. The Proposed Settlement Meets the Standards for Preliminary Approval ....... 16

        1. The Settlement Was Vigorously Negotiated by Informed Counsel ..... 16

        2. The Proposed Settlement is Within the Range of Reasonableness ..... 17

    D. The Proposed Settlement Class Satisfies Rule 23 ......................... 19

        1. The Settlement Class is Ascertainable and Sufficiently Numerous ..... 19

        2. The Case Involves Questions of Law and Fact Common to the Class ..... 20

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

3.     Plaintiffs Will Fairly And Adequately Represent The Class ........................ 20

4.     Common Questions Predominate .................................................. 21

E.     Appointment of Class Representatives and Settlement Class Counsel ................... 22

F.     Proposed Plan of Notice ....................................................................... 23

G.     The Notice Contemplates a Fair, Court-Approved Plan of Allocation .................... 24

H.     Proposed Schedule For Notice and Final Approval .................................. 25

IV.     CONCLUSION ................................................................................... 26

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*Allen v. Wright*,
   468 U.S. 737 (1984) ............................................................................... 13

*Amchen Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................... 19, 21, 22

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) .................................................................. 14

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) .................................................................. 20

*Casey v. Lewis*,
   4 F.3d 1516 (9th Cir. 1993) .................................................................... 13

*Chatelain v. Prudential-Bache Sec., Inc.*,
   805 F.Supp. 209 (S.D.N.Y. 1992) .......................................................... 19

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ........................................................... 12, 24

*Cooperweld Corp. v. Indep. Tube Corp.*,
   467 U.S. 752 (1984) ............................................................................... 15

*Covillo v. Specialty's Cafe*,
   2013 U.S. Dist. LEXIS 153724 (Oct. 25, 2013) .................................... 24

*Davis v. Astrue*,
   250 F.R.D. 476 (N.D. Cal. 2008) ........................................................... 20

*DeVoto v. Pacific Fidelity Life Ins. Co.*,
   618 F.2d 1340 (9th Cir. 1980) ................................................................ 15

*Eisen v. Carlisle and Jacquelin*,
   417 U.S. 156 (1974) ............................................................................... 24

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981)....... 17

*Gay v. Waiters' & Dairy Lunchmen's Union*,
   489 F. Supp. 282 (N.D. Cal. 1980), *aff'd* 694 F.2d 531 (9th Cir. 1982)................. 20

*Haley v. Medtronic, Inc.*,
   169 F.R.D. 642 (C.D. Cal. 1996) ........................................................... 20

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1988).................................................................... 12, 20, 21

*In re Airline Ticket Comm'n Antitrust Litig.*,
953 F.Supp 280 (D.Minn. 1997) ............................................................................. 25

*In re Charles Schwab Corp. Secs. Litig.*,
2011 U.S. Dist. LEXIS 44547 (Apr. 19, 2011) ...................................................... 24

*In re Citric Acid Antitrust Litig.*,
145 F.Supp. 2d 1152 (N.D. Cal. 2001) ................................................................... 24

*In re Citric Acid Antitrust Litig.*,
Case No. 95-1092, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996)............................... 14

*In re Corrugated Container Antitrust Litig.*,
80 F.R.D. 244 (S.D. Tex. 1978) .............................................................................. 22

*In re Critical Path, Inc.*,
C 01-00551 WHA, 2002 U.S. Dist. LEXIS 26399 (N.D. Cal. June 18, 2002)....................... 19

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
Case No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006) ............ 21

*In re Flat Glass Antitrust Litig.*,
191 F.R.D. 472 (W.D. Pa. 1999)............................................................................. 20

*In re Master Key Antitrust Litig.*,
528 F.2d 5 (2d Cir. 1975)........................................................................................ 16

*In re Mego Fin. Corp. Sec. Litig*,
213 F.3d 454 (9th Cir. 2000).................................................................................... 18

*In re Oracle Sec. Litig.*,
1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 16, 1994) ...................................... 25

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
Case No. 3:03-MDL-1566, 2007 WL 4140666 (M.D. Pa. Nov. 19, 2007) ........................... 14

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
Case No. C 07-01819 CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008)........................... 22

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................. 17, 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 291 (N.D. Cal. 2010) ............................................................................ 22

*Reiter v. Sonotome Corp.*,
442 U.S. 330 (1979) ................................................................................................. 22

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................ 18

*Slaven v. BP America, Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000) .......................................................... 20

*Torrisi v. Tuscon Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ........................................................... 12, 19

*U.S. v. William W. Lord*,
    12-cr-00326-WHA ................................................................................. 4

*Williams v. Costco Wholesale Corp.*,
    Civ. No. 02-cv-2003, 2010 WL 76112 (S.D. Cal. March 4, 2010) .................. 12, 13

**STATUTES**

California Civil Code § 3289(b) ..................................................................... 10

Clayton Act, 15 U.S.C. §§ 15 and 26 ............................................................. 4

Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 and Sections 4 and 16 ................. 4, 14, 20

**OTHER AUTHORITIES**

4 Newberg on Class Actions §§ 8.32 (4th ed.  2002) ...................................... 23

4 Newberg on Class Actions §§ 11.25 (4th ed.  2002) .................................... 28

4 Newberg on Class Actions § 11.53(4th ed.  2002) ...................................... 24

5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.83[1], 23-336.2 .... 12

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and
    Procedure: Civil Procedure* § 1781 at 254-55 (3d ed. 2004) ................................ 23

Fed. R. Civ. P. 23(a) ..................................................................................... 19

Fed. R. Civ. P. 23(a)(2) ................................................................................ 20

Fed. R. Civ. P. 23(b)(3) ......................................................................... 19, 22, 23

Fed. R. Civ. P. 23(c) ..................................................................................... 23

Fed. R. Civ. P. 23(c)(1)(B) ............................................................................ 23

Fed. R. Civ. P. 23(c)(2) ................................................................................ 24

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................ 23

Fed. R. Civ. P. 23(e) ..................................................................................... 23

Fed. R. Civ. P. 23(e)(1) ............................................................................................. 23

Fed. R. Civ. P. 23(g) ................................................................................................. 23

*Manual for Complex Litigation (Fourth)*, §21.651 (2004) ........................................ 19

*Manual for Complex Litigation (Fourth)*, §21.651 (2004) ........................................ 24

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 28, 2014, at 8:00 a.m., or as soon as the matter can be heard, in Courtroom 8, 19th Floor, the Honorable William H. Alsup presiding, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiffs Il Fornaio (America) Corporation, Oliveto Partners, Ltd., and The Famous Enterprise Fish Company of Santa Monica, ("plaintiffs") in the action *Il Fornaio (America), et al. v. Lazzari Fuel Co., et al.*, Case No. C- 13-05197-WHA, on behalf of themselves and all others  who purchased mesquite lump charcoal directly from any of the defendants, will and hereby do move the Court for an order: (i) certifying a Settlement Class; (ii) granting preliminary approval of the proposed settlement set forth in the Stipulation of Settlement ("Settlement"); (iii) approving the form and manner of giving notice of the proposed Settlement to the Settlement Class; (iv) appointing interim plaintiffs' counsel as Settlement Class Counsel and named plaintiffs as Class Representatives for the Settlement Class; (v) setting a hearing date to consider final approval of the proposed Settlement; and (vi) approving a timetable and Plan of Allocation for disbursing Settlement funds to Settlement Class Members.

This Motion is based on the accompanying Memorandum of Points and Authorities, the Settlement, the accompanying Declaration of Elizabeth C. Pritzker, the declarations of Andrew D. Schwartz and Monica Ip, CPA/CFF, attached to this Declaration, the pleadings and papers on file in this action, the argument of counsel and such other materials as plaintiffs or the settling defendants may provide at or before the time of hearing.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the proposed Settlement should be approved preliminarily.

