IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IL FORNAIO (AMERICA) CORPORATION, OLIVETO PARTNERS, LTD. and THE FAMOUS ENTERPRISE FISH COMPANY OF SANTA MONICA, INC., on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>LAZZARI FUEL COMPANY, LLC, CALIFORNIA CHARCOAL AND FIREWOOD, INC., CHEF'S CHOICE MESQUITE CHARCOAL, RICHARD MORGEN, ROBERT COLBERT, MARVIN RING, and WILLIAM W. LORD,<br><br>    Defendants.<br>_____/<br>DARBAR CUISINE, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>CHEF'S CHOICE MESQUITE CHARCOAL, LAZZARI FUEL COMPANY LLC, CALIFORNIA CHARCOAL AND FIREWOOD, INC., and WILLIAM W. LORD,<br><br>    Defendants.<br>_____/ | No. C 13-05197 WHA and<br>    C 13-05331 WHA<br>    (consolidated)<br><br><br><br><br>**ORDER GRANTING CLASS CERTIFICATION** |

## INTRODUCTION

In this antitrust action by direct purchasers of mesquite lump charcoal, plaintiffs move to certify a class under Rule 23. Several defendants have reached a tentative proposed settlement, which will be vetted in due course. Others have not settled and oppose class certification. For the reasons stated herein, a class is **CERTIFIED**.

**STATEMENT**

This is a civil antitrust class action following a guilty plea to a *per se* violation of Section 1 of the Sherman Antitrust Act. Named plaintiffs — Il Fornaio Corporation, Oliveto Partners, Ltd., and The Famous Enterprise Fish Company of Santa Monica — allegedly paid more for 20- and 40-pound bags of mesquite lump charcoal than they would have paid in a competitive market because defendants engaged in an alleged 11-year conspiracy to allocate customers of mesquite lump charcoal in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. 1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. 15 and 26. Now follow the details.

In September 2012, William Lord, one of the defendants in our civil action, pled guilty to one count of conspiracy to allocate customers under Section 1 of the Sherman Act. *United States v. Lord*, No. 3:12-cr-00326-WHA (N.D. Cal.). Judgment was entered and he was sentenced to, *inter alia*, four months in prison. The plea agreement stated (Sanger Exh. 20):

> During the relevant period [January 2000 through September 2010], Defendant [William Lord] participated in a combination and conspiracy . . . the primary purpose of which was to suppress and restrain competition. In furtherance of the conspiracy . . . Defendant reached an agreement with Individuals A, B, and C and Companies A and B not to compete for each others' customers for the sale of mesquite lump charcoal in the United States.

Individual A was Marvin Ring (CEO of California Charcoal), Company A was California Charcoal, Individual B was Richard Morgen (general manager of Lazzari), Individual C was Robert Colbert (managing partner of Lazzari), Company B was Lazzari, and defendant was William Lord (owner of Chef's Choice). All of these companies and individuals are defendants (and the only defendants) herein.

In November 2013, this action and another putative class action were commenced. A February 2014 order consolidated both actions and, after considering dueling motions, appointed Elizabeth C. Pritzker of Pritzker | Law as interim counsel (Dkt. No. 58). One company and its principals (Lazzari, Richard Morgen, and Robert Colbert) then reached a partial class settlement and moved for preliminary approval. They are working on revising their proposal, which will be vetted in due course.

Now pending is a motion for class certification. The non-settling defendants oppose certification. Fact discovery will close in December 2014 and a jury trial will start in March 2015 (Dkt. No. 57). This order follows full briefing, supplemental submissions, and oral argument.

## ANALYSIS

Plaintiffs seeking class certification bear the burden of showing that the prerequisites of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy of the named plaintiffs and their counsel; and (5) ascertainability. To certify a Rule 23(b)(3) class, as plaintiffs seek here, there must be a finding of predominance and superiority.

