ELIZABETH C. PRITZKER (Bar No. 146267)
    ecp@pritzkerlevine.com
BETHANY L. CARACUZZO (Bar No. 190687)
    bc@pritzkerlevine.com
SHIHO YAMAMOTO (Bar No. 264741)
    sy@pritzkerlevine.com
**PRITZKER LEVINE LLP**
180 Grand Avenue, Suite 1390
Oakland, CA 94612
Telephone: (415) 692-0772
Facsimile: (415) 366-6110

*Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IL FORNAIO (AMERICA) CORPORATION; OLIVETO PARTNERS, LTD. and THE FAMOUS ENTERPRISE FISH COMPANY OF SANTA MONICA, INC., on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>LAZZARI FUEL COMPANY, LLC, CALIFORNIA CHARCOAL AND FIREWOOD, INC., CHEF'S CHOICE MESQUITE CHARCOAL, RICHARD MORGEN, ROBERT COLBERT, MARVIN RING, and WILLIAM W. LORD,<br><br>        Defendants. | CASE NO. 3:13-cv-05197 WHA; AND CASE NO. 3:13-cv-05331 WHA (CONSOLIDATED)<br><br><u>CLASS ACTION</u><br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CLASS SETTLEMENT WITH DEFENDANTS LAZZARI FUEL COMPANY, LLC, RICHARD MORGEN, ROBERT COLBERT, CALIFORNIA CHARCOAL AND FIREWOOD, INC., AND MARVIN RING** |
| DARBAR CUISINE, INC.,<br><br>        Plaintiff,<br><br>    vs.<br><br>CHEF'S CHOICE MESQUITE CHARCOAL, LAZZARI FUEL COMPANY, LLC, CALIFORNIA CHARCOAL AND FIREWOOD, INC., and WILLIAM W. LORD,<br><br>        Defendants. | Date: December 4, 2014<br>Time: 8:00 a.m.<br>Courtroom: 8<br><br>Judge: Hon. William H. Alsup |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................... 2

II. STATEMENT OF FACTS ...................................................................................... 4

    A. The Strength Of The Claims Asserted ....................................................... 4

        1. The Liability Evidence Against Chef's Choice and William Lord ................ 4

        2. The Liability Evidence Against the Lazzari Defendants ............................... 5

        3. The Liability Evidence Against the CA Charcoal Defendants ....................... 5

    B. Discovery, Class Certification and Damages ................................................ 6

    C. The Factors Affecting Settlement ................................................................ 7

    D. The Proposed Terms of Settlement ............................................................. 9

        1. Settlement Consideration ............................................................................ 9

            a. Creation of a $2,375,000 Settlement Fund ........................................ 9

            b. No Reversion To Defendants ............................................................. 10

            c. Administrative Costs Will Be Partially Borne By The Lazzari Defendants ........................................................................................... 10

        2. Non-Monetary Benefits in the Form of Cooperation ................................... 11

        3. Release ......................................................................................................... 11

III. ARGUMENT ......................................................................................................... 11

    A. The Settlement Should Be Preliminarily Approved ..................................... 11

    B. The Proposed Settlement Meets the Standards for Preliminary Approval ..... 12

        1. The Settlement Was Vigorously Negotiated by Informed Counsel ............. 13

        2. The Proposed Settlement is Within the Range of Reasonableness ............... 14

    C. Proposed Plan of Notice .............................................................................. 15

## **TABLE OF CONTENTS**
(Continued)

**Page**

D.     The Notice Contemplates a Fair, Court-Approved Plan of Allocation ..................... 17

E.     Proposed Schedule For Notice and Final Approval .................................................. 19

IV.     CONCLUSION .................................................................................................................... 19

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

CASES

*Chatelain v. Prudential-Bache Sec., Inc.*,
   805 F.Supp. 209 (S.D.N.Y. 1992) ........................................................................ 5

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ..................................................................... 12, 17

*Covillo v. Specialty's Cafe*,
   2013 U.S. Dist. LEXIS 153724 (Oct. 25, 2013) ................................................ 16

*Eisen v. Carlisle and Jacquelin*,
   417 U.S. 156 (1974) ........................................................................................... 16

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981)...................... 13

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1988)............................................................................. 12

*In re Airline Ticket Comm'n Antitrust Litig.*,
   953 F.Supp 280 (D.Minn. 1997) ........................................................................ 18

*In re Charles Schwab Corp. Secs. Litig.*,
   2011 U.S. Dist. LEXIS 44547 (Apr. 19, 2011) ................................................... 16

*In re Citric Acid Antitrust Litig.*,
   145 F.Supp. 2d 1152 (N.D. Cal. 2001) ............................................................... 17

*In re Critical Path, Inc.*,
   C 01-00551 WHA, 2002 U.S. Dist. LEXIS 26399 (N.D. Cal. June 18, 2002)...................... 15

*In re Mego Fin. Corp. Sec. Litig*,
   213 F.3d 454 (9th Cir. 2000)............................................................................... 14

*In re Oracle Sec. Litig.*,
   1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 16, 1994) ................................... 17

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................................... 13, 14

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)............................................................................... 14

*Torrisi v. Tuscon Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993)......................................................................... 12, 15

1

*U.S. v. William W. Lord*,
   12-cr-00326-WHA ................................................................................................. 3, 4

2

3

*Williams v. Costco Wholesale Corp.*,
   Civ. No. 02-cv-2003, 2010 WL 76112 (S.D. Cal. March 4, 2010) .......................................... 12

4

5

**STATUTES**

6

Clayton Act, 15 U.S.C. §§ 15 and 26 ........................................................................... 4

7

Fed. R. Civ. P. 23(e) .................................................................................................. 12

8

Sherman Antitrust Act, 15 U.S.C. § 1 ........................................................................... 4

9

10

**OTHER AUTHORITIES**

11

4 Newberg on Class Actions (4th ed.  2002) ................................................................ 14, 15

5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.83[1], 23-336.2 .... 12

*Manual for Complex Litigation (Second) (1985)* ........................................................ 14

*Manual for Complex Litigation (Fourth)* (2004) ........................................................ 17

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION AND MOTION**

2          PLEASE TAKE NOTICE that on December 2, 2014, at 8:00 a.m., or as soon as the matter

3    can be heard, in Courtroom 8, 19th Floor, the Honorable William H. Alsup presiding, Plaintiffs and

4    Class Representatives Il Fornaio (America) Corporation, Oliveto Partners, Ltd., and The Famous

5    Enterprise Fish Company of Santa Monica ("Plaintiffs"), in the action *Il Fornaio (America), et al. v.*

6    *Lazzari Fuel Co., et al.*, Case No. C- 13-05197-WHA, on behalf of themselves and a certified class of

7    persons who purchased mesquite lump charcoal directly from any of the Defendants, will and hereby do

8    move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order: (i) granting

9    preliminary approval of a partial class settlement ("Settlement") with certain company and individually-

10   named Defendants; (ii) approving the form and manner of giving notice of the proposed Settlement to

11   the Class; (iii) setting a hearing date to consider final approval of the proposed Settlement; and (iv)

12   approving a timetable and Plan of Allocation for disbursing Settlement funds to Class Members.

13          The motion and proposed Settlement have two essential parts.  First, Plaintiffs seek preliminary

14   approval of a partial class Settlement in which Defendant California Charcoal and Firewood, Inc. ("CA

15   Charcoal") and its owner, Marvin Ring, will pay $1.55 million to a Settlement Fund within 90 days of

16   preliminary approval.  Second, Plaintiffs bring a renewed motion for preliminary approval of a partial

17   class Settlement with Defendant Lazzari Fuel Company, LLC ("Lazzari") and two Lazzari shareholders,

18   Robert Colbert and Richard Morgen, that contains improved terms, including an $825,000 payment to

19   the Settlement Fund and a revised payment schedule that concludes on December 15, 2015 –

20   approximately 9 months from the date of the Final Approval Hearing.  The value of the Settlement is

21   $2.375 million, which represents roughly 29% of a conservative estimate of class-wide damages of $8.2

22   million (before trebling).  The litigation will proceed against Defendant Chef's Choice Mesquite Charcoal

23   ("Chef's Choice") and its owner, William Lord.  Each Settling Defendant will assist in the prosecution

24   of the case against the two remaining Non-Settling Defendants.

25          This motion is based on the accompanying Memorandum of Points and Authorities, the

26   Declaration of Elizabeth C. Pritzker filed herewith, the Further Declaration of Robert Colbert, the

27   Declaration of Monica Ip, the Rebuttal Declaration of Andrew D. Schwarz, the pleadings and papers

28

on file in this action, the argument of counsel, and such other materials as Plaintiffs or Settling Defendants may provide at or before the time of hearing.

<strong><u>STATEMENT OF ISSUES TO BE DECIDED</u></strong>

    1.  Whether the proposed Settlement should be approved preliminarily.

    2.  Whether the proposed form and manner of notice should be approved.

<strong><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></strong>

**I.**    <u>**INTRODUCTION**</u>

Plaintiffs submit this motion for an order preliminarily approving a partial class Settlement reached with two sets of Defendants at an October 2, 2014 Settlement Conference before Magistrate Judge Spero. *See* Dkt. 137; Declaration of Elizabeth C. Pritzker ("Pritzker Decl."), ¶ 3.

The motion includes a renewed motion to preliminarily approve a partial class Settlement reached with the Lazzari Defendants (Lazzari, Morgen and Colbert) in the amount of $825,000. *Id*, Exh. A (Lazzari Settlement), ¶ 16. The Lazzari Settlement will be paid using a combination of corporate, individual and bank funds on a payment schedule that will end on December 15, 2015 – approximately 9 months from the date of the Final Approval Hearing. *Id*, ¶ 16 (a); Exh. A, ¶ 16(a), (b); *see also* Further Declaration of Robert Colbert Re: Lazzari Finances ("Further Colbert Lazzari Decl."), ¶ 14.

The motion also includes a request to preliminary approve a partial class Settlement reached with the CA Charcoal Defendants (CA Charcoal and Ring). The amount of this settlement is $1,550,000. Mr. Ring is the sole owner and shareholder of CA Charcoal. The CA Charcoal Settlement will be paid using his own funds within 90 days of the Court's Preliminary Approval Order. *See* Pritzker Decl., Exh. B (CA Charcoal Settlement), ¶ 16.

The total amount of the proposed partial class Settlement is $2,375,000. Pritzker Decl., ¶ 5. This figure represents approximately 29% of the approximately $8.2 million in potential class damages (before trebling) estimated by Plaintiffs' class certification economist, Andrew D. Schwarz of OSKR, LLC. *Id*, ¶ 29, Exh. E, Exhibit A-1 [Dkt. 111-8, p.37]. Above and beyond this amount, Defendant Lazzari will contribute additional funds toward a Class Notice program and for settlement

administration. *Id*, Exh. A, ¶ 16(b). This additional contribution adds $15,000 to $20,000 in value to the overall Settlement, depending on the form of Class Notice program desired by the Court. Pritzker Decl., ¶ 43, Exh. C [Dkt. 140].

In addition to these monetary contributions, the five Settling Defendants will assist in the prosecution of the case against Chef's Choice and William Lord. Pritzker Decl., Exh. A ¶ 29; Exh. B, ¶ 29. The Court may recall that Mr. Lord previously pled guilty to criminal antitrust charges in which he admitted that for at least the period 2000 to 2010, he and his company, Chef's Choice, "participated in an agreement with two competitors, Lazzari Fuel Company and California Charcoal and Firewood, wherein the three companies and their principals agreed to suppress and restrain competition by:

    1.   Agreeing not to complete for sales of mesquite charcoal to co-conspirators' customers;

    2.   Refraining from submitting bid prices and co-conspirators' customers; and

    3.   Communicating regarding bids prices and then submitting agreed-upon and intentionally non-competitive bids to co-conspirators' customers."

(*See* Defendant's Sentencing Mem., *U.S. v. William W. Lord*, 12-cr-00326-WHA [Dkt. No. 14].) At his deposition in this action, Lord testified that the "principals" with which he conspired were Messrs. Morgen and Colbert of Lazzari and Mr. Ring of CA Charcoal. Pritzker Decl., ¶ 20. Notwithstanding these admissions, Plaintiffs were not able to reach a settlement with Lord or Chef's Choice. *Id*, ¶ 5. Chef's Choice and Lord remain jointly and severally liable for the full amount of class damages, including treble damages. *Id*, ¶ 29.

The Settlement was reached after substantial discovery and briefing on class certification. Pritzker Decl., ¶ 12 – 22, 25 - 33. The Court issued its class certification on October 3, 2014. *Id*, ¶ 18 [Dkt. 138].

Plaintiffs believe the Settlement approaches the maximum amount they realistically could obtain from these Settling Defendants, is fair, reasonable and in the best interests of the Class, and therefore warrants preliminary court approval.

//

//

II.    **STATEMENT OF FACTS**

    A.    **The Strength Of The Claims Asserted**

      This action involves an eleven-year agreement, understanding or conspiracy among the Defendants to allocate customers and not compete for sales mesquite charcoal to each other's customers.  Mesquite lump charcoal is harvested in Mexico, and used in the restaurant industry for, primarily, grilling meats, poultry and fish.  Defendants are all located in California and are long-term importers, distributors and sellers of mesquite lump charcoal across the United States.

      Plaintiffs are restaurants that purchased mesquite lump charcoal directly from Defendants during the alleged 11-year conspiracy.  Plaintiffs assert claims under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.  Plaintiffs seek damages and injunctive relief for themselves and a certified class of persons or business that purchased mesquite lump charcoal directly from Defendants for restaurant or food service.  *See* First Amended Class Compl. [Dkt. 75], ¶¶ 8, 78; Order Granting Class Certification [Dkt. 138], at p.3.

          **1.    The Liability Evidence Against Chef's Choice and William Lord**

      The primary evidence against Ms. Lord and Chef's Choice is Mr. Lord's own admission of wrongdoing.  As the Court will recall, in September 2011, Mr. Lord pleaded guilty to criminal antitrust charges and admitted that "[f]rom 2000 to 2010," he and his company, Chef's Choice, "participated in an arrangement with two competitors, Lazzari Fuel Company, [LLC] and California Charcoal and Firewood, [Inc.,] wherein each of the three companies and their principals agreed to suppress and restrain competition by:

    1.   Agreeing not to complete for sales of mesquite charcoal to co-conspirators' customers;

    2.   Refraining from submitting bid prices and co-conspirators' customers; and

    3.   Communicating regarding bids prices and then submitting agreed-upon and intentionally non-competitive bids to co-conspirators' customers."

(*See* Defendant's Sentencing Mem., *U.S. v. William W. Lord*, 12-cr-00326-WHA [Dkt. No. 14].)  Mr. Lord testified at deposition in this action that these "principals" were Mr. Morgen and Mr. Colbert of Lazzari and Marvin Ring of CA Charcoal.  Pritzker Decl., ¶ 20.

### 2.    The Liability Evidence Against Lazzari, Morgen and Colbert

Lazzari's Morgen and Colbert also gave corroborating testimony about the conspiracy. Morgen testified that he, Colbert and Lord met at the Oakland Airport in the late 1990's and entered into an agreement to notify each other whenever an existing customer of the other was "shopping around for prices" for mesquite charcoal.  Pritzker Decl., ¶ 21.  Under this "mutual arrangement," if Lazzari received a request for a price quote for mesquite charcoal from a Chef's Choice customer, Lazzari would call and ask Lord what Lazzari should bid to ensure that Chef's Choice "was the low bidder" and would retain the customer's mesquite charcoal business.  Alternatively, it was agreed that the entity contacted for the quote would either not provide a quote or offer a pre-textual reason for not selling to the customer – for example, by providing misleading information about its inventory or current supply of mesquite charcoal.  *Id*. While less forthcoming on specifics, Colbert corroborated Morgen's testimony about an agreement that "Lazzari and Bill Lord would not actively or in any way take an existing customer away from the other."  *Id*.

### 3.    The Liability Evidence Against CA Charcoal and Ring

While Morgen and Colbert denied entering into an *express* agreement with Ring or CA Charcoal not to compete, both men admitted at deposition that Lazzari decided not to compete, and in fact, did not compete with CA Charcoal and/or Ring during the relevant 11-year period.  Pritzker Decl., ¶ 22.  Morgen and Colbert instructed their former sales representative, Mark Schulz, about their agreement not to compete with Chef's Choice and Lord, and they instructed Mr. Schulz that he was not to compete for mesquite lump charcoal sales with either Chef's Choice or CA Charcoal and Ring.  *Id*. Contemporaneous notes taken by Colbert and Morgen also evidence frequent communications between Lazzari and Ring that discuss customers and pricing of mesquite lump charcoal. *Id*.  These notes, and the testimony provided by Colbert and Morgen concerning them, along with Lord's admissions regarding an unlawful conspiracy among Lazzari, Chef's Choice and CA Charcoal to allocate and refrain from competing for each other's customers, form the basis of Plaintiffs' liability evidence against CA Charcoal and Ring.

//

//

1

**B.      Discovery, Class Certification and Damages**

2

The Complaint was filed on November 7, 2013. *See* Dkt 1.  On February 27, 2014, the court

3

held a status conference and appointed interim counsel.  *See* Dkt. 58.

4

The parties exchanged initial disclosures on March 7, 2014, and Defendants began producing

5

their transactional data evidencing their sales on a rolling basis at that time.  Pritzker Decl., ¶ 11.

6

Lazzari also granted Plaintiffs access to their online accounting and financial software program,

7

called Peachtree.  *Id*.  As part of its initial disclosures, California Charcoal produced its QuickBooks

8

data through June 2013 in electronic format. *Id*.  Chef's Choice produced certain materials previously

9

provided to the Department of Justice, including handwritten ledgers apparently reflecting sales of

10

mesquite lump charcoal and a small number of purchase orders reflecting mesquite lump charcoal

11

sales.  *Id.*

12

Plaintiffs served requests for production on April 3, 2014.  After evaluating Defendants' DOJ

13

productions, which included extensive handwritten notes contemporaneously recorded by Morgen

14

and Colbert, on May 21, 2014, Plaintiffs obtained leave to amend their class action complaint to

15

name Morgen, Colbert, Ring and Lord as individual co-conspirator defendants. Pritzker Decl., ¶ 12;

16

*see also* Dkts. 69, 74, 75.  Plaintiffs served additional requests for production and interrogatories

17

seeking discovery of Defendants' assets and financial net worth on May 5, 2014.  *Id*, ¶ 13.

18

Plaintiffs completed depositions of Morgen, Ring, Colbert and Lord during May and June

19

2014.  Pritzker Decl., ¶ 13.  Prior to commencement of these depositions and in preparation for them,

20

Plaintiffs reviewed thousands of pages of documents and electronic records. *Id.*

21

Plaintiffs moved for class certification on August 7, 2014. *See* Dkt. 103.  As part of that

22

motion, Plaintiffs retained an economist, Andrew D. Schwarz of OSKR, LLC, who submitted an

23

expert declaration and a proposed methodology for determining class-wide damages in this matter.

24

*See* Dkt. 103-3; Pritzker Decl., ¶ 14.  In response, CA Charcoal and Ring retained an economist, Dr.

25

Daniel M. Garrett of Cornerstone Research, Inc., who submitted an expert declaration challenging

26

Mr. Schwarz's analysis. *See* Dkt. 109-2.[1]   Both economists were deposed in August 2014, and Mr.

27

28

[1] Non-Settling Defendants Chef's Choice and Lord did not retain an economist for class certification purposes.

Schwarz provided a rebuttal report addressing Dr. Garrett's critiques and concluding that damages model Plaintiffs propose is effectively tailored to needs and available transactional data, and provides a reasonable, common and formulaic approach to class impact and damages in this case.  *See* Pritzker Decl., ¶ 17 Exh. E [Dkt. 111-8].  The Court held a hearing on the class certification motion on September 19, 2014, and issued its order granting class certification on October 3, 2014.  *See* Dkt. 138; Pritzker Decl., ¶ 18.

Plaintiffs' class certification economist conservatively estimated class damages caused by the collusive activity alleged in this case to be $8,260,866, before trebling.  *See* Dkt. 111-8, Ex. A-1; Pritzker Decl., Exh. E.  This figure was derived using actual-market variables derived from the Defendants' transactional data, using specified cost-of-good and inbound transportation cost data, and an assumed price elasticity measure of -1.68.  *See id*, at ¶¶ 60 - 61.   These inputs are consistent with several data inputs used by CA Charcoal's class certification expert.  *See id*.

Plaintiffs and their expert are continuing to refine their class damages analysis as additional transactional and industry data is analyzed.  Because further expert analysis is underway, the amount of class wide damages asserted at the merits or trial phase of the case may differ or exceed the estimates provided at the time of class certification.  Plaintiffs reserve the right to claim any and all class damages, in such amount, as will be proven at trial.   For purpose of evaluating the reasonableness of the proposed Settlement, however, Plaintiffs use the conservative $8.2 million estimate that was available to the parties at the time of Settlement.  *Id*, ¶ 37.

### C.    The Factors Affecting Settlement

Settlement discussions before Magistrate Judge Spero as between Plaintiffs and the Settling Defendants focuses on four salient factors.

First, with respect to the Lazzari Defendants, the parties focused on the matters identified by the Court at the September 19 hearing on class certification.  Pritzker Decl., ¶ 28, *see also* Exh. G. These matters include: (a) Lazzari's overall financial condition; (b) the funding resources available to Lazzari and Messrs. Colbert and Morgen to fund the Settlement; (c) the overall amount of Lazzari Settlement; and (d) a reasonable timetable in which to fund the Settlement.  *Id.*   Lazzari's financial condition remains precarious.  Lazzari has few assets beyond accounts receivable, inventory on hand,

1   its good will and other intangibles, and the business is burdened with substantial financial debt.

2   Further Colbert Lazzari Decl., ¶ 11; Pritzker Decl., ¶ 27, Exh. F (Ip Decl., ¶ 4) [Dkt 104-4].  Mr.

3   Morgen retired from Lazzari in March 2013, having been diagnosed with Parkinson's disease the

4   year prior, and is no longer able to work.  Morgen Decl., ¶ 6.  Mr. Colbert has a small amount of

5   retirement savings and little real estate equity to commit to a Settlement.  Further Colbert Personal

6   Decl.  Despite these financial constraints, the Lazzari Defendants have now sought assistance from

7   a lender.  This assistance will enable them to restructure their debt, pay $825,000 in Settlement funds,

8   and fully fund their portion of the Settlement Fund by December 1, 2015 – roughly 9 months after

9   the date of the Final Approval Hearing.  Pritzker Decl., ¶ 35, Exh. A (Lazzari Settlement, ¶ 16(a)).

10  This is a substantial improvement over the original proposed payment schedule, which allowed

11  Lazzari to make smaller monthly payments into a Settlement Fund over a period of six years, and

12  includes an additional $25,000 payment into the Fund.  *Id.*

13          Second, the parties and Magistrate Judge Spero considered Lazzari's status as an ACPERA

14  leniency applicant, as well as its potential limited damage liability under ACPERA, in assessing the

15  reasonableness of the overall amount of the Lazzari Settlement.  ACPERA limits the liability of a

16  successful leniency applicant to single damages "attributable to [its] own conduct," and relieves the

17  applicant of joint and several liability.  *See* Joint Brief In Response to Court's Order of September

18  16, 2014 [Dkt. 129] at p.1.  This, in addition to Lazzari's financial constraints, Plaintiffs necessarily

19  considered the potential overall recovery they might obtain from the Lazzari Defendants in single

20  damages "attributable to their own conduct"—roughly $2.8 million—in the event Plaintiffs

21  succeeded on all theories at trial.  Pritzker Decl., ¶ 29, Exh. E, Schwarz Rebuttal Decl. [Dkt.111-8].

22          Third, with respect to the CA Charcoal Defendants, Plaintiffs took into consideration the

23  circumstantial nature of the liability evidence against these Defendants.  Plaintiffs understand that

24  antitrust conspiracy prosecutions often focus on circumstantial, as opposed to direct, evidence of

25  wrongdoing.  While Plaintiffs believe they have a strong liability case against all of the Defendants,

26  there is always a risk that a jury may not give appropriate weight to circumstantial evidence, or award

27  full damages in the light of such evidence.  Pritzker Decl., ¶ 24, 30.  CA Charcoal and Ring deny any

28  participation in any conspiracy, and would challenge their own liability if the action proceeds to trial

against them. Plaintiffs necessarily considered these risks in evaluating the reasonableness of the CA Charcoal Settlement for Class Members. *Id.*

Fourth, unlike the typical settlement where a plaintiff, at least theoretically, can wring as much from the defendant as possible, regardless of the consequences, Plaintiffs here had to balance maximizing the recovery they could realistically obtain from a financially-troubled Lazzari, and a small business owner such as Marvin Ring. The resulting Settlement, the terms of which are described below, seek to strike that balance, while protecting the interests of Plaintiffs and the Class in obtaining reasonable settlement consideration.

### D.     The Proposed Terms of Settlement

#### 1.     Settlement Consideration

##### a.     Creation of a $2,375,00 Settlement Fund

The proposed Settlement is in reality two partial class settlements. Together, they provide $2.375 million in settlement consideration for the Class.

The Lazzari Defendants have agreed to pay a class settlement payment of $825,000, with $750,000 to be paid by Lazzari, $50,000 to be paid by Colbert, and $25,000 to be paid by Morgen. *Id*, Exh. A (Lazzari Settlement, ¶ 16(b)). These funds will be paid using a combination of corporate, individual and bank loans. Further Colbert Lazzari Decl, ¶ 13. Given the financial limitations of these Defendants, and the seasonal nature of Lazzari's mesquite charcoal business, settlement payments will be paid in three installments as follows: $250,000 by January 1, 2015; $200,000 by April 1, 2015; and $325,000 by December 1, 2015. *Id*; *see also* Pritzker Decl., Exh. A (Lazzari Settlement, ¶ 16(a)). All settlement payments can be made sooner. The final settlement payment is due by no later than December 1, 2015 – approximately 9 months from the date of the Final Approval Hearing. *Id*, Exh. A (Lazzari Settlement, ¶ 16(a)); Further Colbert Lazzari Decl, ¶ 14.

The CA Charcoal Defendants have agreed to pay a class settlement of $1,550,000. Pritzker Decl., Exh. B (CA Charcoal Settlement), ¶ 16. As sole owner and shareholder of CA Charcoal, these sums will be paid by Ring using his own funds within 90 days of Preliminary Approval. *Id.*

The total proposed Settlement amount is $2,375,000. This represents approximately 29% of $8.2 million in estimated class damages (without trebling). Pritzker Decl., ¶ 37. All Settlement funds

will be deposited into a Settlement Fund to be held by a third-party escrow agent.  Pritzker Decl., Exh. A (Lazzari Settlement, ¶ 17); Exh. B (CA Charcoal Settlement, ¶ 17).  Lazzari's payments into the Fund will be accelerated, and all amounts shall be immediately due and payable, in the event Lazzari is sold, or there is a change of ownership or control over the company.  *Id*, Exh. A (Lazzari Settlement, ¶ 16(d).

### b.    No Reversion To Defendants

In no circumstance shall funds deposited into the Settlement Fund revert to any Settling Defendant.  Settlement Fund monies may be used only to pay Plaintiffs' attorneys' fees and litigation expenses in amounts approved by the Court.[2]   All sums remaining in the net Settlement Fund after such fees and expenses are paid, together with any interest earned, shall be disbursed to Class Members in accordance with a Plan of Allocation to be approved by the Court.  Pritzker Decl., Exh. A (Lazzari Settlement, ¶ 22), Exh. B (CA Charcoal Settlement, ¶ 22).

### c.    Administrative Costs Will Be Partially Borne By Lazzari

Separate and apart from the settlement consideration described above, the Lazzari Defendants have agreed to pay fifty percent (50%) of all costs associated with establishing and maintaining the Settlement Fund escrow account, disseminating notice to the Class and fees and costs associated with administration of the Settlement.  Pritzker Decl., Exh. A (Lazzari Settlement, ¶¶ 17(a), 19, 28).  As a practical matter, this means that Lazzari will expend at least $ 12,514 in additional funds above and beyond the settlement consideration described above to help fund the cost of mailing Class Notice to the members of Class, and to administer the Settlement for the benefit of Class Members.  Pritzker Decl., ¶ 43, Exh. D.  If the Court desires that Class Members also receive supplemental publication notice in the form discussed in Section III. D., below, Lazzari will pay an additional $ 7,335 toward any required publication notice expense.  *Id*, ¶ 43, Exh. C [Dkt. 140-4, ¶ 10].

Plaintiffs discuss Plan of Allocation proposals in Section III.D of this Memorandum, below. If the Settlement is approved, the claims administrator will disburse monies to Class Members from

---

[2]   The proposed form of Class Notice advises Class members that Plaintiffs' counsel may seek fees and expenses award to be paid from the Settlement Fund at a later time, and that Plaintiffs' counsel may apply for attorneys' fees in an amount not to exceed 25% of the Settlement Fund, in addition to reimbursement of litigation expenses.  *See* Pritzker Decl., Exh. C [Dkt. 140-1].

the Settlement Fund, at the appropriate time(s), in accordance with the Plan of Allocation authorized by the Court.  Pritzker Decl., Exh. A (Lazzari Settlement, ¶ 28); Exh. B (CA Charcoal Settlement).

### 2. Non-Monetary Benefits in the Form of Cooperation

The Settlement also confers non-monetary benefits.  Each Settling Defendant will assist Plaintiffs in the prosecution of the case against the two, remaining Non-Settling Defendants—Chef's Choice and William Lord.  Settling Defendants agree to provide interviews, discovery and testimony, as reasonably necessary, for summary judgment and trial.  Pritzker Decl., Exh. A (Lazzari Settlement, ¶ 29); Exh. B (CA Charcoal Settlement, ¶ 29).

### 3. Release

Upon final approval of the Settlement, Plaintiffs and Class Members will release all claims they have against the Settling Defendants that "were asserted in this Action" and/or that "arise from the Action or the factual allegations made therein."  Pritzker Decl., Exh. A (Lazzari Settlement, ¶ 13); Exh. B (CA Charcoal Settlement, ¶ 13).   However, the released claims only include sales of Mesquite Lump Charcoal that are subject to the antitrust laws of the United States, and is limited only to direct purchaser claims.  *Id*, Exh. A, ¶¶ 13, 14, Exh. B, ¶¶ 13, 14.  The release expressly excludes "any other claims, including but not limited to claims for product defect, personal injury or breach of contract in the ordinary course of business.  *Id*, Exh. A, ¶ 14, Exh. B, ¶ 14.

## III.   ARGUMENT

### A. The Settlement Should Be Preliminarily Approved

Plaintiffs submit the proposed Settlement for preliminary approval.  As set forth in the Manual for Complex Litigation, a class action settlement "involves a two-step process."

> First, counsel submit the proposed terms of the settlement and the court makes a preliminary fairness evaluation…. If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies…the court should direct that notice under Rule 23(c) be given to the class members of a formal fairness hearing, at which argument and evidence may be presented in support of and in opposition to the settlement.

*Id*, § 30.41 at 236-37 (3d ed. 1995).

Preliminary approval does not require the Court to make a final determination that a settlement is fair, reasonable and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to class members. *See* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.83[1], 23-336.2 to 22-339 (3d ed. 2001). At the preliminary approval state, the "Court need only determine whether the proposed settlement appears on its face to be fair" and "falls within the range of possible [judicial] approval." *Williams v. Costco Wholesale Corp.*, Civ. No. 02-cv-2003, 2010 WL 76112, at *5 (S.D. Cal. March 4, 2010). "A settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotations omitted). Different facts may predominate in different circumstances. *Ibid*.

Generally speaking, courts favor settlements and thus give "proper deference" to the parties' settlement agreement because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (internal quotations omitted). If the Settlement falls within the range of what could be "fair, adequate and reasonable," preliminary approval is appropriate, notice may be given to the proposed class and a hearing for final approval can be scheduled. *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "Given that some…factors cannot be fully assessed until the Court conducts the Final Approval Hearing, 'a full fairness analysis is unnecessary at this stage.'" *Williams*, 2010 WL 761122, at *5.

**B.      The Proposed Settlement Meets the Standards for Preliminary Approval**

Plaintiffs' proposed partial class Settlement satisfies Rule 23's mandates. The Settlement is the product of arms-length negotiations, provides settlement consideration that is reasonable and fair in light of Defendants' substantial financial limitations, and is supported by confirmatory discovery and expert analysis.

//

//

1.      **The Settlement Was Vigorously Negotiated by Informed Counsel**

Courts recognize that the opinion of experienced counsel supporting the settlement after vigorous arms'-length negotiations is entitled to considerable weight. *See, e.g. Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight").

Plaintiffs have been actively litigating this case in compliance with the Court's aggressive discovery, class certification and trial schedule.  Plaintiffs and their experts have thoroughly reviewed and analyzed Defendants' transactional data, financial records and internal records of communications with one another.  Pritzker Decl., ¶¶ 11 – 13, 19 -26.

Plaintiffs completed depositions of each of the individually-named Defendants—Morgen, Colbert, Ring and Lord—by June 12, 2014.  Pritzker Decl., ¶ 13.  Prior to settlement, the parties completed briefing and expert discovery related to class certification on August 28, 2014.  They also had the benefit of the Court's views with respect to class settlement when class certification motion was argued on September 16, 2014.  Thus, by the time settlement discussions before Magistrate Judge Spero commenced on October 2, 2014—just one day before this Court issued its order on class certification—Class Counsel had a solid understanding of the strengths and weakness of Plaintiffs' claims, both factually and legally.  *Id*, ¶¶ 11 – 13, 19 -26.   Further, in connection with settlement negotiations with the Lazzari Defendants, and to assure themselves of the financial condition of these Defendants, Plaintiffs recruited retained a forensic accountant to assist them in analyzing Lazzari's financial records and the financial health of Messrs. Morgen and Colbert.  *Id*, ¶ 26 - 27, Exh. F [Dkt. 104-4].

All settlement negotiations before Magistrate Judge Spero were attended by experienced class action counsel and had participation by representatives from each Plaintiff, including Il Fornaio's General Counsel who had participated in several mediations and worked on the resolution of other class settlements.  *Id*, ¶¶ 32 - 33.  The Class Representatives support the Settlement.  *Id*.  A "proposed settlement [that] appears to be the product of serious, informed, non-collusive negotiations" should be given effect.  *See In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)

("[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing…." (quoting *Manual for Complex Litigation (Second)* § 30.44 (1985)).

### 2.      The Proposed Settlement is Within the Range of Reasonableness

The Court, in granting preliminary approval, need only find that the settlement falls within the "range of reasonableness."  4 Newberg on Class Actions §§ 11.25 (4th ed.  2002) ("*Newberg")*. To determine whether a settlement falls within the range of possible approval, the Court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig*., *supra*, 484 F.Supp.2d at 1080.

Here, the Settlement provides for a total contribution of $2,375,000 into the Settlement Fund. Pritzker Decl., Exh. A (Lazzari Settlement Agreement, ¶ 16); Exh. B (CA Charcoal Settlement Agreement, ¶ 16).  If the Settlement is finally approved, only the Settling Defendants will be released from the claims alleged in the action.  Pritzker Decl., Ex. A (Lazzari Settlement Agreement, ¶ 13); Exh. B (CA Charcoal Settlement Agreement, ¶ 13.).  The litigation will proceed against Non-Settling Defendants, Chef's Choice and its owner, William Lord.  Pritzker Decl., ¶ 5.  Under the Settlement, Lazzari, CA Charcoal and their principals will assist Plaintiffs in prosecuting the case against these two remaining Defendants.  *Id*, ¶ 5.

The proposed Settlement amount, $2,375,000, fares well in comparison to other analogous cases.  *See, e.g., In re Mego Fin. Corp. Sec. Liti*g, 213 F.3d 454, 459 (9th Cir. 2000) ($2 million settlement amount that was roughly one-sixth of the potential recovery was fair and adequate in light of difficulties in proving case); *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 964 (9th Cir. 2009)(approving settlement in antitrust class action against which represented 30% of the damages estimated by expert), *vacated and remanded in part on other grounds*, 688 F.3d 645 (9th Cir. 2012). Here, the Settling Defendants will pay the equivalent of 29% of the $8.2 million in estimated class damages (before trebling). Pritzker Decl., ¶ 36.  The Non-Settling Defendants are jointly and severally liable for all class damages. *Id*, Exh. G (Transcript of Sept. 16, 2014 Hearing, at 32:3-25,

37:6-38:7.)

While it appears, based on the financial analysis provided by Plaintiffs' forensic accountant, that these Defendants have sufficient assets to pay the settlement consideration on the payment schedules listed in the Settlement, Plaintiffs have legitimate concerns that either one of these Defendants—a small business owner and a financially-troubled limited liability company--could pay more than the Settlement demands, let alone a judgment for $8.2 million.  *See* Pritzker Decl., ¶¶ 24 - 31, Exh. F ([Dkt. 104-4] Ip Decl., ¶ 4(g)); Further Colbert Lazzari Decl., ¶¶ 8, 11, 14, 17; Further Colbert Decl.

As the court stated in *Chatelain v. Prudential-Bache Sec., Inc*., 805 F.Supp. 209, 214 (S.D.N.Y. 1992) (*quoting In re. Warner Communications Sec. Litig*., 618 F. Supp. 735, 746 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986):  "The prospect of a bankrupt judgment debtor down at the end of the road does not satisfy anyone in the use of class action procedures." *See also In re Critical Path, Inc.*, C 01-00551 WHA, 2002 U.S. Dist. LEXIS 26399, *20-21 (N.D. Cal. June 18, 2002) ("[t]hrough protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing.")  As in *Torrisi v. Tucson Elec.Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993), "one factor predominates" – Defendants' financial condition.  Accordingly, this factor also weighs in favor or preliminary approval.

## C.    Proposed Plan of Notice

Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement…."  The notice must inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing. *Newberg* § 8.32. It also must inform class members of the opportunity to opt-out, that the judgment will bind class members who do not opt-out, and that any member who does not opt-out may appear through counsel. Fed. R. Civ. P. 23(c)(2)(B). The form of notice is "adequate if it may be understood by the average class member." *Newberg* §11.53. (*See also* Dkt. 29, ¶13.)

In its Order Granting Class Certification, the Court directed that the parties file an agreed-

upon proposed form of direct-mail Class Notice by October 17, 2014.  Pritzker Decl., ¶ 40, [Dkt.138] at p.8.  The parties filed Joint Response to the Court's Order on October 17, in which they attached a proposed joint form of direct-mail Class and Settlement Notice.  *Id*, Exh. C [Dkt. 140-1].  The parties believe a joint form of notice is economical and most practical where, as here, the case is continuing against Non-Settling Defendants.  *Id*, ¶ 42, Exh. C [Dkt. 140 at pp.1-2].  For purposes of this motion, Plaintiffs refer to this form of direct-mail notice simply as Class Notice.

The proposed joint form of Class Notice satisfies the legal requirements described above.  A plain-English form of notice, modeled after the sample form of notice that appears on the Federal Judicial Center website (http://www.fjc.gov/), and containing all the information required by Rule 23(c) and (e), will be sent by direct first-class mail to Settlement Class members.  Pritzker Decl., ¶ 41, Exh. A (Lazzari Settlement, ¶ 27); Exh. B (CA Charcoal Settlement, ¶ 27).   Individual notice by mail is the "best notice practicable under the circumstances" where class members' names and addresses "may be ascertained through reasonable effort."  *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173 (1974); *see Covillo v. Specialty's Cafe*, 2013 U.S. Dist. LEXIS 153724, *16 (Case No. C-11-00594 DMR) (N.D. Cal. Oct. 25, 2013) (Ryu, Magistrate Judge) (approving notice form and procedure for first-class mail within ten days after receiving class members' name and address information from defendant); *In re Charles Schwab Corp. Secs. Litig.,* 2011 U.S. Dist. LEXIS 44547, *16 (Case No. C 08-01510 WHA) (N.D. Cal. Apr. 19, 2011) (finally approving class settlement and finding that individualized notice sent by first-class mail to class members satisfied procedural requirements of Rule 23(c)(2) (for notice of class certification) and Rule 23(e)(1) (for notice of settlement) as well as the requirements of due process).  Here, because Class Member's Mesquite Lump Charcoal purchases are delivered to a physical mailing address, Class Member names and addresses can be readily discerned from Defendants' records.  Pritzker Decl., ¶ 42.

At the Court's request, the parties also have prepared a form of supplemental publication notice.  Pritzker Decl., ¶ 42, Exh. C [Dkt. 140-2, 140-3].  The parties ask the Court further evaluate whether summary publication notice is appropriate in this case, due to the relatively small Class size (1500 persons or entities), the availability of Class names and last known, and the types of specialized purchases at issue in this case. *Id*.  Should publication notice be desired, the parties propose that such

notice be in the form of a banner advertisement that will appear in an *eNewsletter* published by *Nation's Restaurant News* (NRN).  NRN is a leading media outlet in the foodservice industry, and reaches subscribers from both the restaurant and food-service distribution industries.  Pritzker Decl., ¶ 43, Exh. C [Dkt. 140 at p.2].  NRN publishes a daily *eNewsletter*, which is delivered to over 71,000 readers each weekday.  *Id*.  A banner advertisement in the *eNewsletter* would be published twice each week for a period of three weeks, and link directly to a summary form of notice on the class settlement website.  *Id*, Exh. C [Dkt. 140 at p.3].  If desired, the estimated cost of such supplemental publication in the manner proposed is approximately $15,000.  *Id.*  Under the Settlement, Lazzari would be responsive for one-half of this expense, or roughly $7,500.  Pritzker Decl., Exh. A (Lazzari Settlement, ¶ 19(a).)

**D.**     **The Notice Contemplates a Fair, Court-Approved Plan of Allocation**

Plaintiffs propose that distribution of Settlement funds be deferred until at least June 2015, when there might be additional funds available from the Non-Settling Defendants to distribute. Piecemeal distribution is expensive, time-consuming and likely to cause confusion to class members. Deferring settlement payment disbursement is common in class action cases involving partial settlements where claims against other Defendants remain.  S*ee Manual for Complex Litigation (Fourth)*, §21.651 (2004).  Until that time, the Settlement funds will accrue interest for the benefit of the Class.  Pritzker Decl., Exh. A (Lazzari Settlement Agreement, ¶ 17); Exh. B (CA Charcoal Settlement Agreement, ¶ 17).

A plan of allocation of class settlement funds is subject to the "fair, reasonable and adequate" standard that applies to approval of class settlements.  *In re Citric Acid Antitrust Litig*., 145 F.Supp. 2d 1152, 1154 (N.D. Cal. 2001); *City of Seattle*, 955 F 2d at 1284-1285. "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig*., 1994 U.S. Dist. LEXIS 21593, *3 (N.D. Cal. June 16, 1994).  Here, Plaintiffs propose that Settlement funds be allocated, *pro rata*, based on the dollar value of each Class Member's Mesquite Lump Charcoal purchases in proportion either to: (1) the total amount of the Settlement Fund; or (2) the total number of claims filed.

Plaintiffs do request the Court's guidance on a Plan of Allocation that can be used when

1   Settlement funds are ready to be disbursed.  Plaintiffs recognize the Court's preference for a claims

2   procedure that calculates settlement checks from the defendants' records.  *See* Notice Regarding

3   Factors to Be Evaluated for Any Proposed Class Settlement [Dkt. 29], ¶ 7.  Where the defendants'

4   records are good, this type of procedure reduces the burden on class members to claim settlement

5   benefits.  Here, however, the Defendants' records contain deficiencies that make it difficult to fairly

6   and accurately calculate settlement benefits on a *pro rata* basis.  Chef's Choice does not maintain

7   purchase orders for many of its key customers, and also suffered a massive data loss in 2012:

8   recreating the transactional history of each of its customers for the 11-year class period will be

9   exceptionally difficult, if not impossible.  Pritzker Decl., ¶ 45.  Lazzari has adequate electronic

10  transactional data for the period 2008-2011, but for earlier years, the company's purchase data for

11  individual customers will need to be recreated from aggregate data or paper records to the extent

12  such records exist.  *Id.* Recreating individual Class Member purchase data, therefore, will be

13  expensive and may lead to inaccurate results.  *Ibid.*

14      Another approach would be to have Class Members to submit a claim form with an estimate

15  of the dollar amount of Mesquite Lump Charcoal purchased, which could be verified by Defendants'

16  records.   While a claims procedure imposes a minimal burden on Class Members to review their

17  records and respond, in this instance, where the available transactional records are lacking or

18  imprecise for purposes of calculating *pro rata* Class Member distributions, a simple claims process

19  may improve accuracy and provide a more "cost-effective, simple, and fundamentally fair" means

20  of distributing settlement funds to Class Members on a *pro rata* basis.  *In re Airline Ticket Comm'n*

21  *Antitrust Litig*., 953 F.Supp 280, 285 (D.Minn. 1997).

22      Plaintiffs will utilize a fair Plan of Allocation as determined by the Court.

23  //

24  //

25  //

26  //

27  //

28  //

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CLASS SETTLEMENT

### E.      Proposed Schedule For Notice and Final Approval

Plaintiffs also move the Court for the following schedule regarding approval of the proposed partial class Settlement:

| | |
|---|---|
| Deadline to complete notice ("Notice Date") to Class Members by mail | December 15, 2014 |
| Deadline for filing of motion for final approval of proposed Settlement | February 16, 2015 |
| Deadline for Class Members to request exclusion or opt out, to object to or comment on Settlement, and/or submit notice of intent to appear at final approval hearing | March 2, 2015 |
| Deadline for filing supplemental papers in support of final approval and addressing any objections | March 16, 2015 |
| Final Approval Hearing | April 7, 2015 |
| Deadline for Class Members to submit claims forms ("Claim Deadline") | As needed, pursuant to Court Order |

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs respectfully request that their Preliminary Approval Motion be approved.

DATED: October 24, 2014                    **PRITZKER LEVINE LLP**


                                           By: __/s/ Elizabeth C. Pritzker_____
                                              Elizabeth C. Pritzker

                                           Bethany L. Caracuzzo
                                           180 Grand Avenue, Suite 1390
                                           Oakland, CA 94612
                                           Telephone: (415) 692-0772
                                           Facsimile: (415) 366-6110

                                           *Class Counsel*