IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IL FORNAIO (AMERICA) CORPORATION, OLIVETO PARTNERS, LTD. and THE FAMOUS ENTERPRISE FISH COMPANY OF SANTA MONICA, INC., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LAZZARI FUEL COMPANY, LLC, CALIFORNIA CHARCOAL AND FIREWOOD, INC., CHEF'S CHOICE MESQUITE CHARCOAL, RICHARD MORGEN, ROBERT COLBERT, MARVIN RING, and WILLIAM W. LORD,<br><br>Defendants. | No. C 13-05197 WHA<br><br>**TENTATIVE ORDER GRANTING PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT AND ORDER RE PLAN OF ALLOCATION** |

**INTRODUCTION**

All parties in this civil antitrust class action involving direct purchasers of mesquite lump charcoal move for preliminary approval of a proposed class settlement. For the reasons stated herein, the motion is **TENTATIVELY GRANTED**, subject to the following guidance.

**STATEMENT**

This is a civil antitrust class action following a guilty plea to a *per se* violation of Section 1 of the Sherman Antitrust Act. Now follow the details.

In 2011, defendant Lazzari Fuel Company, LLC reached a conditional agreement with the Department of Justice regarding leniency and cooperation in connection with an alleged violation of the antitrust laws for the sale of mesquite lump charcoal in the United States.

More than a year later, defendant William Lord, the owner of Chef's Choice, pled guilty to a violation of Section 1 of the Sherman Act. *United States v. Lord*, No. 3:12-cr-00326-WHA

(N.D. Cal.). Mr. Lord admitted to an agreement with all defendants herein not to compete for customers for the sale of mesquite lump charcoal in the United States. He served prison time and paid a $100,000 fine.

In April 2013, Lazzari offered purchase rebates to eleven customers in "restitution." Those eleven customers were offered discounts that could be taken through deductions from future customer remittances (Colbert Decl. ¶¶ 4–6, 11). Mr. Colbert has recently stated, however, that "[m]any of the eleven customers have not yet applied the rebates . . . but we expect that they may do so at some point" (Dkt. No. 154-1).

In November 2013, this action and another putative class action were commenced. The actions were consolidated and Attorney Elizabeth Pritzker was appointed as interim counsel.

Three defendants (Lazzari, Mr. Morgen, and Mr. Colbert) then moved for preliminary approval of a partial class settlement. That proposal was rejected but the parties, as they requested, were provided guidance at the hearing.

Two more defendants (California Charcoal and Mr. Ring) then reached a partial class settlement. A class was certified (Dkt. No. 138).

Now, all defendants have reached a proposed class settlement. This order follows full briefing, supplemental submissions, and oral argument. Fact discovery closes December 19, 2014, and trial would begin in March 2015 (Dkt. No. 57).

**ANALYSIS**

**1. PROPOSED SETTLEMENT.**

All parties move for preliminary approval of a proposed class settlement. In October 2014, the following class was certified under Rule 23(b)(3):

> All persons and entities in the United States who, between January 1, 2000 and September 30, 2011, directly purchased mesquite lump charcoal from any defendant. Mesquite lump charcoal is defined as charcoal derived from the mesquite tree that is sold for restaurant or food-service use. Specifically excluded from the class are defendants; the officers, directors, or employees of any defendant; and the legal representatives, heirs, successors, or assigns of any defendant. Also excluded are any judicial officer and juror assigned to this action.

Under the settlement proposal, the key terms would be as follows.

2

*Net Settlement Fund*: The net settlement fund would be $4.575 million plus interest minus attorney's fees, expenses, taxes, and some costs. All payments would go to an escrow account and the last payment would be paid by December 15, 2015. The fund would be composed as follows.

- *Lazzari*: The Lazzari defendants would pay $825,000 in total. Lazzari would pay $750,000, Mr. Colbert would pay $50,000, and Mr. Morgen would pay $25,000. The payment schedule would be: $300,000 by January 2015, $200,000 by April 2015, and $325,000 by December 2015. In other words, all payments would be paid by December 15, 2015. If more than fifty percent of Lazzari's shares were to be transferred to a *bona fide* purchaser or more than fifty percent of Lazzari's non-inventory assets were to be sold to a single person or entity, the unpaid portion of Lazzari's obligation would be due within thirty days of completion of the sale.
- *California Charcoal*: Within ninety days of preliminary approval, Mr. Ring (the sole owner) would pay $1.55 million on behalf of himself and California Charcoal.
- *Chef's Choice*: Mr. Lord (the sole owner) would pay $2.2 million on the following schedule: eleven monthly payments of $185,000 and one final payment of $165,000. All payments would be paid by November 30, 2015. If more than fifty percent of Chef's Choice's shares were to be transferred to a *bona fide* purchaser or more than fifty percent of Chef's Choice's non-inventory assets were sold to a single person or entity, the unpaid portion of Mr. Lord's obligation would be due within thirty days of completion of the sale.

*Release*: Defendants would be:

> completely released from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively, or in any other capacity), that Releasors, or each or them, ever had, now has, or hereafter can, shall, or may have, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that, as of the date judgment is entered: (I) were asserted in the Action; and/or (ii) arise from the Action or the factual allegations made therein ("the Released Claims"). The Released Claims shall only include sales

3

of Mesquite Lump Charcoal that are subject to the antitrust laws of the United States.

The release does not include claims for product defect, personal injury, or breach of contract in the ordinary course of business . . . . Further, the release . . . includes only direct-purchaser claims.

*Costs*: The cost of administering the California Charcoal and Chef's Choice settlement would come out of the settlement fund. Separate and apart from its contribution to the settlement fund, Lazzari would be responsible for half of the cost of administering the settlement fund and notice. In other words, if the total cost of administering the settlement was $20,000, Lazzari would pay $10,000 on top of its $825,000 contribution, and the remaining $10,000 would come from the settlement fund.

*No Reversion*: There would be no reversion to defendants.

*Attorney's Fees*: Class counsel's fees and expenses would be paid solely from the settlement fund. Defendants would not oppose an application for fees not to exceed one-third of the settlement fund, plus expenses, costs, and interest on fees and expenses incurred for this action. The Court would decide the fee issue and would not bound by any agreement.

*              *              *

The following factors are considered when determining whether a proposed class settlement is fundamentally fair, adequate, and reasonable under Rule 23(e):

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citations omitted).

Subject to the following guidance, this order **TENTATIVELY GRANTS** preliminary approval of the proposed class settlement.

4

This order finds that each defendant-group's proposed settlement contribution is reasonable in light of the facts and circumstances. In total, the proposed $4.575 million class settlement would represent 55% of the low-end estimated overcharges before trebling, as determined by plaintiffs' trial expert. The table below shows the breakdown.

|  | **ESTIMATED OVERCHARGE** | **POUNDS SOLD** | **SETTLEMENT** |
|---|---|---|---|
| **CA Charcoal** | $2,086,784 | 67 million | $1,550,000 |
| **Lazzari** | $2,853,089 | 121 million | $825,000 |
| **Chef's Choice** | $3,320,993 | 118 million | $2,200,000 |
| **Total** | $8,260,866 | 306 million | $4,575,000 |

Lazzari's $825,000 proposal is offered in light of (1) its relative "weak financial condition;" (2) its leniency agreement with the Department of Justice under Section 213 of the Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA");[*] and (3) that it was the first defendant-group to settle. The Lazzari defendants' total contribution would represent 82.2% of Lazzari's total equity as of September 2014, and 61.4 of Lazzari's net profits on the sales in question (Colbert Lazzari Decl. ¶¶ 6, 8). Plaintiffs and the Lazzari defendants first reached a proposed partial class settlement in July 2014, before plaintiffs moved for class certification. (Although the Court prefers that settlement discussions follow rather than precede the Rule 23 motion, the Court expressly allowed pre-motion discussions herein in light of the financial condition and other factors.) The resulting proposal was based on "significant concerns" about Lazzari's liquidity and its ability to continue as a going concern, so plaintiffs say (Dkt. No. 89-1). Plaintiffs' counsel hired an accountant to review the Lazzari defendants' financial condition and she rendered a report (Dkt. No. 141-7). Class counsel continue to believe that Lazzari's financial condition appears "precarious" and that individual defendants Richard Morgen and Robert

---

[*] Under ACPERA, damages would be limited to the "actual damages" sustained if defendants provided "satisfactory cooperation." Here, Lazzari, Mr. Morgen, and Mr. Colbert provided satisfactory cooperation in the form of promptly producing all of its production to the Department of Justice before any formal discovery was served, producing all of its accounting records, providing interviews and deposition testimony regarding the alleged conspiracy, and so forth. Class counsel have no objection to the cooperation of the Lazzari defendants.

5

Colbert are "without any significant assets with which to satisfy a larger judgment" (Pritzker Decl. ¶ 27).

This revised proposal includes a better payment plan than the one originally proposed, which would have allowed for 66 monthly payments over a period of six years. That proposal was rejected mainly because class members would have had to wait six years for a distribution. Now, all of the payments from the Lazzari defendants would be paid by December 15, 2015. This revised proposal is also $25,000 more than the original proposal. The Lazzari defendants' contribution would represent 29% of the estimated overcharges for Lazzari only (without trebling), according to plaintiffs' expert. On top of their $825,000 contribution, the Lazzari defendants would also pay for fifty percent of all costs associated with disseminating notice and administering the fund.

California Charcoal's proposal is offered as a one-time payment of $1.55 million. This payment would be due within ninety days of preliminary approval. Defendant Mr. Ring, a "small business owner," would be "using his own funds" to pay California Charcoal's contribution. Class counsel stated that they "took into consideration the circumstantial evidence of liability that exists" against the California Charcoal defendants (Pritzker Decl. ¶¶ 30, 31, 36; Pritzker Supp. Decl. ¶ 12).

Chef's Choice's proposal is offered in light of Mr. Lord's "limited financial resources." Mr. Lord and Chef's Choice would pay $2.2 million by liquidating Mr. Lord's personal assets and using the "ongoing sales revenues" of Chef's Choice (Pritzker Supp. Decl. ¶ 11). Mr. Lord would make eleven monthly installments of $185,000, and a final payment of $165,000 (due November 30, 2015). All of Mr. Lord's assets as of September 2014, total $3.37 million in real property, vehicles, personal and business bank accounts, investment accounts, annuities, insurance policies, and retirement accounts (Lord Exh. 1).

All of the proposed settlements were negotiated by experienced counsel with the assistance of an active magistrate judge. The instant proposal came after class certification and with only a handful of weeks in the fact discovery period remaining. Plaintiffs have deposed all of the individual defendants, submitted a damages report (used at class certification) and

supplemental report, and hired an accountant to review the Lazzari defendants' finances. Defendants submitted their own expert declaration in response to the plaintiffs' damages report and took Rule 30(b)(6) depositions of plaintiffs. Defendants were also given the opportunity to depose the Lazzari defendants and plaintiffs' accountant. Fact discovery closes December 19, and trial would begin March 2015.

The risk, expense, and complexity of continued litigation and trial are not insubstantial. If the case proceeds on the merits, at least some of the defendants would move for summary judgment and file a *Daubert* motion. Indeed, the class certification order stated that defendants' objections to plaintiffs' damages report were denied without prejudice to renewal at the final pretrial conference. If the defense succeeded at that stage, "we may have to de-certify the class" (Dkt. No. 138). Considering the facts and circumstances herein, this order finds that it may well be in the best interest of the class to receive some payment relatively soon, rather than face the additional expense and risk of trial.

This order, however, asks the parties to consider the following problems and proposed revisions to the proposal and to provide the following additional information.

*Lazzari Purchase Rebates*: Pursuant to a "restitution" promise to the Department of Justice, Lazzari has offered discounts via purchase rebates to eleven customers. Those customers could apply for deductions from future customer remittances. "[T]hree [customers] have actively and regularly applied the discounts" but others "have not yet applied the rebates they are entitled to receive" (Dkt. No. 154-1, Colbert Decl. ¶¶ 9–12). The Lazzari defendants and plaintiffs shall please address how the proposed claims process would account for the Lazzari discounts received by class members. There should be no double recovery at the expense of other class members. The proposed claim form should also explain that class members could not seek both purchase rebates and settlement money for the same mesquite lump charcoal purchases.

*Costs*: The Lazzari defendants have agreed to pay for half of the cost of administering the settlement fund and notice, on top of their $825,000 contribution. Currently, the California Charcoal defendants and Chef's Choice defendants want their portion of administering the settlement fund and notice to come from the settlement fund. This order asks the California

7

Charcoal defendants and Chef's Choice defendants to consider paying their 25-percent portions of administering the settlement fund and notice, above and beyond their current contributions. This is because the parties propose a "claims process," wherein eligible class members would need to timely complete and submit a claim form indicating the amount of qualifying mesquite lump charcoal sales from each defendant. The claims administrator would then verify those amounts using defendants' records "where available" (Pritzker Supp. Decl. ¶ 33). Class counsel stated that defendant Chef's Choice did not maintain purchase orders for many of its "key customers" and suffered a "massive data loss" in 2012 (Pritzker Decl. ¶ 45). Defendants should shoulder the burden of administering the settlement and providing class notice, considering defendants own disorganized records necessitated the claims process.

*Release*: The proposed release is quite wordy and hard for the average class member to understand. The class release should be limited to only the asserted certified class claim. That is, the claim alleging violation of Section 1 of the Sherman Act, which was asserted on behalf of only direct purchasers (Dkt. Nos. 75, 138) (and any state counterparts). The parties should see if they can make their release less wordy.

*Average Claim Amount*: The parties have not identified what the average claim amount would be for the 1,500 class members. In a joint statement, please state the average claim amount and the amount that each named plaintiff expects to claim via the proposed claim process.

*Unclaimed Amounts*: Currently, the parties propose a claims process with no reversion to defendants. Eligible class members would submit a claim form indicating their amounts of qualifying purchases from defendants. Perhaps the entire net settlement fund would be exhausted and no uncashed settlement checks would remain. Nevertheless, the parties should consider what would happen to any unclaimed amounts and a time schedule for dealing with this possibility. The Court would prefer paying left overs to class members who submitted claim forms on a *pro rata* basis, but if the parties plan on proposing a *cy pres*, please be sure to propose at least three organizations and explain why they qualify. *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011).

8

The parties shall please promptly meet-and-confer in person and file a joint statement by **DECEMBER 11 AT NOON**. Please append a redline of any revisions. A further hearing is set for **DECEMBER 16 AT 2:30 P.M.**

### 2. PLAN OF ALLOCATION.

*Timing*: This order agrees with the parties that distribution of the net settlement fund should be deferred for now so that a single distribution of settlement checks can be made, if possible. Recall that the last settlement payment would be due December 2015.

*Claims Process*: Class counsel stated that defendants' records contain "deficiencies that make it difficult to fairly and accurately calculate settlement benefits on a *pro rata* basis." In pertinent part, Chef's Choice did not maintain purchase orders for many of its "key customers" and suffered a "massive data loss" in 2012. Lazzari only had electronic data for the period 2008 through 2011. Data for earlier years would need to be recreated from "paper invoices or payment records, to the extent such records exist" (Pritzker Decl. ¶¶ 45, 46).

The parties thus propose that the net settlement fund be allocated, *pro rata*, on a claims-made basis, based on the "total dollar value of each class member's qualifying mesquite lump charcoal purchases in proportion to the total amount of the net settlement fund." The parties submitted a proposed claim form that class members could submit by mail (Supp. Br. 14). In other words, each of the 1,500 class members would need to complete and submit a claim form to qualify for a portion of the settlement fund.

The proposed claim form would require that each class member state his (or her) name (or business entity), address, phone number, and email. Each class member would then be required to complete a table providing the "yearly total dollar amount you spent to purchase, for restaurant or food-service use, 20-pound and/or 40-pound bags of mesquite lump charcoal" for each year, from each defendant during the alleged eleven-year conspiracy. Each class member would then sign the form under "penalty of perjury." Class members would be advised in the proposed claim form that "the Claims Administrator has the right to request verification of the information set forth by you . . . including, but not limited to, documentation demonstrating the purchase of mesquite lump charcoal in the amounts claimed . . . above for each year from 2000 to 2011, and

9

that the purchases were for restaurant or food-service use" (Dkt. No. 157-8). Class counsel previously indicated the aggregate dollar sales and unit sales by defendant and by year (Dkt. No. 121-1), but this proposed claims procedure would require each class member to identify the specifics.

This claims procedure could only be justified if the parties had a reasonable expectation that the vast majority of the class members would timely submit completed claim forms. Nevertheless, as stated above, the parties have not yet identified the average claim amount for the 1,500 class members.

Accordingly, approval of the proposed claim form is **HELD IN ABEYANCE** until the parties submit further information. The revised proposed claim form should make clear that (1) only direct-purchasers of mesquite lump charcoal from the named defendants would qualify to receive a *pro rata* portion of the settlement fund and (2) how to account for Lazzari's purchase rebates. Additionally, in light of the upcoming holidays, absent class members may be better off receiving the notice and claim form after the new year.

**3.     NOTICE.**

All defendants have provided class counsel with the last known address and telephone number for defendants' direct purchasers. The parties have now filed a proposed notice of class certification and class settlement for the 1,500 class members (Dkt. Nos. 140, 157-5). The October 2014 order required notice by first-class mail, the class website, and publication.

The proposed class notice is **REJECTED**. It is too wordy and contains typographical errors. Appended to this order is a revised class notice. The parties shall review the revised class notice and state in their December 11 joint statement whether they have any additional edits. Please proofread.

The undersigned judge is in receipt of the parties' statement regarding publication notice in the *Nation's Restaurant News*, a trade publication. The options are: (a) a quarter-page summary notice in print, which costs $7,450; (b) a banner-shaped electronic notice with a hyperlink to the class website, which costs $2,595; and (c) both, which costs $10,045 (Dkt. No.

140-4, Dahl Decl. ¶¶ 10, 11). The electronic newsletter is delivered to 71,000 readers each weekday.

If preliminary approval is ever granted, publication notice shall be as follows. A banner-shaped notice with a hyperlink to the class website shall be made available three times: **MONDAY, JANUARY 5, 2015, WEDNESDAY, JANUARY 14, AND THURSDAY, JANUARY 29**. Copies of the executed settlement agreements, this order, and the claims form (if approved) shall be available on the class website by **JANUARY 9**.

## CONCLUSION

For the reasons stated herein, the motion for preliminary approval of the class settlement is **TENTATIVELY GRANTED**, subject to fixing the above problems. The proposed class notice is **REJECTED**. A joint statement is due **DECEMBER 11 AT NOON**. Please append any redlines. Further hearings are set for **TUESDAY, DECEMBER 16, 2014 AT 2:30 P.M.** and **WEDNESDAY, APRIL 22, 2015 AT 3:00 P.M.** All existing deadlines remain in place.

**IT IS SO ORDERED**.

Dated: December 4, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

# IF YOU BOUGHT MESQUITE LUMP CHARCOAL DIRECTLY FROM LAZZARI, CALIFORNIA CHARCOAL, OR CHEF'S CHOICE FOR RESTAURANT OR FOOD-SERVICE USE BETWEEN JANUARY 1, 2000 AND SEPTEMBER 30, 2011

## A Class Action Lawsuit and Class Settlement May Affect You.

This is a civil antitrust class action.

Plaintiffs allege that defendants Lazzari Fuel Company, LLC ("Lazzari"), California Charcoal and Firewood, Inc. ("California Charcoal"), Chef's Choice Mesquite Charcoal ("Chef's Choice"), Richard Morgen, Robert Colbert, Marvin Ring, and William W. Lord (collectively, "defendants") fixed the prices of mesquite lump charcoal in violation of federal antitrust laws.  Mesquite lump charcoal is a hardwood charcoal derived from the mesquite tree, often used by restaurants and food-service distributors.

In exchange for a release of the asserted antitrust claim, all defendants have agreed to a class settlement that would provide **$4.575 million** to pay eligible class members that directly purchased mesquite lump charcoal from any defendant.

You may submit a claim form, object to the settlement, or exclude yourself from the settlement.

**Your legal rights are affected whether or not you act.  Please read the entire notice carefully.**

**If the settlement is approved, to receive settlement money, you would need to complete a <u>claim form</u>.**

### 1.  Why did I get this notice?

You received this notice because you or your business may have purchased mesquite lump charcoal directly from defendants Lazzari, California Charcoal, and/or Chef's Choice between January 1, 2000 and September 30, 2011.

You have the right to know about this litigation and about your options before the Court decides whether to approve the class settlement.  This lawsuit is occurring in the District Court for the Northern District of California before the Honorable William Alsup.  *Il Fornaio Corporation, et al. v. Lazzari Fuel Company, LLC, et al.*, No. 13-05197.

### 2.  Who are the parties?

The named plaintiffs are Il Fornaio (America) Corporation, Oliveto Partners, Ltd., and The Famous Enterprise Fish Company of Santa Monica, Inc.

The defendant companies are Lazzari, California Charcoal, and Chef's Choice.  The individual defendants are Richard Morgen and Robert Colbert (former and current Lazzari managing shareholders), Marvin Ring (owner of California Charcoal), and William Lord (owner of Chef's Choice).

### 3.  What is this litigation about?

Plaintiffs allege that defendants conspired to suppress and restrain competition.  Defendants allegedly fixed the prices for mesquite lump charcoal by agreeing to allocate the market and to not compete with each other.
Defendants have asserted defenses.  Now, the parties have reached a proposed class settlement.

### 4.  What type of mesquite lump charcoal is part of the litigation?

This lawsuit pertains to mesquite lump charcoal marketed and sold directly to restaurants and food-service distributors.

| 5. Am I part of the class? |
|---|

The Court has certified the following class:

> All persons and entities in the United States who, between January 1, 2000 and September 30, 2011, purchased mesquite lump charcoal directly from any defendant.

Excluded from the class are (1) defendants; (2) defendants' officers, directors, and employees; (3) the legal representatives, heirs, successors, or assigns of any defendant; and (4) any judicial officer or juror assigned to this matter. Class counsel estimate that the class consists of approximately 1,500 class members.

| 6. What does the settlement provide? |
|---|

The net settlement fund would be **$4.575 million** plus interest minus attorney's fees, expenses, taxes, and some costs.

- Chef's Choice would pay $2.2 million; California Charcoal would pay $1.55 million; and Lazzari would pay $825,000. If any of the defendants sell their businesses or change their ownership, that defendant's payment schedule would be accelerated. On top of its contribution, Lazzari has agreed to pay for half of the costs of this notice and administering the settlement.

If the settlement is approved, eligible class members would need to submit claim forms for a *pro rata* distribution. There would be no reversion to defendants.

| 7. When can I get a payment? |
|---|

No money will be distributed yet because the last payment by defendant is due **December 15, 2015**. Defendants' payments would be held in an interest-bearing escrow account.

If the settlement is approved, eligible class members would need to submit claim forms for a *pro rata* distribution.

On the claim form, each class member would need to indicate the (1) yearly dollar amount and (2) yearly unit amount (in pounds) of qualifying mesquite lump charcoal purchased directly from each defendant. A claims administrator would verify the amounts.

If your claim overstates your qualifying purchases, the entire claim may be denied.

| 8. What are my options? |
|---|

**Option 1**:

> **Remain in the Class.** If you wish to remain in the class and claim a portion of the settlement fund, you will be bound by the release of claims, meaning you would give up the right to sue defendants for the asserted antitrust claim. If the settlement is approved, you must complete and submit (by mail or electronically) the attached claim form, postmarked by **March 31, 2015**. If you remain in the class and fail to timely submit a completed claim form, you will be barred from the release anyway.

**Option 2**:

> **Exclude Yourself.** If you do not wish to be bound by the settlement agreement and you wish to keep your right to sue defendants over the antitrust claim asserted in this case, you must promptly exclude yourself. If you exclude yourself, you will not get any of the settlement money.
>
> To exclude yourself, you must promptly send an exclusion letter that includes the following information:
>
> - Your name (if you purchased under a business name, that must be included), address, and telephone number;
> - A statement saying that you want to be excluded from the class in *Il Fornaio Corporation, et al. v. Lazzari Fuel Company, LLC, et al.*, Case No. 3:13-cv-05197 WHA (N.D. Cal.); and
> - Your signature.
>
> Your exclusion letter must be postmarked by **March 31, 2015**. It should be mailed to the following address: Mesquite Class Action c/o Dahl Administration, P.O. Box 3614, Minneapolis, MN 55403-0614.

Unless you exclude yourself, you will give up your right to sue over the claim asserted in this lawsuit.

**Option 3**:

**Comment and/or Object.** If you wish to remain in the class but have comments about, or you disagree with, any aspect of the settlement, you may express your views. A written comment or objection should include:

- Your name, address, and telephone number;
- The case name and number: *Il Fornaio Corporation, et al. v. Lazzari Fuel Company, LLC, et al.*, Case No. 3:13-cv-05197 WHA (N.D. Cal.);
- A brief explanation of your comment and/or objection; and
- Your signature.

Your written comment or objection is due **March 31, 2015**. It should be mailed to Class Counsel Elizabeth C. Pritzker, Pritzker Levine LLP, 180 Grand Avenue, Suite 1390, Oakland, CA 94612. Class Counsel will promptly file the written comments and/or objections. If you stay in the class and your objection is overruled, you will nonetheless be bound by the settlement.

If you stay in the class, you will be bound by the "Release of Claims" memorialized in the settlement agreements. You can read the agreements online at www.MesquiteClassAction.com.

### 9. When is the hearing?

The final approval hearing for the proposed class settlement is at **April 22, 2015 at 3:00 p.m.**, at the United States District Court for the Northern District of California, Courtroom 8, 450 Golden Gate Avenue, San Francisco, California 94102. Please check the class website (www.MesquiteClassAction.com) the day before the hearing to confirm the hearing date and time.

You do not need to personally attend the final approval hearing but you are welcome to come at your own expense. At the hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. Any comments and/or objections will be heard.

### 10. Do I have a lawyer in this case?

Attorney Elizabeth C. Pritzker of Pritzker Levine LLP was appointed Class Counsel. You may also hire your own lawyer at your own expense. That lawyer must promptly notice an appearance in the lawsuit.

### 11. How will Class Counsel be paid?

Class Counsel will be paid from the $4.575 million settlement fund. Expenses and half of the settlement administration costs would also come out of the settlement fund. Class Counsel intends to apply for attorney's fees (approximately 25% of the settlement fund) and expenses (approximately _____) from the settlement fund.

### 12. How do I get more information?

To learn more, you can:

- Go to the class website at www.MesquiteClassAction.com or
- Mail a letter to Mesquite Class Action, c/o Dahl Administration, P.O. Box 3614, Minneapolis, MN 55403.