IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IL FORNAIO (AMERICA) CORPORATION, OLIVETO PARTNERS, LTD. and THE FAMOUS ENTERPRISE FISH COMPANY OF SANTA MONICA, INC., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

LAZZARI FUEL COMPANY, LLC, CALIFORNIA CHARCOAL AND FIREWOOD, INC., CHEF'S CHOICE MESQUITE CHARCOAL, RICHARD MORGEN, ROBERT COLBERT, MARVIN RING, and WILLIAM W. LORD,

Defendants.

No. C 13-05197 WHA

**ORDER GRANTING PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT AND ORDER VACATING CASE MANAGEMENT SCHEDULE**

## INTRODUCTION

All parties in this civil antitrust class action involving direct purchasers of mesquite lump charcoal move for preliminary approval of a proposed class settlement. For the reasons stated herein, the motion is **GRANTED**.

## STATEMENT

Prior orders have summarized the history of this action so it will not be repeated herein (Dkt. Nos. 138, 159). In brief, this is a civil antitrust class action following a guilty plea to a *per se* violation of Section 1 of the Sherman Antitrust Act. *United States v. Lord*, No. 12-cr-326 (N.D. Cal.). The class is composed of persons and entities who purchased mesquite lump charcoal directly from defendants during the alleged eleven-year price-fixing and customer-allocation conspiracy. Defendants are Lazzari Fuel Company, LLC, California Charcoal and Firewood, Inc., Chef's Choice Mesquite Charcoal, and their principals. Lazzari previously

obtained a leniency agreement with the Department of Justice and offered purchase rebates in the form of discounts taken through deductions from future customer remittances to eleven of its customers as "restitution." Only three customers have made purchases eligible for the discounts and the "restitution" program ends in December 2014.

In November 2013, this action and another putative class action were commenced. The actions were consolidated. When the parties appeared for the initial case management conference, counsel for Lazzari stated that Lazzari was a small business with limited resources. Attorney Elizabeth Pritzker was subsequently appointed as interim counsel under Rule 23(g)(3).

Lazzari and its principals later moved for preliminary approval of a partial class settlement. That proposal was rejected after oral argument. A class was certified and two more defendants (California Charcoal and its principal) reached a partial class settlement.

All defendants then moved for preliminary approval of a revised proposed class settlement. After supplemental submissions and oral argument, the parties were given the opportunity to fix some potential pitfalls with their proposal. Now, the parties have filed a joint addendum to the class settlement agreements, an amended claim form, and an amended proposed class notice. Having considered the briefing and oral argument, this order finds as follows.

**ANALYSIS**

**1. PROPOSED SETTLEMENT.**

Under the settlement proposal, the key terms would be as follows.

*Net Settlement Fund*: The net settlement fund would be $4.575 million plus interest minus attorney's fees, expenses, taxes, and some costs. All payments would go to an escrow account and the last payment would be paid by December 15, 2015. The fund would be composed as follows.

- *Lazzari*: The Lazzari defendants would pay $825,000 in total. Lazzari would pay $750,000, Mr. Colbert would pay $50,000, and Mr. Morgen would pay $25,000. The payment schedule would be: $300,000 by January 2015, $200,000 by April 2015, and $325,000 by December 2015. If more than fifty percent of Lazzari's shares were to be transferred to a *bona fide* purchaser or more than fifty percent of

2

Lazzari's non-inventory assets were to be sold to a single person or entity, the unpaid portion of Lazzari's obligation would be due within thirty days of completion of the sale.

- *California Charcoal*: Within ninety days of preliminary approval, Mr. Ring (the sole owner) would pay $1.55 million on behalf of himself and California Charcoal.
- *Chef's Choice*: Mr. Lord (the sole owner) would pay $2.2 million on the following schedule: eleven monthly payments of $185,000 and one final payment of $165,000 by November 30, 2015. If more than fifty percent of Chef's Choice's shares were to be transferred to a *bona fide* purchaser or more than fifty percent of Chef's Choice's non-inventory assets were sold to a single person or entity, the unpaid portion of Mr. Lord's obligation would be due within thirty days of completion of the sale.

*Release*: Defendants would be:

> completely released from any and all claims, demands, actions, suits, causes of action that Releasors, or each of them, ever had, now has, or hereafter may have, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, alleging violation of Section 1 of the Sherman Act (and any state counterparts) arising out of direct purchases of Mesquite Lump Charcoal from the Lazzari Defendants, the CA Charcoal Defendants or the Chef's Choice Defendants during the period January 1, 2000 through September 30, 2011.

*Costs*: The lion's share of the costs for administering the settlement and providing notice would be borne by defendants, separate and apart from their settlement contributions. Specifically, Lazzari would be responsible for fifty percent of the costs, California Charcoal would be responsible for 25 percent of all "anticipated" costs, and Chef's Choice would be responsible for up to $5,000 in costs. Class counsel now estimate approximately $1,070 for costs of settlement administration and notice would come from the settlement fund.

*No Reversion*: There would be no reversion to defendants.

*Attorney's Fees*: All of class counsel's fees and expenses would be paid out of the settlement fund. Class counsel have promised to "defer payment of attorney's fees awarded by

3

1 the Court until all class member disbursements have been made." Class counsel plan on moving
2 for approximately $1.1 million in fees and have incurred $230,000 in expenses
3 (Dkt. No. 162 at 4).

        *        *        *

The following factors are considered when determining whether a proposed class settlement is fundamentally fair, adequate, and reasonable under Rule 23(e):

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citations omitted).

This order finds that each defendant-group's proposed settlement contribution is reasonable in light of the facts and circumstances. In total, the proposed $4.575 million class settlement would represent 55% of the low-end estimated overcharges before trebling, as determined by plaintiffs' trial expert.

Lazzari's $825,000 proposal is offered in light of (1) its relative "weak financial condition," based on their financial statements and an accountant report rendered by plaintiffs; (2) its leniency agreement with the Department of Justice under Section 213 of the Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA");[*] and (3) that it was the first defendant-group to settle. This revised proposal also includes a better payment plan than the one originally proposed, which would have allowed monthly payments over six years. Now all payments would be paid by December 2015. This proposal is also $25,000 more than the original proposal.

California Charcoal's proposal is offered as a one-time payment of $1.55 million.

---

[*] Under ACPERA, damages would be limited to the "actual damages" sustained if defendants provided "satisfactory cooperation." Here, Lazzari, Mr. Morgen, and Mr. Colbert provided satisfactory cooperation in the form of promptly producing all of the production to the Department of Justice before any formal discovery was served, producing all of its accounting records, providing interviews and deposition testimony regarding the alleged conspiracy, and so forth. Class counsel have no objection to the cooperation of the Lazzari defendants.

4

This payment would be due within ninety days of preliminary approval and would come from Mr. Ring's own funds. California Charcoal would pay for 25 percent of all anticipated costs for settlement administration and notice. Class counsel, for their part, stated that they "took into consideration the circumstantial evidence of liability that exists" against the California Charcoal defendants (Pritzker Decl. ¶¶ 30, 31, 36; Pritzker Supp. Decl. ¶ 12).

Chef's Choice's proposal is offered in light of Mr. Lord's "limited financial resources." Mr. Lord and Chef's Choice would pay $2.2 million by liquidating Mr. Lord's personal assets and using the "ongoing sales revenues" of Chef's Choice (Pritzker Supp. Decl. ¶ 11). Mr. Lord's assets total $3.37 million, as of September 2014 (Lord Exh. 1). In addition, Chef's Choice would pay for up to $5,000 for the costs of settlement administration and notice, above and beyond its contribution.

All of the proposed settlements were negotiated by experienced counsel with the assistance of an active magistrate judge. The instant proposal came after class certification and with only a handful of weeks in the fact discovery period remaining. Plaintiffs have deposed all of the individual defendants, submitted a damages report, and hired an accountant to review the Lazzari defendants' finances. Defendants submitted their own expert declaration in response to the plaintiffs' damages report and took Rule 30(b)(6) depositions of plaintiffs.

The risk, expense, and complexity of continued litigation and trial are not insubstantial. If the case proceeds on the merits, at least some of the defendants would move for summary judgment and file a *Daubert* motion. Indeed, the class certification order warned that a defense attack on the plaintiffs' damages report could result in decertification. Considering the facts and circumstances herein, this order finds that it may well be in the best interest of the class to receive some payment relatively soon, rather than face the additional expense and risk of trial.

Accordingly, this order finds that preliminary approval of the proposed class settlement is appropriate.

    **2.**    **PLAN OF ALLOCATION.**

Class counsel stated that defendants' records contain "deficiencies that make it difficult to fairly and accurately calculate settlement benefits on a *pro rata* basis." In pertinent part, Chef's

5

Choice did not maintain purchase orders for many of its "key customers" and suffered a "massive data loss" in 2012. Lazzari only had electronic data for the period 2008 through 2011. Data for earlier years would need to be recreated from "paper invoices or payment records, to the extent such records exist" (Pritzker Decl. ¶¶ 45, 46).

The parties thus propose that the net settlement fund be allocated, *pro rata*, on a claims-made basis, based on the "total dollar value of each class member's qualifying mesquite lump charcoal purchases in proportion to the total amount of the net settlement fund." All of the net settlement fund would be distributed to eligible class members. The average estimated recovery is $2,163, after fees and expenses are deducted.

Each of the 1,500 class members would need to complete and submit a claim form to qualify for a portion of the settlement fund. The two-page proposed claim form would require that each class member complete a table providing the yearly dollar amount spent on direct purchases of mesquite lump charcoal from each defendant. The form would advise that the claims administrator may request verification of the information provided by class members.

The proposed claim form is **APPROVED**, with the following edits: (1) please put in the March 31, 2015 deadline on pages 1 and 2 and (2) please fill in the toll-free number on page 1.

**3.    NOTICE.**

The parties have filed an agreed-upon notice of class certification and class settlement. The proposed notice is **APPROVED**, except that the toll-free number on page 3 should be filled in. The class notice shall be mailed to all class members by **JANUARY 9, 2015**. In addition, publication notice shall be provided via a banner-shaped notice with a hyperlink to the class website on **JANUARY 5**, **JANUARY 14**, and **JANUARY 29**. Copies of the settlement agreements, this order, and the claim form shall be available on the class website by **JANUARY 5**.

**4.    SUPPLEMENTAL COVER LETTER.**

Three class members made purchases eligible for rebates under Lazzari's "restitution" program. No double recovery at the expense of other class members will be allowed. The parties thus propose a supplemental cover letter appended to the class notice sent to the three class members. No revision to the claim form was proposed by the parties.

6

The proposed supplemental notice is **REJECTED**. It is too wordy and unclear. Appended to the class notice mailed to the three class members shall be the following cover letter:

> Dear _____:
>
> A class of direct purchasers of mesquite lump charcoal has been certified. In exchange for a release of claims, defendants have agreed to provide a $4.575 million settlement fund.
>
> You may be eligible for a *pro rata* portion of the settlement money. Our records indicate that you received discounts and/or rebates for direct purchases of mesquite lump charcoal from Lazzari Fuel Company, LLC during 2013 and/or 2014, pursuant to Lazzari's agreement with the Department of Justice.
>
> You are not entitled to double recovery for that portion of your purchases. *Any settlement money you would be entitled to receive from the settlement fund will be reduced by the amount of discounts and/or rebates you received or will receive from Lazzari.*
>
> The enclosed claim form must be postmarked by **MARCH 31, 2015**. You may write the amount of discounts and/or rebates you received or expect to receive from Lazzari in the blank space on the bottom of page two of the claim form.

## CONCLUSION

For the reasons stated herein, the motion for preliminary approval of the class settlement is **GRANTED**. The December 16 hearing is hereby **VACATED**. The deadlines in the case management order (Dkt. Nos. 57, 160) are hereby **VACATED**. The final approval hearing is set for **APRIL 22, 2015 AT 3:00 P.M.** The motion for final approval of the class settlement shall be filed by **APRIL 3 AT NOON**. Any opposition is due **APRIL 15 AT NOON**. Any reply is due **APRIL 20 AT 9:00 A.M.**

**IT IS SO ORDERED**.

Dated: December 10, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE