IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IL FORNAIO (AMERICA) CORPORATION, OLIVETO PARTNERS, LTD. and THE FAMOUS ENTERPRISE FISH COMPANY OF SANTA MONICA, INC., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LAZZARI FUEL COMPANY, LLC, CALIFORNIA CHARCOAL AND FIREWOOD, INC., CHEF'S CHOICE MESQUITE CHARCOAL, RICHARD MORGEN, ROBERT COLBERT, MARVIN RING, and WILLIAM W. LORD,<br><br>Defendants. | No. C 13-05197 WHA<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT AND AWARDING FEES AND EXPENSES** |

**INTRODUCTION**

In this civil antitrust class action involving direct purchasers of mesquite lump charcoal, plaintiffs move for final approval of a class settlement and class counsel move for attorney's fees and expenses. For the reasons stated herein, final approval is hereby **GRANTED**. Class counsel's fee petition is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Prior orders summarized the history of this action so it will not be repeated herein (Dkt. Nos. 138, 159, 163). In brief, this is a civil antitrust class action following a guilty plea to a *per se* violation of Section 1 of the Sherman Antitrust Act. *United States v. Lord*, No. 12-cr-326 (N.D. Cal. 2012). After class certification and rejection of two prior iterations of proposed class settlements, a December 2014 order granted preliminary approval of the instant proposed claims-made class settlement. The class administrator mailed notice of the proposed class settlement and

1  fee petition along with claim forms to class members and thrice published a banner-styled notice
2  in an online trade website.

3  *No one objected to the class settlement.* No one opted out of the class settlement.
4  Out of more than 1,100 class members, 138 timely submitted claim forms. For notices returned
5  as undeliverable, the class administrator searched the National Change of Address database and
6  mailed new notices and claim forms. An April 2015 order, in turn, extended the deadline by one
7  month so the class administrator could distribute a second class notice (with claim forms),
8  reminding class members to submit claim forms by the extended deadline. The parties also
9  searched for updated addresses, email addresses, and fax numbers so that further notice packets
10 (with an additional two-week extension for claim forms) could be distributed.

11 To date, a total of 240 claim forms have been submitted. The claim forms account for
12 65 percent of class commerce. Now, the deadline to submit claim forms has elapsed. This order
13 follows full briefing and oral argument. No one showed up to object to the class settlement or fee
14 petition, despite notice of the hearing date.

**ANALYSIS**

**1. NOTICE.**

17 Rule 23(c)(2)(B) requires the "best notice [of class certification] that is practicable under
18 the circumstances, including individual notice to all members who can be identified through
19 reasonable effort." Rule 23(e)(1) requires "notice [of a class settlement] in a reasonable manner
20 to all class members who would be bound by the proposal." Our court of appeals has recognized
21 that "[i]n a majority of class actions at least some unclaimed damages or unlocated class members
22 remain." *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990).

23 Here, an October 2014 order certified a nationwide Rule 23(b)(3) class of "all persons and
24 entities in the United States who, between January 1, 2000 and September 30, 2011, directly
25 purchased mesquite lump charcoal from any defendant" (Dkt. No. 138). The class was mainly
26 composed of restaurants and food distributors.

27 To assemble the class list of direct purchasers spanning the eleven-year class period, the
28 class administrator combed through multiple records. When notices returned as undeliverable,

the class administrator searched the National Change of Address database and the parties searched for updated addresses, email addresses, and fax numbers. The class administrator then disseminated notices and claim forms using the collected information. As a supplement to individual notice, the class administrator thrice published in an online trade journal a banner-styled advertisement with a hyperlink to the class website.

No current addresses could be found for 140 class members despite reasonable search efforts. Defendants suspect that these entities are "no longer in business" (Dkt. No. 174). Since the notices for these 140 class members were returned as undeliverable and no current addresses were found for them, this order hereby **EXCLUDES** from the class settlement the 140 class members listed in Attachment A appended to docket number 174 and Attachment A appended to docket number 177. These class members are not bound by the settlement release and will not receive a share of the settlement fund.

With that said, given the notice provided and the scope of this nationwide antitrust class action, this order finds that the class administrator gave the best notice practicable under the circumstances and disseminated notice in a reasonable manner.

### 2. MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT.

The following factors are considered when determining whether a proposed class settlement is fair, adequate, and reasonable under Rule 23(e):

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). For the following reasons and for the reasons stated in the December 2014 order (Dkt. No. 163), this order finds that the proposed class settlement is fair, reasonable, and adequate under Rule 23(e).

*First*, the parties reached this proposal after class certification and near the end of fact discovery. By that time, the parties had taken all key depositions, turned over voluminous documents and written discovery, and exchanged damage reports. An accountant hired by class

3

counsel had rendered a report on the financial condition of three defendants and both sides had ample information about the strengths and weaknesses of their positions. For example, class counsel had collected sworn testimony regarding the alleged eleven-year conspiracy and defendants had begun a *Daubert* attack on plaintiffs' damage theory for trial. At least some defendants were preparing to file summary judgment motions and it remained possible that the class would be decertified before trial. In sum, the risk, expense, and complexity of further litigation were not insubstantial.

*Second*, the settlement terms are fair, reasonable, and adequate in light of the circumstances. The proposed $4.575 million settlement fund would represent 55 percent of the low-end estimated overcharges before trebling, according to plaintiffs' trial expert. All of defendants' payments to the settlement fund would be due by December 2015. Specifically, in light of their relative "weak financial condition" and leniency agreement with the Department of Justice, defendants Lazzari Fuel Company, LLC, Robert Colbert, and Richard Morgen would pay $825,000 plus half of all notice and class administration costs. Their funds would be paid, in large part, by bank loans. Defendant Marvin Ring, who is the sole owner of California Charcoal and Firewood, Inc., would pay $1.55 million plus 25 percent of all notice and class administration costs. Defendants Chef's Choice Mesquite Charcoal and William Lord (who operates Chef's Choice out of a small room attached to a garage) would pay $2.2 million plus $5,000 for notice and class administration costs. No settlement funds would revert to defendants and the net settlement fund would be allocated, *pro rata*, on a claims-made basis. All of class counsel's fees and expenses would be paid out of the settlement fund.

A prior order approved a claims-made process because the parties estimated that the average recovery for each class member exceeded several thousand dollars and defendant Chef's Choice did not maintain purchase orders for many of its "key customers." Chef's Choice also suffered a "massive data loss" in 2012, and Lazzari only had electronic data for the period 2008 through 2011. Recreating the transactional history for each customer for the eleven-year period would be "exceptionally difficult, if not impossible," said class counsel (Pritzker Decl. ¶ 45, Dkt. No. 141-1; Br. 18, Dkt. No. 141).

4

In January 2015, the class administrator mailed the class notice and claim form to the class and thrice published a banner-styled advertisement on an online trade website. The class website also provided instructions for submitting claim forms electronically and via mail. An April 2015 order then *sua sponte* extended the deadline to submit claim forms by one month. When the parties found new addresses, email addresses, and fax numbers, the class administrator distributed further notices and claim forms.

*No one objected to the proposed class settlement* (Kratz Decl. ¶¶ 4–9, 13–14). In total, 240 class members timely submitted claim forms, representing 65 percent of class commerce.

Considering the risks of protracted litigation, the uncertainty of trial, the risks of decertification, the benefits and expense of antitrust class actions, the $4.575 million offered now, and the response rates in comparable class actions — in light of all of these facts and circumstances — the proposed class settlement is fair, reasonable, and adequate under Rule 23(e).

### 3. ATTORNEY'S FEES.

Class counsel seek 25 percent of the settlement fund (or approximately $1.14 million) in attorney's fees and $221,221.72 in expenses for work done mostly over the course of one year. Having considered all of the facts and circumstances, this order awards class counsel **TWENTY PERCENT** of the common fund (that is, **$915,000** in attorney's fees).

In common-fund cases, the district court has discretion to use either a percentage or lodestar method. This order, as requested by class counsel, applies the percentage method with a lodestar cross-check. "The percentage method means that the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." The typical range under the percentage method is twenty-to-thirty percent with a 25-percent benchmark. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

On a fee petition, our analysis involves consideration of:

> the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (*e.g.*, cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

5

*In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation marks omitted). Here, no class members objected to class counsel's fee petition; class counsel received no compensation during the course of the litigation; and the cash settlement provided monetary relief only. Two "special circumstances," however, justify a downward departure from the 25-percent benchmark.

*First*, the results achieved, while passing muster under Rule 23(e), were neither exceptional nor hard-fought. The Lazzari defendants (Lazzari, Colbert, and Morgen) in particular provided cooperation to class counsel early on in this action. In pertinent part, just one month after plaintiffs commenced this action, Lazzari's counsel met with plaintiffs' counsel in an effort to cooperate pursuant to a leniency agreement with the Department of Justice. Lazzari's principals, Colbert and Morgen, gave interviews and deposition testimony regarding the alleged conspiracy. Before service of any written discovery, Lazzari turned over a set of documents and its entire production to the Department of Justice (Colbert Decl. ¶ 15, Dkt. No. 130). Class counsel also benefitted from documents filed in *United States v. Lord*, No. 12-cr-326, and Lord's guilty plea (which was entered before this action commenced). All of this discovery allowed class counsel to build a case with comparatively fewer discovery obstacles.

Moreover, the Lazzari defendants opted to settle this case instead of contest class certification. This meant that class counsel only had to deal with the class certification counter-arguments brought by Chef's Choice, California Charcoal, and their principals. After class certification, all parties promptly settled well before the deadlines for expert discovery, summary judgment, motions *in limine*, and trial.

On this record, it is hard to say that class counsel achieved extraordinary results, especially since the undersigned judge had to twice reject settlement proposals presented by class counsel. In one of the prior proposals, class counsel allowed payments from the Lazzari defendants to span six years. Only after the undersigned judge made clear that such an elongated schedule would be unacceptable did class counsel reach an agreement for all payments by December 2015.

6

*Second*, class counsel resorted to a claims-made procedure instead of shouldering the burden of wading through defendants' paper invoices. Class counsel could have taken on the task of recreating (as best they could) the purchase data for absent class members but chose not to. In turn, when only 138 class members timely submitted claim forms, class counsel brazenly sought one-fourth of the settlement fund. It was only when the Court intervened to extend the claims deadline did the response rate improve. On this record, it would be a windfall for class counsel to recoup that much of the settlement fund when only a portion of the class will receive an actual payout.

These two special circumstances justify a downward departure from the 25-percent benchmark. Having considered the entire record, class counsel's performance in this action, the results achieved, the risks of non-payment, and the class members' responses, this order finds that class counsel are entitled to **TWENTY PERCENT** of the common fund, meaning **$915,000** in fees.

\*       \*       \*

Now this order turns to the lodestar cross-check. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941, 945 (9th Cir. 2011). To ensure the fee award is reasonable, due consideration is given to the "degree of success in the litigation and benefit to the class." This order rejects class counsel's grossly inflated lodestar of $1.6 million for the following reasons.

*First*, class counsel's documentation is less than satisfactory. When class counsel first moved for fees and expenses, they failed to append any timesheets or invoices. A prior order gave class counsel an opportunity to cure the deficiency. Class counsel eventually filed timesheets but made no apparent effort to make genuine reductions for overstaffing, redundancy, excessive charges, vague entries, block billing, inefficiencies, and reasonableness. Class counsel insisted that they spent 2,681.05 hours of work on a case which never reached summary judgment or trial. This overstated sum is not justified. It was wrong for class counsel to dump the entire burden of trimming back their fee petition on the Court.

7

*Second*, the claimed hours are overstated. Once they submitted timesheets, class counsel made the process of deciphering their timesheets exceedingly difficult by failing to group like tasks together by specific project (*e.g.*, Morgen deposition, class certification motion, fee petition, and so forth). Class counsel chose categories to obscure their inefficiencies (*e.g.*, background investigation, court time, deposition, expert discovery, third-party discovery, written discovery, settlement, pleadings, research, and strategy). They then organized their timesheets by timekeeper rather than chronologically so that the reader could not readily isolate areas of inefficiency, duplication, and redundancy. Class counsel also failed to summarize the total hours spent on various "categories" across the two law firms (Pritzker Levine LLP and Pearson, Simon & Warshaw, LLP). Nevertheless, once we peel back the layers of obfuscation, we discover that class counsel spent a shocking 876.35 hours on "pleadings" when we had no motions to dismiss, 249.85 hours on background investigation and "strategy" whatever that means, 1,087.25 hours on discovery, and 467.6 hours on class certification. These numbers are excessive for this case.

*Third*, class counsel's timesheets reflect overstaffing and too many meetings. Ordinarily, no more than one attorney (and one paralegal) need be present at a deposition or motion hearing; more will be deemed excessive. Here, three attorneys attended defendant Morgen's deposition (partner, special counsel, and of counsel); two attorneys attended defendant Colbert's deposition (partner and special counsel); two attorneys attended defendant Lord's deposition (partner and special counsel); three attorneys attended the case management conference (partner, special counsel, and of counsel); four attorneys attended the class certification hearing (partner, special counsel, of counsel, and associate); and three attorneys attended the preliminary approval hearing (partner, special counsel, and of counsel).

This was too much, especially since counsel charged inflated rates for some of the work done. Of Counsel Robert Retana charged $720 per hour for 401.45 hours and $680 per hour for 69.30 hours; Partner Jonathan Levine charged $675 per hour and billed 148.60 hours; Special Counsel Bethany Caracuzzo charged $600 per hour and billed 735.05 hours; Associate Shiho Yamamoto charged $425 per hour and billed 598.45 hours; and Class Counsel and Partner Elizabeth Pritzker charged $675 per hour and billed 728.20 hours. Some of these hours and rates

8

are excessive, considering their contributions to the overall case and tasks involved. It would be unjustified to charge the class senior-associate or partner-level rates for routine tasks like document review, returning a hard drive, vetting stipulations, preparing copies of exhibits, checking citations, and so forth.

Moreover, it would be unjust to charge the class for all of counsel's meetings. Too many entries on class counsel's timesheets stated "confer with [Attorney 1] and [Attorney 2] re [task]." Indeed, the word "confer" appears more than 900 times on counsel's timesheets. Remember, the parties reached a global settlement one year from commencement of this lawsuit. This case settled before summary judgment and before trial. It is hard to believe all of these meetings were justified.

Considering the work done, results achieved, benefit to class members, counsel's experience, rates in our region, tasks completed, and underlying documentation provided, this order calculates a reasonable lodestar of **$914,500**.* This lodestar is commensurate with twenty percent of the common fund. Accordingly, twenty percent of the common fund is a fair and reasonable fee award. Attorney Pritzker shall use good faith judgment to decide how the award should be allocated between the two firms.

**4.    EXPENSES.**

Class counsel seek $221,221.72 in expenses. In common-fund cases, the essential inquiry is whether the expenses are "reasonable" under the circumstances. *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). Having reviewed the specific types of costs requested and invoices submitted by class counsel (Dkt. No. 167), this order holds that the requested expenses are largely reasonable with one exception. The exception is the $823.86 in "other" expenses which were not adequately accounted for or justified. Although Attorney Pritzker provided an internal accounting spreadsheet of these "other" travel expenses, no actual invoices or

---

* This lodestar is based on the following hours and rates, which are reasonable, after appropriate reductions are made. Reasonable hours for the work done are 680 hours for Attorney Elizabeth Pritzker, 500 hours for Attorney Shiho Yamamoto, 300 hours for Attorney Bethany Caracuzzo, 100 hours for Attorney Robert Retana, and twenty hours for Attorney Jonathan Levine. Reasonable rates for the work done in this case are $675 per hour for Attorney Prizker, $650 per hour for Attorney Retana, $650 per hour for Attorney Levine, $550 per hour for Attorney Caracuzzo, and $425 per hour for Attorney Yamamoto.

9

explanations for these specific line items were submitted. Accordingly, this order finds that class counsel is entitled to reimbursement of **$220,397.86** in expenses.

## CONCLUSION

1. For the reasons stated herein, the motion for final approval of the class settlement is **GRANTED**, but this order **EXCLUDES** from the class settlement the 140 class members listed in Attachment A appended to docket number 174 and Attachment A appended to docket number 177.

2. This order finds that the class notice and manner of notice were reasonable and adequate to comport with due process and Rule 23(e)(1). Class members had an adequate opportunity to object to the class settlement and fee petition but no one timely objected.

3. This order further finds that the class settlement is fair, adequate, and reasonable pursuant to Rule 23(e)(2). This action is hereby dismissed with prejudice as to plaintiffs and all class members, except for the excluded 140 class members. All class members who timely submitted valid claim forms shall receive a *pro rata* share of the settlement fund.

4. The motion for attorney's fees and expenses is **GRANTED IN PART AND DENIED IN PART**. Class counsel are **AWARDED $915,000** in attorney's fees and **$220,397.86** in expenses. Half of the fees may be paid within 45 days of this order. The other half of the fees and all expenses shall be held until after the class has been paid.

5. In light of the foregoing, the parties shall file a joint status statement (with pertinent declarations and a proposed order) by **JANUARY 15, 2016 AT NOON**.

**IT IS SO ORDERED**.

Dated: May 20, 2015.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE

10