2. Whether the proposed form and manner of notice should be approved.

3. Whether the proposed Settlement Class should be certified.

4. Whether interim plaintiffs' counsel should be appointed as Settlement Class Counsel.

5. Whether the named plaintiffs should be appointed as Class Representatives for the Settlement Class.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Il Fornaio (America) Corporation, Oliveto Partners, Ltd., and The Famous Enterprise Fish Company of Santa Monica ("plaintiffs") submit this Notice of Motion and Unopposed Motion for Preliminary Approval of the Proposed Class Settlement and Memorandum of Points and Authorities in Support Thereof ("Preliminary Approval Motion") in support of plaintiffs' motion for an order preliminarily approving a class settlement reached with defendant Lazzari Fuel Company, LLC ("Lazzari") and two of the company's individually named shareholders, Richard Morgen ("Morgen") and Robert Colbert ("Colbert") (collectively, the "Lazzari Defendants"). Under the Settlement, Lazzari will continue to cooperate with plaintiffs[1] and pay $750,000 into a Settlement Fund over the course of six years, in exchange for a release of the class members' claims. Morgen and Colbert will each pay $25,000 into the Fund. *See* Settlement, ¶¶ 16(a), 16(b).

The total Settlement amount is $800,000, which represents approximately 17% - 27% of the maximum amount of overcharge damages attributable to Lazzari as an alleged co-conspirator in this case. *See* Declaration of Elizabeth C. Pritzker ("Pritzker Decl."), ¶ 29. Lazzari's direct sales of mesquite lump charcoal remain in the case for purposes of computing plaintiffs' treble damages claim against the non-settling defendants. *Id*, Exh. A (Settlement Agreement, ¶ 37.)

The Settlement was negotiated at the early stages of the litigation with the assistance of Magistrate Judge Spero. The Settlement amount and its timing were driven not by plaintiffs' view of what was theoretically recoverable from the Lazzari Defendants, but what was actually recoverable from these Defendants, given the demonstrably weak financial condition of Lazzari and the limited financial resources of Messrs. Morgen and Colbert. Plaintiffs assessed that Lazzari would have no ability to satisfy a judgment were plaintiffs to prevail at trial, and that such a judgment would

---

[1] Lazzari was the leniency applicant in the U.S. Department of Justice's investigation regarding collusion in the sale of mesquite lump charcoal, which resulted in a criminal antitrust conviction of William W. Lord, the owner of defendant Chef's Choice. *See* Morgen Decl. ¶ 4. Morgen and Colbert also provided cooperation to plaintiffs in this action by producing documents, sitting for interviews and providing deposition testimony regarding the nature and extent of the conspiracy that Lazzari reported to the Department of Justice. *See id*.; Colbert Personal Decl., ¶ 2. Under the Settlement, Lazzari, Morgen and Colbert will continue to cooperate with plaintiffs going forward. *See* Pritzker Decl., Exh. A (Settlement, ¶ 29).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

inevitably bankrupt the company. Lazzari is seriously extended on its line of credit, and its assets consist predominantly of good will, inventory and other intangibles. Plaintiffs had significant concerns that even continued litigation through the class certification and summary judgment phases of the case would have a deleterious effect on Lazzari's liquidity and ability to continue as a going concern. Pritzker Decl., ¶¶ 17, 20. Accordingly, once settlement negotiations commenced before Magistrate Judge Spero, plaintiffs' principal consideration was not the maximum damages that could be obtained from the Lazzari Defendants at trial, but the maximum amount these Defendants realistically could pay to resolve the matter for the benefit of class members. *Id*, ¶ 30.

To assist plaintiffs in their consideration of all relevant factors, interim counsel recruited Monica Ip, CPA/CFF, of Evidentia Consulting, LLP to assist plaintiffs in examining the Lazzari Defendants' financial documentation and assessing their respective financial conditions. Pritzker Decl., ¶ 20, Exh. D. Plaintiffs also retained David Kerr, a licensed real estate agent, to offer a fair market evaluation of a Sonoma real property owned by defendant Colbert. *Id*, ¶ 23, Exh. I. Plaintiffs additionally consulted with their economist, Andrew D. Schwarz of OSKR, LLC, who provided a damage study to aid the Court in its evaluation of the Settlement. *Id*, ¶¶ 19-20, Exh. C.

Based upon plaintiffs' and its advisors' due diligence, plaintiffs have satisfied themselves that the proposed Settlement, at a minimum, approached the maximum that plaintiffs could obtain from the Lazzari Defendants, and that it was fair and in the best interest of the proposed class. Accordingly, plaintiffs believe that the Settlement should be approved preliminarily by the Court.

## II.   STATEMENT OF FACTS

### A.   The Strength Of The Claims Asserted

This action involves an eleven-year agreement, understanding or conspiracy among and between the defendants to allocate customers and not compete for sales mesquite charcoal to each other's customers. Mesquite lump charcoal is harvested in Mexico, and used in the restaurant industry for, primarily, grilling meats, poultry and fish. Defendants are all located in California and are long-term importers, distributors and sellers of mesquite lump charcoal across the United States.

Plaintiffs are restaurants that purchased mesquite lump charcoal directly from defendants during the alleged 11-year conspiracy. Plaintiffs assert claims under Section 1 of the Sherman

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

Antitrust Act, 15 U.S.C. § 1 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26. Plaintiffs seek damages and appropriate injunctive relief for themselves and a proposed class of persons that purchased mesquite lump charcoal directly from defendants for restaurant or food service, as defined in the First Amended Complaint.

One of the defendants, William Lord, pleaded guilty to criminal antitrust charges and admitted that "[f]rom 2000 to 2011," he and his company, Chef's Choice, "participated in an arrangement with two competitors, Lazzari Fuel Company, [LLC] and California Charcoal and Firewood, [Inc.,] wherein each of the three companies and their principals agreed to suppress and restrain competition by:

1. Agreeing not to complete for sales of mesquite charcoal to co-conspirators' customers;

2. Refraining from submitting bid prices and co-conspirators' customers; and

3. Communicating regarding bids prices and then submitting agreed-upon and intentionally non-competitive bids to co-conspirators' customers."

(*See* Defendant's Sentencing Mem., *U.S. v. William W. Lord*, 12-cr-00326-WHA [Dkt. No. 14].) Mr. Lord testified at deposition in this action that these "principals" were Mr. Morgen and Mr. Colbert of Lazzari and Marvin Ring of California Charcoal.  Pritzker Decl., ¶ 12, Exh. E.

Lazzari's Morgen and Colbert also gave testimony about the nature and scope of the defendants' conspiracy.  Morgen testified that he, Colbert and Lord met at the Oakland Airport in the late 1990's and entered into an agreement to notify each other whenever an existing customer of the other was "shopping around for prices" for mesquite charcoal.  Pritzker Decl., ¶ 13, Exh. F.  Under this "mutual arrangement," if Lazzari received a request for a price quote for mesquite charcoal from a Chef's Choice customer, Lazzari would call and ask Lord what Lazzari should bid to ensure that Chef's Choice "was the low bidder" and would retain the customer's mesquite charcoal business. Alternatively, it was agreed that the entity contacted for the quote would either not provide a quote or offer a pre-textual reason for not selling to the customer – for example, by providing misleading information about its inventory or current supply of mesquite charcoal.  *Id*. While less forthcoming on specifics, Colbert corroborated Morgen's testimony about an agreement that "Lazzari and Bill Lord would not actively or in any way take an existing customer away from the other."  Pritzker

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

1  Decl., ¶ 14, Exh. F.

2      While Morgen and Colbert denied entering into an *express* agreement with defendant Ring of

3  California Charcoal not to compete, both men admitted that Lazzari decided not to compete, and in

4  fact, did not compete with California Charcoal and/or Ring during the relevant 11-year period.

5  Pritzker Decl., ¶14, Exhs. F, G.  Contemporaneous notes taken by Colbert and Morgen evidence

6  frequent communications between Lazzari and Ring, and corroborate Lord's prior admissions

7  regarding an unlawful conspiracy among Lazzari, Chef's Choice and California Charcoal, and their

8  principals, to allocate and refrain from competing for each other's customers.  *Ibid.*

9      As ACPERA applicants, the Lazzari Defendants did not contest liability for their participation

10  in the alleged price-fixing conspiracy, but did vigorously contest causation and damages.  *See, e.*g.,

11  Morgen Decl., ¶ 4; Colbert Decl., ¶ 2; Pritzker Decl., ¶ 27.

12      **B.      Litigation And Discovery**

13      The Complaint was filed on November 7, 2013. (Dkt 1.)  On February 27, 2014, the court

14  held a status conference and appointed interim counsel.  (Dkt. 58.)  At the February 27 hearing,

15  counsel for Lazzari represented that Lazzari's financial condition was an issue in this case.  Pritzker

16  Decl., Exh. H (2/27/14 Transcript of Hearing, at 8:16-9:2.) The Court ordered the parties to a

17  settlement conference before Magistrate Judge Spero, and instructed that any claims regarding a

18  defendant's inability to pay damages would need to be proven up.  *Id*, at 17:1-16.

19      The parties exchanged initial disclosures on March 7, 2014, and defendants began producing

20  their transactional data evidencing their sales on a rolling basis at that time.  Pritzker Decl., ¶ 7.

21  Lazzari also granted plaintiffs access to their online accounting and financial software program,

22  called Peachtree.  *Ibid*.  As part of its initial disclosures, California Charcoal produced its

23  QuickBooks data through June 2013 in electronic format.  *Ibid*.  Chef's Choice produced certain

24  materials previously provided to the Department of Justice, including handwritten ledgers apparently

25  reflecting sales of mesquite lump charcoal and a small number of purchase orders reflecting mesquite

26  lump charcoal sales.  *Ibid*.

27      Plaintiffs served requests for production on April 3, 2014.  After evaluating defendants' DOJ

28  productions, which included extensive handwritten notes contemporaneously recorded by Morgen

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

1    and Colbert, on May 21, 2014, plaintiffs obtained leave to amend their class action complaint to name

2    Morgen, Colbert, Ring and Lord as individual co-conspirator defendants.  Pritzker Decl., ¶ 8; *see*

3    *also* Dkts. 69, 74, 75.  Plaintiffs served additional requests for production and interrogatories seeking

4    discovery of defendants' assets and financial net worth on May 5, 2014.  *Id*, ¶ 9.

5        Plaintiffs completed depositions of Morgen, Ring, Colbert and Lord during May and June

6    2014.  Pritzker Decl., ¶ 9.  Prior to commencement of these depositions and in preparation for them,

7    plaintiffs reviewed thousands of pages of documents and electronic records.  *Ibid.*

8        **C.        Plaintiffs' Damages Study**

9        Magistrate Judge Spero scheduled a settlement conference for June 26, 2014.  *See* Dkt. 54.

10   In advance of that conference, plaintiffs retained an economist, Andrew D. Schwarz of OSKR, LLC

11   to provide a class-wide damages analysis.  Pritzker Decl., ¶ 19.  Plaintiffs also recruited Monica Ip,

12   CPA/CFF of Evidentia Consulting, LLP, to assist plaintiffs in assessing each of the defendants'

13   financial condition.  *Ibid.*  An initial form of Mr. Schwarz's damages analysis and Ms. Ip's financial

14   analysis were utilized by plaintiffs and Magistrate Judge Spero during discussions at the June 26

15   settlement conference.  *Ibid.*

16       Since the date of the settlement conference, Mr. Schwarz has continued to refine his damages

17   analysis.  That analysis now appears in the Declaration of Andrew D. Schwarz, filed herewith as

18   Exhibit C to the Pritzker Declaration (hereinafter "Schwarz Decl.").  The methodology used by Mr.

19   Schwarz to calculate class-wide damages is properly tied to plaintiffs' theories in this case, and is

20   thoroughly detailed in Mr. Schwarz's declaration.  *See* Pritzker Decl., Exh. C, at ¶¶ 51-86.  Mr.

21   Schwarz's analysis includes case-specific inputs, including (a) the quantity of goods sold by the

22   defendants during the class period, (b) the prices charged for mesquite lump charcoal; (c) the relevant

23   profit margin for the time period; and (d) an estimates of the price elasticity of demand for the

24   relevant market.  *Id*, ¶ 55.   Actual sales, financial and pricing data provided by defendants are used

25   in the analysis, to the extent such data are available. *Id.*, ¶¶ 56–69.  The data support plaintiffs'

26   allegations regarding a relevant market and defendants' collective market power (*see id*, ¶¶ 21-50)

27   and provide a basis for Mr. Schwarz to calculate estimates for market price elasticity of demand.  *Id*,

28   at ¶¶ 72-78.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

Mr. Schwarz employs a well-developed structural model to assess the fact of and amount of injury caused by the collusive activity alleged in this case. *See* Pritzker Decl., Exh. C, at ¶¶ 51-55. Using the actual-market structural variables derived from the defendant data, Mr. Schwarz calculates class-wide damages based on each of two assumed price elasticity measures: (1) -1.68 as derived from California Charcoal sales data, the most complete data available; and (2) -1.31 as derived from Lazzari's somewhat less-robust sales data. *Id*, ¶¶ 75-78. The average price overcharge stemming from the alleged conspiracy is estimated to be 11.7 % for elasticity of -1.68, and 19.2 % for elasticity of -1.31. *Id*., ¶ 84. The resulting class-wide damages for the proposed class of direct purchasers of mesquite lump charcoal range from $ 8,186,743 (assuming price elasticity of -1.68) to $12,586,264 (assuming price elasticity of -1.31) assessed on total revenues of the relevant mesquite charcoal for the 11-year class period of $78,000,000. Exh. A, ¶¶ 12, 85. Mr. Schwarz's calculation of the proportion of class-wide damages allocable to Lazzari's market share ranges from $2,915,381 (for elasticity of -1.68) to $4,623,379 (for elasticity of -1.31). *Id*, ¶ 85.

### D.       The Factors Affecting Settlement

Settlement discussions before Magistrate Judge Spero as between plaintiffs and the Lazzari defendants focused on three salient factors.

The first and most significant factor was the financial condition of Lazzari, and the limited financial resources of Colbert and Morgen, Lazzari's current and former managing shareholders. Lazzari operates from an industrial rental property in Brisbane, California. Declaration of Robert Colbert re: Lazzari finances ("Colbert Lazzari Decl."), ¶¶ 2, 3. The business has few assets beyond accounts receivable, inventory on hand, its good will and other intangibles. *Id*, ¶ 10-19; Declaration of Monica Ip ("Ip Decl."), ¶ 4(c). While sales revenues are stable, Lazzari's gross margins fell in the fourth quarter of 2013 and the first quarter of 2014, reflecting a significant loss per quarter. Ip Decl., ¶ 4(b)(iv). Morgen retired from Lazzari in March 2013, having been diagnosed with Parkinson's disease the year prior, and is no longer able to work. Morgen Decl., ¶6. Morgen is divorced, owns no real property, has only a small amount of personal savings and no assets to commit to a settlement or attach. *Id*, ¶¶ 3, 7, 8; Ip Decl., ¶ 4(f)(i). Colbert owns two pieces of real property, but does not have sufficient equity in either property to commit to a settlement. Declaration

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

1   of Robert Colbert re: his personal finances ("Colbert Personal Decl."), ¶¶ 4-12, Exh.1 ; Ip Decl., ¶

2   4(e); Pritzker Decl., Exh. I at p. 25.  Colbert's other assets are limited to a small retirement account

3   and small savings account.  Colbert Personal Decl., ¶ 12; Ip Decl., ¶ 4(e)(i).

4           Lazzari also is burdened with financial debt.  The company uses a line of credit at California

5   Bank & Trust to fund operations between high and low sales seasons.  Currently, Lazzari is severely

6   extended on its business line of credit.  Colbert Lazzari Decl., ¶ 10.  The company currently is out

7   of compliance with a debt coverage ratio required by its line of credit agreement, and is in default

8   of the terms and conditions of its lending agreement.  *Id.*, ¶ 12, Exh. 2.  California Bank & Trust has

9   granted Lazzari forbearance from default until June 30, 2014, which has allowed Lazzari to continue

10  operating out of compliance.  *Ibid*. While Lazzari believes it has meritorious defenses, Lazzari's

11  relationship with its lender, and the company's ability to continue to operate is threatened by

12  continuing to devote financial resources to the litigation.  *Id.*, ¶¶ 20-25.

13          Third, unlike the typical settlement where a plaintiff, at least theoretically, can wring as much

14  from the defendant as possible, regardless of the consequences, plaintiffs here had to balance

15  maximizing the recovery they could realistically obtain and leaving Lazzari sufficient time and

16  resources to deal with its future business issues including, most importantly, the ability to raise

17  capital through future product sales and to finance its debt.  The resulting Settlement, the terms of

18  which are described below, seeks to give Lazzari as much flexibility as possible while protecting the

19  interests of plaintiffs and the proposed Class.

20      **E.      The Proposed Terms of Settlement**

21          The proposed Settlement resolves all claims against the Lazzari Defendants only.  The terms

22  of the Settlement are outlined below.

23              **1.       The Settlement Class**

24  The proposed Settlement Class is defined as follows:

25  All persons in the United States who purchased Mesquite Lump Charcoal directly
    from any Defendant, and/or their subsidiaries and co-conspirators, during the
    period from and including January 2000 through September 30, 2011.  Excluded

26  from the Class are defendants, their parent companies, subsidiaries and affiliates,
    any co-conspirators, all governmental entities, and any judges or justices assigned

27  to hear any aspect of this action.

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

For purposes of this Settlement "Mesquite Lump Charcoal" is defined to mean mesquite charcoal that was packaged, marketed and sold for restaurant or food service use.  Pritzker Decl., Exh. A (Settlement Agreement, ¶ A.1).

### 2.   Settlement Consideration

#### a.   Creation of an $800,000 Settlement Fund

Together, the Lazzari Defendants agreed to pay $800,000, with Lazzari paying $750,000, and Colbert and Morgen paying $25,000 each.  Pritzker Decl., Exh. A (Settlement Agreement, ¶ 16).  The total settlement amount, $800,000, represents approximately 17% - 27% of the maximum amount of overcharge damages plaintiffs' expert estimates to be attributable to Lazzari.  Pritzker Decl., ¶ 29.

Given the financial limitations of all Defendants, settlement payments will be made on a payment schedule over six years.  On September 2, 2014, Lazzari will deposit $125,000 into a Settlement Fund held by a third-party escrow agent, and Colbert and Morgen will each deposit $5,000 into the Settlement Fund.  Pritzker Decl., Exh. A (Settlement Agreement, ¶¶ 16(a), (b)).  Colbert and Morgen will make their remaining payments of $20,000 each no later than January 1, 2015 and April 1, 2015, respectively. *Id*, ¶ 16(b). Starting April 1, 2015, Lazzari will make 66 monthly payments of at least $9,470.00 into the Settlement Fund, until its settlement obligation is extinguished.  *Id*, ¶ 16(a).  Lazzari has the option to make larger monthly payments, or to make more frequent payments, and may extinguish its settlement obligation on a shorter schedule.  *Id*, ¶ 16(d).  Should Lazzari be sold, or should there be any change in control over the company, the settlement consideration will be accelerated, and the full remaining amount shall be due and payable within 30 days of the completion of the sale of shares or assets.  *Id*, ¶ 16(f).

The parties agree that Lazzari's payment obligations under the Settlement are subordinate to the company's business loan agreement with California Bank & Trust, the latter of which is personally guaranteed by defendant Colbert.  Pritzker Decl., Exh. A (Settlement Agreement, ¶ 16(g)); Colbert Lazzari Decl., ¶ 13.  Lazzari will not distribute funds to its shareholders if, at any time required by the Settlement, such shareholder distribution either will cause Lazzari to be unable to make the annual or monthly payments specified in the Settlement, or cause Lazzari to be non-compliant with the debt coverage ratio of its business loan with California Bank & Trust, or both.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

(Settlement, ¶ 16(g)). Should Lazzari fail to meet its obligation to make timely payments as required by the Settlement, plaintiffs shall have the right, upon sixty (60) days advance notice to Lazzari and California Bank & Trust, to declare an Event of Default and seek a court order declaring that the full or remaining balance of Lazzari's $750,000 payment shall be immediately due and owing.  *Id*, ¶ 16(h).  Plaintiffs shall be entitled to interest on the unpaid balance, at the legal rate specified in California Civil Code § 3289(b), as well as attorneys' fees and costs necessary to enforce the Settlement and obtain the balanced owed under the Settlement.  *Id.*

### b.	No Reversion To Defendants

In no circumstance shall funds deposited into the Settlement Fund pursuant to the Settlement revert to the Lazzari Defendants.  Settlement Fund monies may be used only to pay plaintiffs' attorneys' fees and litigation expenses in amounts approved by the Court[2], and all sums remaining in the Net Settlement Fund after such fees and expenses are paid shall be disbursed to class members in accordance with a Plan of Allocation to be approved by the Court.  Pritzker Decl., Exh. A (Settlement, ¶ 22).

### c.	Administrative Costs Will Be Borne By The Lazzari Defendants

Separate and apart from the settlement consideration described above, the Lazzari Defendants agree to pay all costs associated with establishing and maintaining the Settlement Fund escrow account, disseminating notice to the class and fees and costs associated with administration of the Settlement.  Pritzker Decl., Exh. A (Settlement, ¶¶ 17(a), 19, 28).

The Parties have agreed upon a form of class notice.  *See* Pritzker Decl., Exh. B.  Subject to the Court's approval, the class notice will be mailed, at Lazzari's expense, by a third-party settlement administrator to the approximately 1500 class members that have been identified in defendants' records.  Pritzker Decl., ¶28, Exh. A (Settlement, ¶¶ 27, 28).

Plaintiffs discuss Plan of Allocation proposals in Section III.G. of this Memorandum, below.

---

[2]  Plaintiffs do not seek an award of attorneys' fees and litigation expenses as part of this motion, but reserve the right to do so at an appropriate time.  The proposed form of class notice advises Settlement Class members that plaintiffs' counsel may seek a fees and expenses award to be paid from the Settlement Fund at a later time, and further advises that the amount of litigation expenses incurred by plaintiffs' counsel to date currently total $ 65,690.81.  *See* Pritzker Decl., Exh. B.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

1    If the Settlement is finally approved, the claims administrator will disburse monies to class members

2    from the Settlement Fund, at the appropriate time(s), in accordance with the Plan of Allocation

3    authorized by the Court.  Pritzker Decl., Exh. A (Settlement, ¶ 28).

4                    **d.        Non-Monetary Benefits in the Form of Cooperation**

5            The Settlement also confers non-monetary benefits.  Each Lazzari Defendant will continue

6    to cooperate with plaintiffs in the prosecution of the case by providing interviews, discovery and

7    testimony for summary judgment and trial.  Pritzker Decl., Exh. A (Settlement, ¶ 29).

8                    **e.        Release for Lazzari Defendants**

9            Upon final approval of the Settlement, plaintiffs and the Settlement Class members will

10   release all claims they have against the Lazzari Defendants that "were asserted in this Action" and/or

11   that "arise from the Action or the factual allegations made therein."   Pritzker Decl., Exh. A

12   (Settlement, ¶ 13).  However, the released claims only include sales of Mesquite Lump Charcoal that

13   are subject to the antitrust laws of the United States, and is limited only to direct purchaser claims.

14   *Id*, ¶¶ 13, 14.  The release expressly excludes "any other claims, including but not limited to claims

15   for product defect, personal injury or breach of contract in the ordinary course of business.  *Id*, ¶ 14.

16   **III.   ARGUMENT**

17       **A.    The Settlement Should Be Preliminarily Approved**

18           Plaintiffs submit the proposed Settlement for preliminary approval.  As set forth in the

19   Manual for Complex Litigation, a class action settlement "involves a two-step process."

20                   First, counsel submit the proposed terms of the settlement and the court
21                   makes a preliminary fairness evaluation….  If the preliminary evaluation
                     of the proposed settlement does not disclose grounds to doubt its fairness
22                   or other obvious deficiencies…the court should direct that notice under
                     Rule 23(c) be given to the class members of a formal fairness hearing, at
23                   which argument and evidence may be presented in support of and in
                     opposition to the settlement.
24
     *Id*, § 30.41 at 236-37 (3d ed. 1995).
25
             Preliminary approval does not require the Court to make a final determination that a
26
     settlement is fair, reasonable and adequate.  Rather, that decision is made only at the final approval
27
     stage, after notice of the settlement has been given to class members.  *See* 5 JAMES WM. MOORE
28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.83[1], 23-336.2 to 22-339 (3d ed. 2001).  At the preliminary approval state, the "Court need only determine whether the proposed settlement appears on its face to be fair" and "falls within the range of possible [judicial] approval."  *Williams v. Costco Wholesale Corp*., Civ. No. 02-cv-2003, 2010 WL 76112, at *5 (S.D. Cal. March 4, 2010).  "A settlement should be approved if it is fundamentally fair, adequate and reasonable."  *Torrisi v. Tuscon Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotations omitted).  Different facts may predominate in different circumstances.  *Ibid*.

Generally speaking, courts favor settlements and thus give "proper deference" to the parties' settlement agreement because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole is fair, reasonable and adequate to all concerned."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1988) (internal quotations omitted).  If the settlement falls within the range of what could be "fair, adequate and reasonable," preliminary approval is appropriate, notice may be given to the proposed class and a hearing for final approval can be scheduled.  *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "Given that some…factors cannot be fully assessed until the Court conducts the Final Approval Hearing, 'a full fairness analysis is unnecessary at this stage.'"  *Williams*, 2010 WL 761122, at *5.

## B.      Plaintiffs Are Adequate Class Representatives With Standing

Plaintiffs seek to be appointed as class representatives for the proposed Settlement Class.  Each plaintiff has standing to assert the antitrust claims alleged in the First Amended Complaint is motivated to act on behalf of the Settlement Class.

Article III of the U.S. Constitution "requires a litigant to have 'standing' to invoke the power of a federal court."  *Allen v. Wright*, 468 U.S. 737, 750 (1984).  To have standing, a "plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Id* at 751.  "At least one named plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class."  *Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir. 1993).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

1    Plaintiffs have alleged and can show they satisfy the actual injury component of standing,

2    here.  Each plaintiff is a restaurant that directly purchased Mesquite Lump Charcoal from one or

3    more of the defendants during the alleged Class Period.  *See* First Amend. Cmplt. [Dkt. 55], ¶¶ 7, 12,

4    13, 14.  Thus, like all proposed Settlement Class members, plaintiffs can allege and will seek to

5    demonstrate, through a damages expert, that they overpaid due to the conspiracy among defendants

6    and were injured by that overcharge.  *See* Schwarz Decl., ¶¶ 79-86.

7    Plaintiffs are motivated to act, have acted, will continue to act on behalf of the unnamed

8    members of the proposed Settlement Class.  As shown in discovery produced in the litigation, each

9    plaintiff purchased significant amounts of Mesquite Lump Charcoal during the alleged class period.

10   Enterprise Fish purchased approximately $152,760 worth of Mesquite Lump Charcoal during the

11   period directly from two defendants, California Charcoal and Chef's Choice.  Pritzker Decl., ¶ 32.

12   Oliveto purchased approximately $54,458 worth of Mesquite Lump Charcoal during the class period

13   directly from Lazzari.  *Id*. Also during the class period, Il Fornaio purchased approximately

14   $1,740,756 worth of Mesquite Lump Charcoal directly from California Charcoal and Lazzari.  *Id*.

15   Indeed, according to discovery produced in the litigation, at one time, Lazzari considered Il Fornaio

16   to be one of its top five customers.  *Id*.  The significance of plaintiffs' Mesquite Lump Charcoal

17   purchases, alone, suggests that each plaintiff is motivated to prosecute the litigation, both for itself

18   and the proposed Settlement Class.

19   That plaintiffs and unnamed class members purchased Mesquite Lump Charcoal at different

20   times or in different amounts does not mean that plaintiffs lack standing.  Plaintiffs may assert claims

21   that are "typical" of other class members even though individual plaintiffs or class members suffered

22   less (or more), or suffered injuries at different times.  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir.

23   2001).  Indeed, typicality is easily generally satisfied in Section 1 cases because "in instances wherein

24   it is alleged that the defendants engaged in a common scheme relative to all members of the class,

25   there is a strong presumption that the claims of the representative parties will be typical of the absent

26   class members."  *In re Citric Acid Antitrust Litig*., Case No. 95-1092, 1996 WL 655791, at *3 (N.D.

27   Cal. Oct. 2, 1996).  *See also In re Pressure Sensitive Labelstock Antitrust Litig*., Case No. 3:03-MDL-

28   1566, 2007 WL 4140666, at *10 (M.D. Pa. Nov. 19, 2007) ("Typicality is usually satisfied in a

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

horizontal conspiracy case, even though a plaintiff may have purchased different product types or quantities or received different prices, or a plaintiff purchased from one defendant but not another.")

The Lazzari Defendants do not oppose this motion or the request to certify a Settlement Class (discussed more fully in Section D, below).  Plaintiffs anticipate, however, that the non-settling defendants may argue that plaintiffs cannot allege a proper geographic market for class certification purposes because, these defendants theorize, Mesquite Lump Charcoal is a heavy bulk product that requires shipping and defendants employ different shipment methods.  *See* Cal. Charcoal Answer [Dkt. 80], ¶ 98; Chef's Choice Answer [Dkt. 83], ¶ 98.  These defendants take the position that the defendants operated in geographically discernible local markets (Los Angeles, the San Francisco Bay Area, and Santa Barbara); that the Mesquite Lump Charcoal market is divided into separate markets for full- and half-truckload deliveries that were not uses for the Mesquite Lump Charcoal that plaintiffs purchased; and that defendants alleged collusion did not have any effect on competition in the local markets in which plaintiffs purchased less-than-full- or half-truckloads of product.  This assertion does not defeat class certification, for each of several reasons.

First, plaintiffs here allege *per se* violations of the Sherman Antitrust Act involving customer allocation and agreements not to compete for each other's customers.  *See* First Amend. Cmplt. ¶ 85-91; Pritzker Decl., Exh. J [Sept. 24, 2012 Sentencing Transcr. Of William W. Lord] at 16:12-18 (Judge Alsup to Defendant Lord:  "These conspiratorial agreements steal money out of the economy just like somebody who goes to the bank with a gun.  They've been illegal for more than a century.  It's a *per se* violation to do what you did; it's a despicable crime against the economy of this country.").  Under the *per se* standard, plaintiffs are relieved of the obligation to define a market and prove market power.  *See Cooperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984); *DeVoto v. Pacific Fidelity Life Ins. Co.*, 618 F.2d 1340, 1345 (9th Cir. 1980) (absent a *per se* violation, competitive injuries must be defined in terms of a discrete market).

Second, it is simply not factually the case that defendants operated in geographically distinct markets, or in specialized markets defined by methods of shipment, during the class period.  Records produced by California Charcoal in discovery show hundreds of transactions with "ship to" addresses in Northern California, Santa Barbara, and Central Valley regions during the Class Period (excluding

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

inter-defendant transactions).  Schwarz Decl., ¶ 31.  Lazzari's records include 131 transactions sold to customers with "ship to" addresses in Southern California over four years in 2008-2011.  *Id.* Defendants had the ability to sell, and did sell, Mesquite Lump Charcoal into each other's regions, sometimes functioning as the retail arm for one another, so that a defendant could sell mesquite lump charcoal to an allocated customer using that defendant's preferred delivery method without competition from another defendant.  *Id*, ¶¶ 32-35.  The transactional data is especially illuminating given the allegations in this case.  If, as defendants contend, there was no way to effectively compete in each other's geographic markets, or if the full- and half-truckload market was a distinct market, why would defendants need to agree not to compete or undercut each other in quoting to each other's customers—as at least of the four individual co-conspirators have admitted here—if the actual price that would have been quoted would have been higher than the defendant's price in the local area?  See Pritzker Decl., Exh. E [Lord Dep. at 36:12-37:12, 38:13-40:1, 51:12-53:2, 53:3-58:4.]; Exh. F [Morgen Dep. at 102:3-18, 102:21-103:14, 104:15-22, 107:15-108:14, 111:19-112:4, 138:9-14, 189:20-190:24, Exh. 10; 191:16-25, 193:13-18, Exh. 11; 194:19-195:7, 216:2-218:7, Exh. 18]; Exh. G [Colbert Dep. at 115:22-116:11, 126:2-16, 128:2-24, 130:25-131:16, 132:6-133:24, 135:1-23]. Here, plaintiffs allege, the prices charged to plaintiffs and Settlement Class members was higher than it would have been in competitive market because of the defendants' agreements not to undercut one another.

Third, plaintiffs' economist will testify that even if the admitted conspiracy among defendants occurred only at the wholesale, full- or half-truckload level—and this is not borne out by the evidence obtained—restaurant purchasers like plaintiffs experienced higher prices because of defendants' agreement not to compete for any incumbent customer, including direct-to-restaurant customers. Schwarz Decl., ¶¶ 40-43.  Thus, each plaintiff and each Settlement Class member experienced direct anticompetitive harm from the absence of competition for its business.

Fourth, because defendants sold both to restaurants and to wholesalers that would potentially compete for those same restaurant customers, plaintiffs' economist has opined that all direct-to-restaurant customers were affected by the alleged (and admitted) agreement to restrict price competition with respect to wholesalers that would serve as potential substitute suppliers to restaurant

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

purchaser like plaintiffs.  Schwarz Decl., ¶ 20.  Thus, even if the proven price agreements were limited to a conspiratorial agreement not to compete for each other's wholesale business clients, each individual restaurant class member nonetheless suffered common harm by having lessened price competition (i.e. raised rivals' costs) for direct-to-restaurant Mesquite Lump Charcoal purchases between (at least) one defendant and the defendant's allocated wholesale customers.  *Ibid*.  Common harm of this nature supports class certification of plaintiffs' antitrust claims here.  *See In re Master Key Antitrust Litig*., 528 F.2d 5, 12, n.11 (2d Cir. 1975) ("If [plaintiffs] establish at the trial for liability that the defendants engaged in an unlawful national conspiracy which had the effect of stabilizing prices above competitive levels, and further establish that [plaintiffs] were consumers of that product, we would think that a jury could reasonably conclude that [defendants'] conduct caused injury to each [plaintiff].")

### C.   The Proposed Settlement Meets the Standards for Preliminary Approval

Plaintiffs' proposed Settlement with the Lazzari Defendants satisfies Rule 23's mandates. The Settlement is the product of arms-length negotiations, provides settlement consideration that is reasonable and fair in light of defendants' substantial financial limitations, and is supported by confirmatory discovery and expert analysis.

### 1.   The Settlement Was Vigorously Negotiated by Informed Counsel

Courts recognize that the opinion of experienced counsel supporting the settlement after vigorous arms'-length negotiations is entitled to considerable weight. *See, e.g. Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight").  Plaintiffs have been actively litigating this case in compliance with the court's aggressive discovery, class certification and trial schedule.  Plaintiffs and their experts have thoroughly reviewed and analyzed defendants' transactional data, financial records and internal records of communications with one another.  Pritzker Decl., ¶ 9-10.  Plaintiffs completed depositions of each of the individually-named defendants—Morgen, Colbert, Ring and Lord—by June 12, 2014. *Id*, ¶ 9.  By the time settlement discussions before Magistrate Judge Spero commenced on June 26,

2014, interim plaintiffs' counsel had a solid understanding to the strengths and weakness of the claims, both factually and legally. *Id*, ¶¶ 19, 26.

Further, in connection with settlement negotiations, plaintiffs recruited retained a forensic accountant to assist plaintiffs in their due diligence with respect to the Lazzari Defendants' financial wherewithal. *Id*, ¶ 19, Exh. D. Moreover, the settlement negotiations were attended by experienced counsel and representatives from each plaintiff, including Il Fornaio's General Counsel who had participated in several mediations and worked on the resolution of other class settlements. *Id*, ¶ 27. The plaintiff representatives all support the Settlement. *Id*. A "proposed settlement [that] appears to be the product of serious, informed, non-collusive negotiations" should be given effect. *See In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) ("[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing…." (quoting *Manual for Complex Litigation (Second)* § 30.44 (1985)).

### 2.    The Proposed Settlement is Within the Range of Reasonableness

The Court, in granting preliminary approval, need only find that the settlement falls within the "range of reasonableness." 4 Newberg on Class Actions §§ 11.25 (4th ed. 2002) ("*Newberg")*. To determine whether a settlement falls within the range of possible approval, the Court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig*., *supra*, 484 F.Supp.2d at 1080.

Here, the Settlement provides for a total contribution of $800,000 into a Settlement Fund. Pritzker Decl., Exh. A (Settlement Agreement, ¶ 16). This amount represents approximately 17% - 27% of the maximum amount of overcharge damages plaintiffs' expert estimates to be attributable to Lazzari. Pritzker Decl., ¶ 29. According to Lazzari, the $800,000 settlement represents approximately 59.5 % of the company's total net profits from its sales of Mesquite Lump Charcoal

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

during the entire class period.  *See* Colbert Lazzari Decl., ¶ 6.[3]  If the Settlement is finally approved, the Lazzari Defendants will be released from the claims alleged in the action.  Pritzker Decl., Ex. A (Settlement Agreement, ¶ 13).  Lazzari has agreed, however, to continue to cooperate with plaintiffs in the prosecution of the case as against the non-settling defendants.  *Id*, ¶ 29.

The proposed settlement amount, $800,000, fares well in comparison to other analogous cases.  *See, e.g., In re Mego Fin. Corp. Sec. Liti*g, 213 F.3d 454, 459 (9th Cir. 2000) ($2 million settlement amount that was roughly one-sixth of the potential recovery was fair and adequate in light of difficulties in proving case); *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 964 (9th Cir. 2009)(approving settlement in antitrust class action against which represented 30% of the damages estimated by expert), *vacated and remanded in part on other grounds*, 688 F.3d 645 (9th Cir. 2012).  Here, the Lazzari Defendants will pay the equivalent of 17%-27% of estimated damages attributable to them, which is a significant percentage of damages, especially given the Defendants' financial condition.   While it appears, based on the financial analysis provided by plaintiffs' forensic accountant, that these Defendants have sufficient asses to pay the settlement consideration on the payment schedule listed in the Settlement, plaintiffs have legitimate concerns that these Defendants could pay more than the Settlement now demands, let alone a judgment in the amount approaching the full amount of damages calculated by plaintiffs' expert.  *See* Pritzker Decl., ¶ 30; Colbert Lazzari Decl., ¶¶ 10, 19, 21-25; Ip Decl., ¶ 4(g). Indeed, there is a significant risk that continued litigation, even through the class certification phase, would place Lazzari in severe financial jeopardy.  Colbert Lazzari Decl., ¶ 10, 19, 21-25; Ip Decl., ¶¶ 4 (b), (c), (g).

As the court stated in *Chatelain v. Prudential-Bache Sec., Inc*., 805 F.Supp. 209, 214 (S.D.N.Y. 1992) (*quoting In re. Warner Communications Sec. Litig*., 618 F. Supp. 735, 746 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986):  "The prospect of a bankrupt judgment debtor down at the end of the road does not satisfy anyone in the use of class action procedures."  *See also In re Critical Path, Inc.*, C 01-00551 WHA, 2002 U.S. Dist. LEXIS 26399, *20-21 (N.D. Cal. June

---

[3]  Plaintiffs do not necessarily concur in Lazzari's assessment of its net profits, but offer the statement of its General Manager, Robert Colbert, to inform the Court of Lazzari's view of the value of the consideration being offered under the proposed Settlement.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

18, 2002) ("[t]hrough protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing.")  As in *Torrisi v. Tucson Elec.Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993), "one factor predominates" – Defendants' financial condition.  Accordingly, this factor also weighs in favor or preliminary approval.

### D.       The Proposed Settlement Class Satisfies Rule 23

Where no class has yet been certified, in determining whether to grant preliminary approval of a settlement, the Court must determine that the proposed settlement presents a proper class for settlement that meet the criteria set forth in Rule 23. *See Manual (Fourth)* § 21.62 (2004); *Amchen Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is appropriate where: (1) the proposed class is numerous yet ascertainable; (2) common issues of law or fact predominate; (3) the claims of the proposed class representative(s) are typical of the class[4]; (4) the proposed class representative(s) will adequately represent the class; and (5) common questions of law and fact predominate over individualized inquiries. Fed. R. Civ. P. 23(a), (b)(3).

### 1.       The Settlement Class is Ascertainable and Sufficiently Numerous

The first requirement under Rule 23(a) is that the class is so numerous that joinder of all members would be "impracticable", yet the class must be ascertainable.  *See Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd* 694 F.2d 531 (9th Cir. 1982). Courts routinely find that numerosity requirement is satisfied when the class comprises 40 or more members. *See Davis v. Astrue*, 250 F.R.D. 476, 485 (N.D. Cal. 2008) ("As a general rule, classes numbering greater than 41 individuals satisfy the numerosity requirement.")  Here, Interim Counsel estimates that the Settlement Class consists of roughly 1,500 direct purchasers of Mesquite Lump Charcoal. Pritzker Decl., ¶ 28.  These purchasers are ascertainable based upon the objective criteria of whether they purchased Mesquite Lump Charcoal from defendants during the relevant period, and are identifiable from defendants' own customer lists, which two of the three defendants have produced and which are currently being vetted by Interim Counsel.  *Id.*

---

[4]   Plaintiffs satisfy the typicality element, as discussed in Section III.B., above.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

### 2.    The Case Involves Questions of Law and Fact Common to the Class

The commonality requirement is met if there are questions of law and fact common to the class.  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit has held that commonality should be "construed permissively."  *Hanlon,* 150 F.3d at 1019.  A single common issue of law or fact may suffice.  *Slaven v. BP America, Inc.,* 190 F.R.D. 649, 655 (C.D. Cal. 2000); *Haley v. Medtronic, Inc.,* 169 F.R.D. 642, 647 (C.D. Cal. 1996).  Commonality can be established by showing "that the class is united by a common interest."  *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).  "Slight differences in class members' positions" will not defeat commonality.  *Id,* at 902.

Here, all Settlement Class members share common questions of law and fact that go the central issue in this matter:  whether plaintiffs and class members paid more for Mesquite Lump Charcoal than they would have absent the alleged conspiracy.  Questions regarding the existence, scope, length, effectiveness and implementation of the conspiracy are central to each class member's claims.  Similar common questions have routinely been found to satisfy the commonality requirement in other antitrust actions.  *See, e.g., In re Flat Glass Antitrust Litig*., 191 F.R.D. 472, 479 (W.D. Pa. 1999) ("[g]iven plaintiffs' allegations of a § 1 conspiracy, the existence, scope and efficacy of the alleged conspiracy are certainly questions that are common to all class members"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig*., Case No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841, *29 (N.D. Cal. June 5, 2006) ("The very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.").

### 3.    Plaintiffs Will Fairly And Adequately Represent The Class

Plaintiffs satisfy the adequacy requirement where the class representatives have interests that are common with, and not antagonistic towards the unnamed members of the class, and will vigorously prosecute the interests of the class through qualified counsel.  *See Amchem Prods, Inc. v. Windsor*, 521 U.S. at 625; *Hanlon*, 150 F.3d at 1020.

Plaintiffs' interests are common with the interests of Settlement Class members because they are all similarly interested in obtaining valuable relief from defendants.  There is no question that plaintiffs have genuine interest in the litigation and understand the allegations in this case.  Each named plaintiff, through its representatives, has reviewed pleadings, responded to written discovery,

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

conducted analyses of their purchases, and produced a substantial number of documents. All have kept themselves actively apprised of the litigation, and all were active participants in the settlement proceedings before Magistrate Judge Spero.  Pritzker Decl., ¶ 33.  The interests of plaintiffs and Settlement Class member are aligned because they all suffered similar injury in the form of higher Mesquite Lump Charcoal prices because of the conspiracy, and they all seek the same relief.  By proving their own claims, plaintiffs will necessarily be proving the claims of fellow class members.

Additionally, plaintiffs are represented by counsel who are highly-qualified in class action litigation, and who aggressively investigated and pursued this case from the beginning.  Elizabeth Pritzker of Pritzker Law was appointed by the Court to serve as Plaintiffs' Interim Counsel on February 27, 2014 (Dkt. 58.)  She and her co-counsel, Bruce Simon and Robert Retana of the Pearson Simon Warshaw firm, experienced class action lawyers with antitrust and trial experience, have worked to prosecute this case vigorously and effectively.   Pritzker Decl., ¶ 27.

### 4.        Common Questions Predominate

Having met the foregoing requirements, plaintiffs are entitled to proceed with a certification of a settlement class if "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining whether common questions of law or fact predominate, the Court must determine if the various claims of the members of the proposed class are sufficiently cohesive to justify adjudicating them in a single judicial forum.  *See Amchem Prods.,* 521 U.S. at 625. "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Id.*  That is because, in antitrust cases, proof of an alleged conspiracy will focus on defendants' conduct and not on the conduct of individual class members." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 310 (N.D. Cal. 2010).

Here, the existence of a conspiracy among defendants to allocate and not compete for each other's customers, and defendants' acts in furtherance of the conspiracy, are predominate questions. To demonstrate that the alleged conspiracy existed, plaintiffs will necessary focus on the conduct of the defendants, rather than the conduct of individual class members.  Here, plaintiffs have the

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

admissions of three co-conspirator participants—Lord, Morgen and Colbert—about the nature and extent of the parties' anticompetitive agreement to allocate and not compete for each other's Mesquite Lump Charcoal customers, its genesis, and the mechanisms used to implement and maintain the conspiracy.   Pritzker Decl., ¶¶ 11 - 14.   Proof of how defendants implemented, maintained and enforced the conspiracy will be common for all class members, because it is predicated on establishing the existence of the alleged conspiracy.  *See In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 250 (S.D. Tex. 1978) ("The court is persuaded that the conspiracy issues—whether price information was exchanged; if it was, with what intent; whether action was taken by the defendants based on such exchanges, etc.—is susceptible of generalized proof, since it deals primarily with what the defendants themselves did and said.")

Likewise, antitrust injury, particularly in a price-fixing case, is an issue common to the class because it is readily determined based on a common evidentiary showing.  The relevant legal standard in establishing an antitrust injury is demonstrating that plaintiffs suffered some harm to business or property as a result of defendant's unlawful conduct.  *Reiter v. Sonotome Corp.*, 442 U.S. 330, 337-41 (1979); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, Case No. C 07-01819 CW, 2008 WL 4447592, at *5 (N.D. Cal. Sept. 29, 2008).  In this case, plaintiffs have common proof of the existence of an antitrust conspiracy that will establish liability on a class-wide basis, and an expert analysis from an economist that provides a means and methodology to prove that the conspiracy raised or stabilized the prices for Mesquite Lump Charcoal purchased by plaintiffs and other Settlement Class members.  *See, generally,* Schwarz Decl. at ¶¶ 40-86.

Class adjudication is superior to individual litigation, moreover, as it promotes judicial efficiency and avoid inconsistent rulings.  "[I]f common questions are found to predominate in an antitrust action, then courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied."   Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil Procedure* § 1781 at 254-55 (3d ed. 2004).

### E.   Appointment of Class Representatives and Settlement Class Counsel

Plaintiffs seek to be appointed as representatives of the Settlement Class, and plaintiffs' Interim counsel requests appointment as Settlement Class Counsel.  See Fed. R. Civ. P. 23(c)(1)(B)

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

1   ("An order certifying a class action…must appoint class counsel under Rule 23(g).")

2       Plaintiffs have kept abreast of the litigation and offered their assistance, time and effort to

3   prosecute the action for the class' benefit.  Interim counsel has performed substantial work since

4   appointment to further the litigation, has knowledge of the facts and applicable law, and brings to the

5   case substantial experience prosecuting antitrust and other class actions.  Interim counsel satisfies

6   the criteria of Rule 23(g), and is qualified to serve as Settlement Class Counsel.

7       **F.**    **Proposed Plan of Notice**

8       Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class

9   members who would be bound by a proposed settlement…."  The notice must inform class members

10   of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed

11   settlement; (3) that complete information is available from the court files; and (4) that any class

12   member may appear and be heard at the fairness hearing.  *Newberg* § 8.32. It also must inform class

13   members of the opportunity to opt-out, that the judgment will bind class members who do not opt-

14   out, and that any member who does not opt-out may appear through counsel. Fed. R. Civ. P.

15   23(c)(2)(B). The form of notice is "adequate if it may be understood by the average class member."

16   *Newberg* §11.53. (*See also* Dkt. 29, ¶13.)

17       The proposed form of class notice satisfies this standard. A plain-English form of notice,

18   modeled after the sample form of notice that appears on the Federal Judicial Center website

19   (http://www.fjc.gov/), and containing all the information required by Rule 23(c) and (e), will be sent

20   by direct first-class mail to Settlement Class members.  *See* Pritzker Decl., Exh. A (Settlement

21   Agreement, ¶ 28); Exh. B.  Individual notice by mail is the "best notice practicable under the

22   circumstances" where class members' names and addresses "may be ascertained through reasonable

23   effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173 (1974); *see Covillo v. Specialty's Cafe*,

24   2013 U.S. Dist. LEXIS 153724, *16 (Case No. C-11-00594 DMR) (N.D. Cal. Oct. 25, 2013) (Ryu,

25   Magistrate Judge) (approving notice form and procedure for first-class mail within ten days after

26   receiving class members' name and address information from defendant);  *In re Charles Schwab

27   Corp. Secs. Litig.,* 2011 U.S. Dist. LEXIS 44547, *16 (Case No. C 08-01510 WHA) (N.D. Cal. Apr.

28   19, 2011) (finally approving class settlement and finding that individualized notice sent by first-class

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

mail to class members satisfied procedural requirements of Rule 23(c)(2) (for notice of class certification) and Rule 23(e)(1) (for notice of settlement) as well as the requirements of due process). Here, because class member's Mesquite Lump Charcoal purchases are delivered to a physical mailing address, class member names and addresses can be readily discerned from defendants' records. Pritzker Decl., ¶ 34.

### G.   The Notice Contemplates a Fair, Court-Approved Plan of Allocation

Plaintiffs propose that distribution of settlement funds be deferred until the termination of the case, when there might be additional funds to distribute, because piecemeal distribution is expensive, time-consuming and likely to cause confusion to class members.  This is common in class action cases involving partial settlements where claims against other defendants remain.  S*ee Manual for Complex Litigation (Fourth)*, §21.651 (2004).  Until that time, the settlement funds will accrue interest for the benefit of the class.  Pritzker Decl., Exh. A (Settlement Agreement, ¶ 24.)

A plan of allocation of class settlement funds is subject to the "fair, reasonable and adequate" standard that applies to approval of class settlements.  *In re Citric Acid Antitrust Litig.*, 145 F.Supp. 2d 1152, 1154 (N.D. Cal. 2001); *City of Seattle*, 955 F 2d at 1284-1285. "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, 1994 U.S. Dist. LEXIS 21593, *3 (N.D. Cal. June 16, 1994).  Here, plaintiffs propose that settlement funds be allocated, *pro rata*, based on the dollar value of each Settlement Class member's Mesquite Lump Charcoal purchases in proportion either to: (1) the total amount of the Settlement Fund; or (2) the total number of claims filed.

Plaintiffs do request the Court's guidance on a Plan of Allocation that can be used when settlement funds are ready to be disbursed.  Plaintiffs recognize the Court's preference for a claims procedure that calculates settlement checks from the defendants' records.  *See* Notice Regarding Factors to Be Evaluated for Any Proposed Class Settlement [Dkt. 29], ¶ 7.  Where the defendants' records are good, this type of procedure reduces the burden on class members to claim settlement benefits.  Here, however, the defendants' records contain deficiencies that make it difficult to fairly and accurately calculate settlement benefits on a pro rata basis.  Chef's Choice does not maintain purchase orders for many of its key customers, and also suffered a massive data loss in 2012:

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

1   recreating the transactional history of each of its customers for the 11-year class period will be

2   exceptionally difficult, if not impossible.  Pritzker Decl., ¶ 37, Exh. E [Lord Dep.  15:17-16:14, 18:3-

3   6, 23:6-24:18, 187:6-189:24, 216:14-217:10].  Lazzari has adequate electronic transactional data for

4   the period 2008-2011, but for earlier years, purchase data for individual customers will need to be

5   recreated from aggregate data or paper records to the extent such records exist.  *Ibid.* Recreating

6   individual Settlement Class member purchase data, therefore, will be expensive and may lead to

7   inaccurate results.  *Ibid.*

8         Another approach would be to have Settlement Class members to submit a claim form with

9   an estimate of the dollar amount of Mesquite Lump Charcoal purchased, which could be verified by

10  defendants' records.    While a claims procedure imposes a minimal burden on Settlement Class

11  members to review their records and respond, it may improve accuracy and provide a "cost-effective,

12  simple, and fundamentally fair" means of distributing settlement funds on a *pro rata* basis.  *In re*

13  *Airline Ticket Comm'n Antitrust Litig.*, 953 F.Supp 280, 285 (D.Minn. 1997).

14        Plaintiffs will utilize a fair Plan of Allocation as determined by the Court.

15        **H.     Proposed Schedule For Notice and Final Approval**

16        Plaintiffs also move the Court for the following schedule regarding approval of the proposed

17  settlement as to the Lazzari Defendants:

18

| | |
|---|---|
| Deadline to complete notice ("Notice Date") to settlement class members by mail | September 8, 2014 |
| Deadline for filing of motion for final approval of proposed settlement | October 8, 2014 |
| Deadline for settlement class members to request exclusion or opt out, to object to or comment on settlement, and/or submit notice of intent to appear at final approval hearing | October 27, 2014 |
| Deadline for filing supplemental papers in support of final approval and addressing any objections | November 14, 2014 |
| Final Approval Hearing | November 20, 2014 |

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH
DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN AND ROBERT COLBERT

| Deadline for settlement class members to submit claims forms ("Claim Deadline") | As needed, pursuant to Court Order |
|---|---|

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, plaintiffs respectfully request that their unopposed Preliminary Approval Motion be approved.

DATED: July 23, 2014

PRITZKER │ LAW

By:  ___/s/ Elizabeth C. Pritzker_____
       Elizabeth C. Pritzker

Bethany L. Caracuzzo
633 Battery Street, Suite 110
San Francisco, CA 94111
Telephone: (415) 692-0772
Facsimile: (415) 366-6110

*Plaintiffs' Interim Counsel*