### 1. ASCERTAINABILITY AND NUMEROSITY.

Plaintiffs move to certify the following class under Rule 23(b)(3):

> All persons in the United States who purchased Mesquite Lump Charcoal directly from any Defendant, and/or their subsidiaries and co-conspirators, during the period from and including January 2000 through at least September 30, 2011. Excluded from the class are Defendants and their co-conspirators; any entity in which Defendants have or had a controlling interest; Defendants' officers, directors, and employees; members of Defendants' immediate families and legal representatives, successors, and assigns; and any judge assigned to this matter, together with his or her immediate family members.

In other words, plaintiffs seek to represent a class of direct purchasers of mesquite lump charcoal. "Mesquite lump charcoal" is defined as "mesquite charcoal that is packaged, marketed and sold for restaurant or food service use" (First Amd. Compl. ¶ 4). Numerosity is satisfied because the proposed class "consists of roughly 1,500 direct purchasers of Mesquite Lump Charcoal" (Pritzker Decl. ¶ 28). Those direct purchasers are ascertainable based on defendants' records. Having considered the critiques of the proposed class definition, this order finds that ascertainability and numerosity are satisfied for the class certified at the end of this order.

### 2. COMMONALITY AND PREDOMINANCE.

Commonality has been satisfied because whether a conspiracy existed and whether the alleged conspiracy violated Section 1 of the Sherman Act are common questions.

Non-settling defendants argue that individualized issues will predominate because plaintiffs have not proposed a sound economic model of measuring damages resulting from the

3

alleged conspiracy.* Non-settling defendants rely on *Comcast Corp. v. Behrend*, — U.S. —, 133 S. Ct. 1426, 1433–35 (2013), Rule 702, and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–95 (1993). In *Comcast*, plaintiffs failed to present an antitrust damages methodology attributable to plaintiffs' specific liability theory.

Dr. Andrew Schwarz, plaintiffs' expert, is an economist and managing partner of an economic consulting firm. He was retained to opine on a method of determining class-wide overcharges of mesquite lump charcoal. He estimated that the class-wide damages ranged from $8.26 to $12.60 million based on an estimated average overcharge of between 11.8 percent (for elasticity of -1.68) and 19.3 percent (for elasticity of -1.31) of revenue (Pritzker Exh. B; Schwarz Decl. ¶ 87). To arrive at these estimates, he began by assuming that defendants accounted for 75% of the mesquite lump charcoal sales in the United States (First Amd. Compl. ¶ 30). Defendants thus had the following market share: Lazzari 38.9% of sales of bagged mesquite lump charcoal, Chef's Choice 23.7%, and California Charcoal 12.4% (Schwarz Decl. ¶ 17). He posited that the relevant geographic market was at least as broad as the three defendants' alleged allocated territories and likely extended to the United States as a whole (Schwarz Decl. ¶¶ 33–34). He then focused on direct purchasers of mesquite lump charcoal sold in 40-pound and 20-pound bags and used a "simulated structural approach" to estimate damages by comparing actual prices with prices predicted by a structural representation of the market absent the allegedly conspiratorial conduct (Schwarz Decl. ¶¶ 26, 56). In pertinent part, he relied upon the "Zona base model" published in the ANTITRUST LAW JOURNAL (Schwarz Decl. ¶ 56, n.26).

Now follows a summary of the main arguments in defendants' *Daubert* challenge. Non-settling defendants argue that Dr. Schwarz ignored the differences among defendants in favor of using an average to approximate margin (price minus marginal cost over price). Dr. Schwarz calculated the average price of mesquite lump charcoal as $6.00 per 40-pound bag (or $0.15 per pound) based on California Charcoal's inter-defendant sales (Schwarz Decl. ¶ 67). Dr. Schwarz

---

* The other argument by the non-settling defendants is regarding the tolling of the four-year statute of limitations under the doctrine of fraudulent concealment. "To the extent there are individualized issues, they can be adjudicated in a later phrase" because fraudulent concealment in antitrust actions mainly focuses on defendants' conduct. *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 267 F.R.D. 291, 310 (N.D. Cal. 2010) (Judge Susan Illston).

4

then used California Charcoal's marginal cost for all three defendants, even though the weighted-average price for Lazzari's sales ranged from $8.8 per 40-pound bag to $13.2 per 40-pound bag (Garrett Decl. ¶ 31; Schwarz Decl. ¶ 72). Dr. Schwarz also used California Charcoal's cost of goods sold without accounting for inbound freight costs.

Non-settling defendants also argue that Dr. Schwarz assumed markups (differences between prices and marginal costs) across the defendants were identical, when that assumption does not hold. In 2010, California Charcoal's average markup was $0.0956 per pound, but Lazzari's was $0.1676 per pound (Garrett Decl. ¶ 28). The price markups also varied across customers: "California Charcoal's average markup in 2010 to one customer, The Grill, was $0.3125 per pound, while its average markup to another customer, California Country Club, that same year was $0.236 per pound" (Garrett Decl. ¶ 30). The Zona base model is more appropriate when markups are identical and there is a "joint profit-maximizing cartel," defendants argue.

Most of these criticisms go to the weight to be given to Dr. Schwarz's opinion, not its admissibility. As to the rest, it is premature to push the panic button. Dr. Schwarz will have until December 19 to refine his analysis in response to the defense critique. For now, the main point is this — we are dealing with a *per se* criminal violation of Section 1 — or so the plea and plea agreement indicate. Experience has shown that *per se* antitrust violations are amenable to class-wide proof even if the amount of damages will vary from victim to victim. In reliance on that experience, the judge expects that competent counsel and experts on the plaintiffs' side will take into account the defense critique and will produce an acceptable report by the deadline. The *Daubert* motion and objections are denied without prejudice to renewal at the final pretrial conference. If the defense succeeds at that stage, contrary to normal practice and expectations, then we may have to de-certify the class.

Non-settling defendants also argue that Dr. Schwarz erred in assuming a single market for mesquite lump charcoal when three types of transactions and four separate markets existed. In the defense's view, the mesquite lump charcoal distribution process was as follows. Mesquite lump charcoal was primarily produced in Mexico and delivered in truckloads to Nogales, Arizona. Each truckload consisted of 1,100 40-pound bags of mesquite lump charcoal.

5

1 Distributors, like defendant California Charcoal, took possession of the truckloads. Three types
2 of transactions could then occur. *One*, "truckload (TL) sales to others," meaning wholesalers
3 were sold *full* truckloads (1,100 bags) which were delivered to the wholesaler's warehouse. *Two*,
4 "less-than-truckload (LTTL) sales to end-users," meaning the charcoal was delivered to the
5 distributor's warehouse (*e.g.*, defendant California Charcoal's warehouse) and restaurants were
6 sold less than a truckload, *e.g.*, 15 out of 1,100 bags. *Three*, "inter-defendant truckload sales,"
7 meaning defendant California Charcoal sold full truckloads to defendants Lazzari and Chef's
8 Choice, made Free on Board (FOB) Nogales (Ring Decl. ¶ 5; Garrett Decl. ¶ 18). In pertinent
9 part, because restaurants often purchased less than a truckload and delivery distances placed
10 constraints on defendants, restaurant pricing was sometimes individually negotiated. The defense
11 constructs four markets, alleging that they only competed in one of those markets. In non-settling
12 defendants' view (Opp. 20) (emphasis added):

> *Defendants compete against one another in only one of [the four] markets, the nationwide Wholesale Truckload Market*. Lazzari competes in the Northern California Local Delivery Market, but not in the Santa Barbara or Los Angeles Local Delivery Market. California Charcoal competes in the Los Angeles Local Delivery Market, but not the Northern California or Santa Barbara Local Delivery Markets. Chef's Choice no longer competes in any Local Delivery Market, but when it did so, only competed in Santa Barbara, and not Northern California or Los Angeles.

18 This may wind up being an arguable defense at trial, but plaintiffs have more common
19 proof than that in their arsenal. Contrary to defense counsel's attorney argument now, the plea
20 agreement entered by defendant William Lord did not include all of the qualifications now
21 proposed. The plea agreement did not limit the conspiracy to only the "nationwide Wholesale
22 Truckload Market" so argued by the defense to evade class certification. The terms of the plea
23 agreement were far broader. It admitted "an agreement . . . not to compete for each others'
24 customers for the sale of mesquite charcoal in the United States." There was no mention in the
25 plea agreement of so-called "truckload sales," "less-than-truckload sales," "a nationwide
26 Wholesale Truckload Market," or "Local Delivery Markets." It suffices to say the defense is free
27 to so argue this theory at some later juncture, but cannot evade the antitrust laws simply because,

6

in their view, they competed in "only the nationwide Wholesale Truckload Market." Predominance has been met.

### 3. STANDING, TYPICALITY, AND SUPERIORITY.

Article III standing is jurisdictional; nevertheless, it makes sense to group typicality and standing together in this order. Here, plaintiffs have standing because they purchased mesquite lump charcoal during the relevant time period and allege that they overpaid due to an alleged conspiracy in violation of the Sherman Act (Pritzker Decl. ¶ 20).

Non-settling defendants argue that the claims of the named plaintiffs are not typical of the claims of "wholesalers purchasing full truckloads." None of the named plaintiffs purchased a full truckload and defendants only competed in the "nationwide Wholesale Truckload Market," non-settling defendants say. Even if so, plaintiffs' expert stated that all direct-to-restaurant customers purchasing from a defendant would have been affected by the alleged agreement to restrict price competition (Schwarz Decl. ¶ 24). Plaintiffs' claims are typical of direct purchasers of mesquite lump charcoal.

At oral argument, defendant Chef's Choice also argued that none of the named plaintiffs directly purchased from it during the alleged conspiracy, even though the named plaintiffs directly purchased from defendants Lazzari and California Charcoal. This is another misguided attempt to dodge the antitrust laws. Regardless of whether the named plaintiffs directly purchased mesquite lump charcoal from defendant Chef's Choice during the alleged conspiracy, the owner of Chef's Choice pled guilty to an antitrust conspiracy. Plaintiffs are entitled to try to prove that Chef's Choice should be liable for the alleged overcharge.

Superiority is satisfied herein because the class mechanism in this antitrust action is superior to other available methods of individually adjudicating this controversy.

### 4. ADEQUACY OF REPRESENTATION.

The proposed representatives are adequate. It is undisputed that named plaintiffs Il Fornaio, Oliveto, and The Famous Enterprise Fish Company of Santa Monica are willing and able to fairly and adequately protect the interests of the class. Accordingly, they are hereby **APPOINTED AS THE CLASS REPRESENTATIVES**. It is also undisputed that interim counsel is

willing and able to fairly and adequately protect the interests of the class. Accordingly, Attorney Elizabeth Pritzker is hereby **APPOINTED AS CLASS COUNSEL**.

**CONCLUSION**

For the reasons stated herein, the following class is hereby **CERTIFIED** under Rule 23(b)(3):

> All persons and entities in the United States who, between January 1, 2000 and September 30, 2011, directly purchased mesquite lump charcoal from any defendant. Mesquite lump charcoal is defined as charcoal derived from the mesquite tree that is sold for restaurant or food-service use. Specifically excluded from the class are defendants; the officers, directors, or employees of any defendant; and the legal representatives, heirs, successors, or assigns of any defendant. Also excluded are any judicial officer and juror assigned to this action.

Defendants shall provide class counsel with the last known address and phone number for all class members by **OCTOBER 16, 2014**. By **OCTOBER 17**, the parties shall file an agreed-upon proposed class notice, summary class notice for the publication, and proposed order. Class counsel shall bear the cost of notice, which shall be by (i) first-class mail, (ii) the class website, and (iii) publication twice a week for three weeks in the appropriate trade press.

To be clear, all parties are bound by this order and should participate in the notice process until such time as approval is given to the settlement. All existing deadlines remain in place.

**IT IS SO ORDERED.**

Dated:  October 3, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE